IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORNELL UNIVERSITY, CORNELL RESEARCH FOUNDATION, INC., LIFE TECHNOLOGIES CORPORATION and APPLIED BIOSYSTEMS, LLC,<br><br>           Plaintiffs,<br><br>      v.<br><br>ILLUMINA, INC.,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | C.A. No. 10-433-LPS |

**OPENING BRIEF IN SUPPORT OF MOTION
FOR BIFURCATION AND STAY UNDER FRCP 42(b)**

ASHBY & GEDDES
Steven J. Balick (I.D. #2114)
Lauren E. Maguie (I.D. #4261)
Caroline Hong (I.D. #5189)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
chong@ashby-geddes.com

*Attorneys for Defendant*

*Of Counsel:*

David G. Hanson
Amy L. Lindner
Reinhart Boerner
Van Deuren, s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
(414) 298-1000

Dated:  February 1, 2011

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................1

BIFURCATION ARGUMENT ...........................................................................6

    A.    Bifurcation Will Serve the Ends of Justice: None of The
          Plaintiffs Can Maintain the Present Suit Against
          Illumina .................................................................................7

          1.    Life Tech Cannot Maintain The Present
                Suit Against Illumina ...........................................7

          2.    Cornell Cannot Maintain The Present
                Suit Against Illumina ...........................................8

                (a)    Cornell Lacks Independent Standing
                          to Sue Illumina in this Suit .......................8

                (b)    Cornell Cannot Sue a Party Authorized
                          to Practice the Patents By The Exclusive
                          Licensee—Life Tech.................................10

    B.    Bifurcation Will Conserve Judicial Resources ...................................11

    C.    Bifurcation Will Lessen Discovery Burdens on
          the Parties .........................................................................14

    D.    Bifurcation Will Aid the Jury by Simplifying
          the Case .............................................................................18

    E.    No Factors Counsel Against Bifurcation ...........................................19

CONCLUSION.................................................................................................20

# TABLE OF AUTHORITIES

**Page**

## CASES

*Abbott Labs. v. Diamedix,*
  47 F.3d 1128 (Fed. Cir. 1995)...........................................................................8

*Akzona, Inc. v. E.I. DuPont De Nemours & Co.,*
  607 F. Supp. 227 (D. Del. 1984).........................................................11, 12, 14

*Alfred E. Mann Found. v. Cochlear Corp.,*
  604 F.3d 1354 (Fed. Cir. 2010)......................................................................8, 9

*Arachnid, Inc. v. Merit Indus., Inc.,*
  939 F.2d 1574, 1578-79 (Fed. Cir. 1991) .....................................................8,9

*Ciena Corp. v. Corvis Corp.,*
  210 F.R.D. 519 (D. Del. 2002) ........................................................................18

*De Forest Radio Telephone & Telegraph Co. v. United States,*
  273 U.S. 236, 242 (1927)................................................................................10

*Enzo Life Science, Inc. v. Digene Corp.,*
  2003 WL 21402512 (D. Del. June 10 2003)...................................................15

*Ericsson, Inc. v. Samsung Electronics Co., Ltd.,*
  2007 WL 1202728 E.D. Tex. Apr. 20, 2007)...................11, 12, 13, 14, 15-16

*Eurand, Inc. v. Myland Pharmaceuticals, Inc.,*
  2009 WL 3172197 (D. Del. Oct. 1, 2009)................................................11, 12

*Fischer & Porter Co. v. Sheffield Corp.,*
  31 F.R.D. 534 (D. Del. 1962) .........................................................................15

*Industrias Metálicas Marva, Inc. v. Lausell,*
  172 F.R.D. 1 (D.P.R. 1997) ............................................................................14

*In re Innotron Diagnostics,*
  800 F.2d 1077 (Fed. Cir. 1986).......................................................................20

*Kahn v. General Motors Corp.,*
  865 F. Supp. 210 (S.D.N.Y. 1994)............................................................15, 16

*Laboratory Skin Care, Inc. v. Limited Brands, Inc.*,
  F. Supp. 2d 2010 WL 5059654 (D. Del. Dec. 6, 2010) ................................6

*Lockyer v. Brar*, 115 Cal. App. 4th 1315 (2004) ........................................5

*Ortho Pharm. Corp. v. Genetics Inst.*,
  52 F.3d 1026 (Fed. Cir. 1995).................................................................10

*Smith v. Alyeska Pipeline Service Co.*,
  538 F. Supp. 977 (D. Del. 1982)...............................................12, 15, 20

*Speedplay, Inc. v. Bebop, Inc.*,
  211 F.3d 1245 (Fed. Cir. 2000)..................................................................9

*TransCore, LP v. Electronic Transaction Consultants Corp.*,
  563 F.3d 1271 (Fed. Cir. 2009)..............................................................10

## STATUTES AND RULES

FEDERAL RULE OF CIVIL PROCEDURE 42................................................*passim*

CAL. CIV. PROC. § 904.1(13)......................................................................4

CAL. CIV. PROC. § 916(A) )........................................................................4

CAL R. CT. 208(B)....................................................................................3

CAL. ST. JUD. ADMIN § 2.2(F)(I)..............................................................3

In 2004, Illumina and Applera, the predecessor of Plaintiffs Life Technologies and Applied Biosystems (collectively, "Life Tech"), signed a settlement agreement that included a covenant not to sue. Illumina believes that covenant bars Plaintiffs' present claims. The covenant issue is primarily an issue of contract interpretation. Illumina asks that this Court bifurcate the covenant issue, stay the remainder of the case, and resolve the covenant issue first.

## BACKGROUND

Applera granted Illumina a covenant not to sue as part of a 2004 settlement agreement (the "2004 Settlement Agreement").[1] The settlement resolved three disputes between Illumina and Applera: (1) a federal patent infringement suit involving the very products in this case; (2) an arbitration of a joint development agreement that related to those products; and (3) a California state court breach of contract matter relating to that same joint development agreement. As part of the agreement, Applera covenanted not to bring any suit against Illumina asserting infringement of the then-disputed patents or any later-issued patents related to certain Defined Products, including those products that were at issue in those three disputes, and are again at issue in this case. Illumina paid handsomely for this broad freedom from suit, which also provided Illumina freedom from suit by any of Applera's successors or assignees, such as Life Tech. The covenant not to sue had an exception that excluded patent claims covering "instruments, enzymes, dyes, nucleic acid sequences, polymerase chain reaction (PCR) methods, or software." 2004 Settlement Agreement, §§ 1.2, 1.4. The meaning of this exception is at the heart of the dispute between the parties as it relates to the covenant issue.

---

[1] At the time of the 2004 Settlement Agreement, Applied Biosystems was an operating group of Applera.

The patents-in-suit in this case are the type of patents the parties intended the covenant not to sue to cover. The patents being asserted are not instruments, enzymes, dyes, nucleic acid sequences, polymerase chain reaction (PCR) methods, or software. Accordingly, Life Tech breached that covenant by bringing the present suit. Moreover, Cornell University and Cornell Research Foundation (collectively, "Cornell") are likewise barred from acting as plaintiffs in this suit. As discussed more fully below, (1) Cornell lacks standing to proceed in this case without Life Tech's participation; and (2) Cornell is barred from bringing this suit against Illumina because Life Tech effectively granted Illumina a sublicense to the patents-in-suit.

Plaintiffs filed this suit on May 2, 2010, but did not serve the Complaint immediately. Recognizing that the 2004 Settlement Agreement barred such a suit, Illumina filed a California state court action on July 9, 2010 alleging that Life Tech breached the 2004 Settlement Agreement by filing this action.[2] Illumina served Life Tech that same day. The following Monday, July 12, Plaintiffs served Illumina with the Complaint in the case before this Court.

Illumina filed suit against Life Tech in California because Illumina believed the California court was in the best position to decide quickly whether the covenant applied to avoid wasting both Illumina's and this Court's resources on a suit that should not have been filed. Factors that Illumina weighed in seeking resolution in California included the fact that the 2004 Settlement Agreement is governed by California law, and that Illumina,

---

[2] That action is captioned *Illumina, Inc. v. Life Technologies Corp. and Applied Biosystems, LLC*, 37-2010-00095865-CU-BC-CTL, and is venued in the Superior Court of the State of California, San Diego County. In that case, Illumina asserted a breach of contract claim, a breach of the implied covenant of good faith and fair dealing, and an unfair competition claim. As discussed below, only the breach of contract claim remains in that case.

Life Technologies, and Applied Biosystems are all located in San Diego, California.

Illumina also recognized that a lawsuit based solely on its contract claims would promote

judicial efficiency, as it would allow the court to resolve both the California and

Delaware suits without having to entertain the more complex patent-related issues.

Moreover, California has a "fast-track" rule which requires a court to dispose of 75% of

its cases within a year, and 85% of its cases within 18 months, further promoting

efficiency of judicial and party resources. Cal. R. Ct. 208(b) and Cal. St. Jud. Admin.

§ 2.2(f)(i).

The California court did in fact consider whether Life Tech breached the

covenant. In response to the Complaint, Life Tech filed three motions: (1) a demurrer

(which California uses in lieu of motions to dismiss); (2) a motion to stay; and (3) an

Anti-SLAPP motion.[3] The focus of the Anti-SLAPP motion was Illumina's position that

the patent claims asserted in this case are covered by the covenant not to sue. The parties

briefed the issues, submitted affidavits, and argued the motions before the California

court. The California court denied the demurrer and the motion to stay, and denied the

Anti-SLAPP motion as it applied to the breach of contract issue.[4] In doing so, the

California court held that Illumina presented evidence to show a probability of prevailing

on its claim that Life Tech and Applied Biosystems breached the 2004 Settlement

---

[3] SLAPP stands for Strategic Lawsuits Against Public Participation. In this case, the rule on which Life Tech was trying to rely was California's application of its statute to prevent a party from being harassed by being sued simply for taking advantage of the court system (i.e. filing its own suit). However, in the California case, the California court found – following California precedent – that public policy weighed against applying the Anti-SLAPP statute to bar a suit for breach of contract in response to a lawsuit like Life Tech's where the contract was for a covenant not to sue (i.e. covenants not to sue would be rendered meaningless if the Anti-SLAPP statute prevented their enforcement).

[4] The California court found that Illumina had not adequately pled its implied covenant or unfair competition claims and that the unfair competition claim was likely barred by a litigation privilege. Illumina has not appealed the dismissal of these claims.

Agreement by filing this patent infringement suit. *See* Declaration of Amy L. Lindner ("Lindner Declaration") at ¶ 4.

The California court's decision that Illumina had shown a probability of proving Life Tech breached the covenant is consistent with earlier positions taken by the parties. In the fall of 2007, Applied Biosystems wrote Illumina intimating that Illumina was breaching the about-to-issue U.S. Patent No. 7,312,039. Illumina replied just three weeks later that the '039 patent was covered by the covenant not to sue, and therefore Illumina did not require a license. *See* Lindner Declaration at ¶¶ 6, 7. Neither Applied Biosystems nor any other Plaintiff indicated any disagreement with Illumina's position at any time before the filing of this suit.[5]

The California court also considered whether it could address the covenant issue without interfering with this Court's patent case. Illumina argued that to decide the covenant issue required only contract interpretation, not claim construction of the patents, and thus did not implicate federal law or the pre-trial work this Court would do. The California court agreed; it refused to stay the California case.

After the California court denied Life Tech's Anti-SLAPP motion, Life Tech informed Illumina that Life Tech intends to appeal the California court's denial of the Anti-SLAPP motion unless Illumina agrees to stay the California case for two years. *See* Lindner Declaration at ¶ 5. California law provides for both an appeal as a matter of right from an Anti-SLAPP decision and an automatic stay of the trial court proceedings during the pendency of the appeal. CAL. CIV. PROC. §§ 904.1(13), 916(a). Even if the

---

[5] The analysis of why the '039 patent is covered by the covenant not to sue is the same for at least six of the seven other patents in this suit. Life Tech describes these six patents as "PCR patents" in its complaint.

California Court of Appeals eventually were to find that appeal meritless, the appeal nonetheless would have the effect of a stay for Life Tech. *Lockyer v. Brar*, 115 Cal. App. 4th 1315 (2004).

Because Life Tech apparently intends to delay resolution of the covenant issue in California, the California courts will likely not be able to resolve the covenant issue before this Court is forced to expend substantial judicial resources on the patent case. Illumina thus asks this Court for relief. Illumina's request for bifurcation will likewise benefit this Court by avoiding the unnecessary expenditure of judicial resources. If this case can be resolved on the covenant issue (as Illumina believes it can), this Court will not have to preside over the technology tutorial, Markman proceedings, summary judgment motions for patent infringement and validity, or the much more complicated and lengthy patent trial. The patent case involves 8 patents, with a possible combined 111 claims[6]; the technology tutorial, claim construction, summary judgment motions, and trial, if they occur, will each be significant undertakings.

The benefit of a covenant not to sue is freedom from suit—a freedom Illumina paid handsomely for in 2004. While prevailing on its breach of contract defense after trial cannot strictly be called valueless, it certainly is not the full benefit Illumina is entitled to under the covenant not to sue. Furthermore, pursuing that inadequate benefit would require Illumina to incur the substantial costs associated with a year or more of discovery and motion practice (not to mention the trial itself) and would force this Court to expend significant amounts of its valuable resources. Unless this Court separates the covenant issue and stays the remainder of the case, Illumina will be substantially

---

[6] Illumina does not yet know if Plaintiffs plan to assert all 111 claims against Illumina.

deprived of the benefit of its bargain, and will be forced to squander a substantial amount of this Court's time and resources on a case that should never have been filed. For all of these reasons, the covenant issue should be tried first. Illumina respectfully asks this Court to grant its motion.[7]

## ARGUMENT

FRCP 42(b) states that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, cross claims, counterclaims, or third-party claims." *Laboratory Skin Care, Inc. v. Limited Brands, Inc.*, --- F. Supp. 2d ---, 2010 WL 5059654 (D. Del. Dec. 6, 2010). The Court has broad discretion in "separating issues and claims for trial as part of its wide discretion in trial management." *Id.* In applying this standard, courts in this district and elsewhere have considered multiple factors, including whether bifurcation will (1) conserve this Court's resources by potentially avoiding a Markman hearing, the technology tutorial, invalidity and infringement summary judgment motions, among other time-intensive tasks; (2) lessen discovery burdens on the parties; and (3) help the jury by simplifying the issues. The analysis of all of these factors is performed in the context of the outcome that will be gained under bifurcation: what will or may happen in the first half of the case that will or may lessen the Court's, parties' and jury's burden in the second case? In this case, the trial of the covenant not to sue may end the entire case, saving significant resources for the Court and the parties.

---

[7] If this Court grants the bifurcation motion and stays the remainder of the case, Illumina intends to dismiss the California state action. Illumina reserves the right to seek leave to amend its Answer in this case to add a breach of contract counterclaim.

**A.    Bifurcation Will Serve the Ends of Justice: None of The Plaintiffs Can Maintain the Present Suit Against Illumina.**

The breach of covenant issue is likely to resolve this entire case.  Life Tech is barred from suing Illumina on the patents-in-suit under the 2004 Settlement Agreement.  Cornell, without Life Tech, likely lacks standing to proceed in this case, and, in any event, is barred from suing Illumina on the patents-in-suit because Illumina is authorized by the exclusive licensee—Life Tech—to make the accused products.  Though Illumina need not prove the covenant issue is case dispositive to prevail on its bifurcation motion, the strength of Illumina's breach of covenant defense further strengthens the rationales supporting this motion.  Because Plaintiffs will not be able to prosecute the patent case if they lose the covenant case, this Court should grant the bifurcation motion.

**1.    Life Tech Cannot Maintain The Present Suit Against Illumina.**

To prevail on the covenant defense against Life Tech, Illumina need prove only three things.  First, that the accused products are "Defined" or "Modified Defined Products" as defined in the 2004 Settlement Agreement.  Second, that Plaintiffs' action of filing this suit shows that they believe the patents-in-suit are "Blocking Patents" as defined in the 2004 Settlement Agreement.  Third, that the claims asserted are not "Excluded Patent Claims" as that term is used in the 2004 Settlement Agreement.[8]

As discussed above, the California court found that Illumina had demonstrated a probability of prevailing on the covenant issue.  In briefs and at oral argument, the only fact Life Tech disputed was whether the patents-in-suit were "Excluded Patent Claims."  Excluded Patent Claims are claims that "claim inventions that are instruments, enzymes,

---

[8] Illumina does not fully brief the covenant issue here, and instead offers this summary of argument only to enable the Court to consider the bifurcation motion in the proper context.

dyes, nucleic acid sequences, polymerase chain reaction (PCR) methods, or software."
2004 Settlement Agreement at § 1.3.  The parties dispute the application of only two of
these exceptions—PCR methods and instruments.

The California court found[9] that the patent claims were not Excluded Patent
Claims.  When litigated fully here, Illumina expects this Court will reach a similar
conclusion.  If Illumina prevails on the breach of covenant issue against Life Tech, Life
Tech will be barred from pursuing the patent claims asserted in this case.

### 2.   Cornell Cannot Maintain the Present Suit Against Illumina.

The Court, the parties, and the jury will all save resources under bifurcation
because Cornell is likely unable to proceed in this case without Life Tech.  First, Cornell
likely lacks standing to proceed as a plaintiff in this case if Life Tech is not also a
plaintiff.  Second, Cornell is bound by the terms of the 2004 Settlement Agreement
because Illumina is authorized by the party with the exclusive right to grant
authorizations.

### (a)   Cornell Lacks Independent Standing to Sue Illumina in this Suit.

Cornell lacks standing to proceed in this case without Life Tech.  For Cornell to
have prudential standing, Cornell must not have transferred "all substantial rights" in
each of the patents-in-suit to Life Tech.  *See, e.g., Alfred E. Mann Found. v. Cochlear
Corp.*, 604 F.3d 1354, at 1359 (Fed. Cir. 2010).  Courts generally require that "a suit for
infringement ordinarily be brought by a party holding legal title to the patent." *See, e.g.,
Abbott Labs. v. Diamedix*, 47 F.3d 1128, 1130 (Fed. Cir. 1995); *Arachnid, Inc. v. Merit*

---

[9] The Court's ruling was in the context of the Anti-SLAPP motion—the decision is not a final one on the merits or a basis for collateral estoppel.

*Indus., Inc.*, 939 F.2d 1574, 1578-79 (Fed. Cir. 1991).  To determine whether an exclusive license is in essence an assignment, the court "must ascertain the intention of the parties [to the license agreement] and examine the substance of what was granted." *Alfred E. Mann Found.*, 604 F.3d. at 1359.

The transfer of "all substantial rights" under the patent-in-suit to an exclusive licensee is tantamount to an assignment of those patents, conferring standing to sue solely on the licensee.  *Id.* at 1358-59 (citations omitted).  Where the licensor retains a right to sue accused infringers, that right often precludes a finding that "all substantial rights" were transferred to the licensee.  *Id.* at 1361.  It does not, however, preclude such a finding if the licensor's right to sue is rendered illusory by the licensee's ability to grant sublicenses to the accused infringers.  *Id.* (citing *Speedplay, Inc. v. Bebop, Inc.*, 211 F.3d 1245, 1251 (Fed. Cir. 2000) (finding that a clause allowing the patent owners to bring their own infringement action if the licensee failed to do so within three months was an "illusory" retention of the right to sue because the licensee could "render that right nugatory by granting the alleged infringer a royalty-free sublicense.")).

If Applera (and then Life Tech) obtained "all substantial rights" in the patents-in-suit under the license agreement with Cornell, Cornell no longer has any ownership interest in those patents and thus lacks independent standing.  Indeed, Applera represented in the 2004 Settlement Agreement that it "owned" the then-disputed patents.[10]  2004 Settlement Agreement § 2.1.  Further, Applera represented that it had the right to sublicense to Illumina.  *Id.*  Based on these representations, Illumina believes that

---

[10] In addition, Applera represented in its Amended Complaint for Patent Infringement that it was the "named assignee" for each of the then-disputed patents. *Applera Corp. v. Illumina, Inc.*, No. CV-03-01048 MHP (N.D. Cal., April 22, 2003).

Cornell lacks standing. Plaintiffs have done nothing to rebut this charge, and indeed have impeded Illumina's attempts to resolve the issue. For example, on January 18, 2011, Illumina asked Life Tech to voluntarily and immediately produce its licensing agreement with Cornell. Life Tech declined to do so. *See* Lindner Declaration at ¶ 3.

### (b) Cornell Cannot Sue a Party Authorized to Practice the Patents By The Exclusive Licensee—Life Tech.

Regardless of what rights Cornell granted to Applera/Life Tech, Cornell is also barred from bringing this suit by the terms of the 2004 Settlement Agreement. Under that agreement, Applera granted to Illumina a broad covenant not to sue. That covenant authorized Illumina's accused products to practice the patents-in-suit.

A covenant not to sue is equivalent to a license. *See, e.g., TransCore, LP v. Electronic Transaction Consultants Corp.*, 563 F.3d 1271, 1275 (Fed. Cir. 2009) (affirming the district court's holding that the accused sales were authorized). In *TransCore,* the Federal Circuit held that an unconditional covenant not to sue has the same effect as an unconditional license for purposes of patent exhaustion. 563 F.3d at 1275. The Federal Circuit noted that courts have "on numerous occasions explained that a non-exclusive patent license is equivalent to a covenant not to sue." *Id.*[11] Accordingly, the Federal Circuit found that the "question ... is not whether an agreement is framed in terms of 'a covenant not to sue' or a 'license.' That difference is only one of form, not of substance—both are properly viewed as 'authorizations.'" *Id.* at 1276.

---

[11] *See also De Forest Radio Telephone & Telegraph Co. v. United States*, 273 U.S. 236, 242 (1927) ("As a license passes no interest in the monopoly, it has been described as a mere waiver of the right to sue by the patentee."); *Ortho Pharm. Corp. v. Genetics Inst.*, 52 F.3d 1026, 1032 (Fed. Cir. 1995) ("In its simplest form, a license means only leave to do a thing which the licensor would otherwise have a right to prevent. such a license grants to the licensee merely a privilege that protects him from a claim of infringement by the owner of the patent monopoly.")

In the 2004 Settlement Agreement, Applera warranted that it had the right to grant sublicenses[12]—a right it exercised by granting Illumina a sublicense and a covenant not to sue. [13] 2004 Settlement Agreement at §§2.1, 4.5, 4.7. Life Tech assumed the rights and obligations of that agreement as Applera's successor. Because Life Tech granted Illumina the right to make, use, sell, etc. the products at issue by way of the covenant not to sue, Illumina's products are "authorized," and Cornell as licensor cannot sue Illumina for making products authorized by a sublicense.

**B.**   **Bifurcation Will Conserve Judicial Resources.**

Many courts have granted motions to separate under FRCP 42(b) when the issue that would be heard first has the potential to either simplify or make unnecessary the second trial. *See, e.g. Eurand, Inc. v. Myland Pharmaceuticals, Inc.*, No. 08-889-SLR, slip op., 2009 WL 3172197 (D. Del. Oct. 1, 2009); *Akzona, Inc. v. E.I. DuPont De Nemours & Co.*, 607 F. Supp. 227 (D. Del. 1984); and *Ericsson, Inc. v. Samsung Electronics Co., Ltd.*, 2007 WL 1202728 (E.D. Tex. Apr. 20, 2007). This is just such a circumstance. If Illumina prevails against Life Tech on the contract issue, this case will either end or be simplified significantly, saving this Court significant resources. The California court found that Illumina had shown a probability of proving Life Tech breached the covenant not to sue by bringing suit before this Court. Moreover, when Illumina asserted that the covenant not to sue covered the '039 patent in 2007, Life Tech abandoned its licensing attempts. This conduct shows that Life Tech impliedly agreed that the so-called "PCR patents" were covered by the 2004 Settlement Agreement.

---

[12] In fact, given the typical nature of <u>exclusive</u> licenses, Cornell likely gave up its right to authorize others to practice the patents at issue in this case, instead giving that right exclusively to Applera.

[13] If Applera did not have such a right, Cornell's remedy is from Life Tech, not Illumina.

Courts bifurcate when the early resolution of certain issues would create the potential for efficiencies: certainty of efficiencies is not required. In *Eurand*, the Delaware court granted a motion to separate the plaintiff's patent infringement claims from the defendant's antitrust and patent misuse counterclaims. *Eurand*, 2009 WL 3172197 at *2. The court noted that if the plaintiff prevailed on the infringement claim, the defendant's counterclaim "may be rendered moot." *Id.* Similarly, in *Akzona*, the court separated patent claims from antitrust and unfair competition claims because the second trial need not occur should the plaintiff prevail in the first trial. *Akzona*, 607 F. Supp. at 232. Further, even if the plaintiff did not prevail at the first trial, the result of the first trial would inform the parties about an essential element in the second trial. *Id.* Yet another court from this district separated patent liability from patent damages claims in part because the "trial of the damages question in such a suit is often difficult and expensive," and the liability trial may "well make unnecessary the damages inquiry, and thus result in substantial saving of time of the Court and counsel and reduction of expense to the parties." *Smith v. Alyeska Pipeline Service Co.*, 538 F. Supp. 977, 983 (D. Del. 1982).

A Texas court relied on the same rationale in separating a breach of contract counterclaim from the plaintiff's patent infringement claim. *See Ericsson*, 2007 WL 1202728. In *Ericsson*, the plaintiff filed suit against a competitor, asserting infringement of 15 patents. *Id.* at *1. The defendant counterclaimed for infringement of 21 different patents and also asserted a breach of contract claim alleging the plaintiff had breached an obligation imposed by membership in an industry group to license the 15 patents under reasonable terms. *Id.* The plaintiff responded with its own breach of contract claim

based on the same industry membership. *Id.* Before the scheduling conference, the defendant filed a motion for a separate trial on the contract claims. *Id.* In granting the motion, the Texas court noted that separate trials are proper when the case "involves more than one cause of action or defense, and a separate trial might render trial of the other issues unnecessary." *Id.* at *2 (internal citations omitted).

In determining whether the breach of contract claim was separable from the patent infringement claims, the *Ericsson* court noted that since the contract claim "standing alone implicat[ed] no substantial question of federal patent law, it is difficult to understand how the issues in such a case could not be separated from the issues in a patent infringement case." *Id.* The court granted the motion, noting that the breach of contract claim would need to be resolved at some point in the case, and that even if the contract claim did not dispose of all of the infringement claims, the "possibility that resolution" of the contract claims "might alleviate many of the primary differences between the parties is sufficient to counsel the court that the terms and purposes of Rule 42(b) are satisfied." *Id.* at *3.

These arguments support bifurcation in this case. If Illumina succeeds in showing that Life Tech breached (and continues to breach) the covenant not to sue by asserting claims against Illumina, a second trial will be avoided or at least streamlined. As discussed above, the covenant issue may end the case completely if Cornell is unable to proceed (either because it lacks independent standing or because Illumina has a sublicense). Even in the unlikely event that Cornell is able to proceed, dismissal of the exclusive licensee may aid the parties in settlement of the case since Cornell's damages will be limited. In addition, the contract case would require significantly fewer trial days

than a patent validity and infringement case. Plaintiffs assert eight patents against Illumina. Combined, these patents contain 111 claims. Plaintiffs accuse at least eleven products with infringement (the "Accused Products").[14]  As in *Ericsson*, the present contract dispute does not implicate an issue of federal law; the issues are separable from the patent claim. This Court need not engage in a *Markman* analysis of the patent claims to resolve the contract issue, thus further conserving resources. Finally, even if Illumina is not successful on its contract defense, the Court would not have wasted any judicial resources because the contract issues would have to be addressed at some point.

**C.       Bifurcation Will Lessen Discovery Burdens on the Parties.**

In appropriate cases, the use of Rule 42(b) to separate cases and stay unrelated discovery can save the parties significant discovery costs. The power to limit discovery to issues relevant to the first trial is "implicit in 42(b)." *Akzona*, 607 F. Supp. at 232. In *Akzona*, the court granted a bifurcation motion and separated a patent case from antitrust and patent misuse claims. The court noted "[o]ne of the purposes of Rule 42(b) is to permit deferral of costly and possibly unnecessary discovery proceedings pending resolution of potentially dispositive issues." *Id.* at 236. Employing FRCP 42(b) early is beneficial because "simplifying discovery"—or even "simply limiting the scope of discovery" would "as a matter of course save money and time for the litigants and even for the court." *Industrias Metálicas Marva, Inc. v. Lausell*, 172 F.R.D. 1, 4-5 (D. P.R. 1997) (separating trials and staying discovery not related to first trial).

---

[14] From the definitions contained in Plaintiffs' first set of discovery requests, it appears they accuse at least eleven of Illumina's products of infringement.

Patent infringement and validity cases are time consuming and expensive to litigate. In a case like the present case, a court bifurcated the issue of patent ownership from a patent infringement case. *Kahn v. General Motors Corp.*, 865 F. Supp. 210 (S.D.N.Y. 1994). The court noted that if the plaintiff prevailed on the ownership issue, the short trial "would not have been in vain," and if the plaintiff did not prevail on ownership, the parties "will have saved the substantial cost of preparing for and conducting the trial on the infringement issue." *Id.* at 215.[15] *See, also, Smith*, 538 F. Supp. 977 (separating liability from damages and setting separate discovery period for damages in patent case because (a) the damages question in patent suits is often "difficult and expensive"; (b) the liability determination may "make unnecessary the damages inquiry, and thus result in substantial savings of time of the Court and counsel and reduction of expense to the parties"; and (c) a separate liability trial may create an opportunity to settle); and *Fischer & Porter Co. v .Sheffield Corp.*, 31 F.R.D. 534 (D. Del. 1962) (bifurcating patent claims from antitrust claims and staying discovery on antitrust claims where antitrust case would require at least another year of pre-trial discovery).

Though a large number of bifurcation decisions involve separating patent liability from patent damages or patent infringement from patent misuse, the rationale behind these decisions is "also applicable to cases involving both patent and non-patent claims." *Enzo Life Sciences, Inc. v. Digene Corp.*, 2003 WL 21402512, *5 (D. Del. June 10, 2003). *See, also, Ericsson*, 2007 WL 1202728 (separating breach of contract

---

[15] The court in *Kahn* separated the issues on "the eve of trial" and six years into the case, so there was no remaining discovery for the court to stay. *Kahn v. General Motors Corp.*, 865 F. Supp. 210, 211 (S.D.N.Y. 1994).

counterclaim from second trial on patent infringement and staying infringement

discovery); and *Kahn*, 865 F. Supp. 210 (separating patent ownership issue from patent

infringement issue).

The parties in this case are on the verge of an enormously expensive lawsuit.[16]

Plaintiffs assert 8 patents against Illumina with a combined 111 claims, with at least 11

Accused Products. The oldest patent-in-suit, U.S. Patent No. 6,797,470, issued in 2004.

Since that time, Illumina has sold millions of dollars worth of the Accused Products.

Plaintiffs' First Request for Production of Documents contains extremely broad requests

that impose a substantial burden on Illumina. Plaintiffs have also served document

requests and interrogatories.[17] The cumulative requests, which focus almost entirely on

the patent validity and infringement case, are largely irrelevant to the contract dispute.

Moreover, the burden imposed by these requests is even more taxing when one considers

that Illumina contracted in 2004 to avoid just such a lawsuit.

In contrast, the discovery necessary to try the breach of covenant constitutes a

mere fraction of the discovery needed for the patent infringement and validity case. The

contract case boils down to whether Life Tech's covenant not to sue covers the type of

patent claims that Plaintiffs assert, i.e. whether the asserted patent claims are

"instruments" or "PCR methods." This analysis requires a fact finder to interpret only

these two terms of the contract. Even if extrinsic evidence is considered like evidence

regarding the parties' intent at the time of the contract, or opinions of experts illuminating

---

[16] Plaintiffs served a set of interrogatories and a set of document requests. Illumina responded to both, but has not produced documents.

[17] Illumina has objected to some of these requests and offers them here only as indicia of the extent of the discovery burden likely in the patent case.

how the terms are used in the industry, the scope and burden of discovery will be much more limited than the scope and burdens of patent discovery. The effort required to determine the parties' patent infringement and validity claims would be considerable, and would impose significant additional burdens on both the parties and this Court. Indeed, the schedule the parties submitted to the Court, which contemplates patent discovery, provides for almost a year of fact discovery, another four months of expert discovery, contains the necessarily detailed procedure for claim construction and a technology presentation by the parties with supporting briefs, and provides another several months for summary judgment motions to be filed and decided. The potential discovery-related savings of bifurcation are substantial, both for the parties and for this Court.

Under any scenario in this case, discovery burdens will decrease if the Court bifurcates the contract issue. If Illumina proves Life Tech breached the covenant and Cornell is unable to proceed, the case will be resolved completely. If Illumina proves Life Tech breached the covenant and Cornell is allowed to proceed on its own in the case, at a minimum, the damages analysis would be streamlined. If Cornell is even entitled to any monetary damages (which, as discussed above, would be unlikely since Illumina already paid for a sublicense), Cornell would be limited to a reasonable royalty as it does not manufacture or sell products covered by the patents. Even if Life Tech prevails on the contract issue and the case goes forward, neither the parties nor the Court would have wasted significant resources since the contract issue would have to be decided either way.

Bifurcation is particularly appropriate here to protect Illumina from the significant, and potentially unnecessary, burden of defending against Plaintiffs' patent claims; Illumina paid handsomely for freedom from just such a suit. If Illumina prevails

on its contract defense only after 18 or more months of costly litigation of Plaintiffs'
patent claims, the victory will be Pyrrhic.

**D.     Bifurcation Will Aid the Jury by Simplifying the Case.**

Courts also grant bifurcation to simplify issues for the jury.  The District of
Delaware previously granted a motion separating patent liability from patent damages
and willfulness where the complexity of patent cases would have impeded juror
comprehension. *Ciena Corp. v. Corvis Corp.*, 210 F.R.D. 519 (D. Del. 2002).  In *Ciena*,
Judge Farnan cited several decisions, secondary sources, and his own experience
speaking with jurors before concluding "bifurcation is an important discretionary tool that
district courts can use in patent cases to ensure that the cases are resolved in a just
manner by juries that understand the complex issues before them." *Id.* at 521.

The breach of contract issue is not without its own factual complexities that, when
combined with the patent case, would be a lot to ask of a jury.  The 2004 Settlement
Agreement provides that Life Tech will not sue Illumina for any claim or commence any
action for patent infringement of Blocking Patents by the Defined Product or Modified
Defined Product.  To decide the contract issue, a fact finder will have to decide whether
the asserted claims of the patents-in-suit are excluded from the covenant not to sue, i.e.,
whether the claims at issue cover "PCR methods" (for the Genetic Analysis Patents) and
"instruments" (for the Array Patent).[18]  This is a question of contract law, not claim
construction.

---

[18] A fact finder will also have to determine whether the asserted claims involve Blocking Patents and
Defined Products if Life Tech decides not to concede these issues as they have thus far in California.

The complexity of this patent case alone would be a challenge for even the most well-intentioned and well-instructed jury.  The eight patents-in-suit all claim inventions aimed at the field of genetic research.  Seven of the patents can be grouped together as Genetic Analysis Patents, which claim a method or methods for determining information about nucleotide (i.e., DNA) sequences.  The eighth patent, U.S. 7,083,917 ("the Array Patent"), is titled "Detection of Nucleic Acid Sequence Differences Using the Ligase Detection Reaction with Addressable Arrays."  The technology involved, plus the number of potential asserted claims, that is, between 8 and 111, plus the number of Accused Products will be enormously complex.  This Court can simplify the jury's task by granting Illumina's motion to bifurcate and stay.

The contract issue, by itself, is well within the capabilities of a jury.  A capable jury likewise could navigate the patent claims.  But the contract and patent cases combined are sufficiently complex that they would likely impede juror comprehension. Bifurcation of the issues would therefore serve the important goals of simplifying issues for consideration by the jury and facilitating jury comprehension.

**E.     No Factors Counsel Against Bifurcation.**

Balanced against the benefits of bifurcation, as described above, are the potential costs of separation.  Here, there would be only one cost:  two trials, should they both be necessary, are more work than one.  But this cost is implicit in the ability to bifurcate and thus is already accounted for in considering the issue.

Bifurcation would have no impact on this Court's jurisdiction.  Case law makes clear this Court need not be concerned about separating a state law claim from the rest of the case.  A bifurcation decision is procedural, not substantive, and therefore has no

effect on jurisdiction. *In re Innotron Diagnostics*, 800 F.2d 1077, 1079 n.1 (Fed. Cir. 1986) (internal citations omitted).

Case law makes equally clear that the requested bifurcation does not implicate any Seventh Amendment concerns. In the unlikely event any evidence overlaps between the two trials, the Seventh Amendment prohibits only two juries *deciding* the same issue, not having two juries review the same evidence. *Innotron*, 800 F.2d at 1086; *Smith*, 538 F. Supp. at 984.

Finally, no prejudice will result from bifurcation. Should Plaintiffs prevail on both the contract and patent infringement and validity issues, their damages will be monetary. To the extent they are entitled to these damages, the short delay involved with bifurcation will not decrease their recovery, as damages will continue to accrue during consideration of the contract issues.

## CONCLUSION

Bifurcation in this case would benefit the Court, the jury, and all of the parties. It would also serve to best preserve the benefit of Illumina's bargain made in the 2004 Settlement Agreement. Illumina respectfully requests that this Court grant its motion to separate the breach of covenant issue and stay the remainder of the case.

ASHBY & GEDDES

/s/ *Lauren E. Maguire*
_____
Steven J. Balick (I.D. #2114)
Lauren E. Maguie (I.D. #4261)
Caroline Hong (I.D. #5189)
500 Delaware Avenue, 8th Floor
P.O. Box 1150
Wilmington, DE 19899
(302) 654-1888
sbalick@ashby-geddes.com
lmaguire@ashby-geddes.com
chong@ashby-geddes.com

*Attorneys for Defendant*

*Of Counsel:*

David G. Hanson
Amy L. Lindner
Reinhart Boerner
Van Deuren, s.c.
1000 North Water Street, Suite 1700
Milwaukee, WI 53202
(414) 298-1000

Dated:  February 1, 2011