IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CORNELL UNIVERSITY, CORNELL RESEARCH FOUNDATION, INC., LIFE TECHNOLOGIES CORPORATION AND APPLIED BIOSYSTEMS, LLC, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | REDACTED - PUBLIC VERSION |
| v. | ) ) | C.A. No. 10-433-LPS-MPT |
| ILLUMINA, INC., | ) ) | ███████████████████ |
| Defendant. | ) | |

**LETTER TO THE HONORABLE MARY PAT THYNGE FROM KAREN E. KELLER**

OF COUNSEL:
Rip Finst
Sean Boyle
THERMO FISHER SCIENTIFIC INC.
5781 Van Allen Way
Carlsbad, CA 92008
(760) 603-7200
*Attorneys for Life Technologies Corp. &
Applied Biosystems, LLC*

Dianne B. Elderkin
Angela Verrecchio
Matthew A. Pearson
Jason E. Weil
AKIN GUMP STRAUSS HAUER & FELD LLP
2001 Market Street, Suite 4100
Philadelphia, PA 19103
(215) 965-1200
*Attorneys for Plaintiffs*

Rachel J. Elsby
AKIN GUMP STRAUSS HAUER & FELD LLP
1333 New Hampshire Avenue, N.W.
Washington, DC 20036
(202) 887-4000
*Attorney for Plaintiffs*

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
David M. Fry (No. 5486)
SHAW KELLER LLP
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
jshaw@shawkeller.com
kkeller@shawkeller.com
dfry@shawkeller.com
*Attorneys for Plaintiffs*

Dated:  September 29, 2016



Karen E. Keller
300 Delaware Avenue, Suite 1120
Wilmington, DE 19801
(302) 298-0700
(302) 298-0702 - Direct
kkeller@shawkeller.com

September 29, 2016



**BY CM/ECF & HAND DELIVERY**
The Honorable Mary Pat Thynge
U.S. District Court for the District of Delaware
844 N. King Street
Wilmington, DE 19801

     Re:    *Cornell University, et al. v. Illumina, Inc.*, C.A. No. 10-433-LPS-MPT

Dear Magistrate Judge Thynge:

     I write on behalf of Plaintiffs regarding an outstanding discovery dispute between the parties. The issue is straightforward: whether Illumina should be allowed to offer opinions or testimony from an expert witness on patent law or the practices and procedures of the Patent and Trademark Office (the "PTO").

     One of Illumina's experts is Larry Nixon, an attorney with an electrical engineering background who "focus[es] his practice primarily on providing patent law opinions" and other intellectual property matters. Ex. A (Mr. Nixon's website profile). Over the past 40 years, Mr. Nixon has worked as an expert witness in dozens of patent cases, including at least two cases in the District of Delaware in which his testimony has been excluded. Ex. B (Mr. Nixon's expert disclosure and CV); *St. Jude Med. v. Volcano Corp.*, C.A. No. 10-631-RGA, D.I. 239 (order), at 1 (D. Del. June 15, 2012) (Ex. C); *CNH Am., LLC v. Kinze Mfg., Inc.*, C.A. No. 08-945-GMS, D.I. 287 (transcript), at 73:24-74:17 (D. Del. Jan. 5, 2011) (Ex. D). And in this case, Illumina has confirmed that it intends to present opinions and testimony from Mr. Nixon concerning "patent practice and PTO procedure, for example as they relate to declarations submitted to swear behind references, . . . to provide the jury (and the judge) with an understanding of the matters underlying the priority date of the purported inventions." Ex. E. The proffered subject area of Mr. Nixon's testimony treads dangerously close to Illumina's inequitable conduct allegations. *See, e.g.*, D.I. 406, Ex. A, ¶ 21 (alleging that "the Examiner necessarily relied on the inventors' declaration of prior invention in his decision to allow the patent to issue despite the teachings of Carrino, Zhang390, and Zhang924").

     "[T]he judges in this District have a well-established practice of excluding the testimony of legal experts, absent extraordinary circumstances." *AstraZeneca UK Ltd. V. Watson Labs., Inc.*, C.A. No. 10-915-LPS, 2012 WL 6043266, at *1-2 (D. Del. Nov. 14, 2012) (granting motion to exclude plaintiffs' patent law expert from testifying on all proffered issues, including "procedures at the PTO"; collecting cases and citing J. Robinson's "Additional Civil Trial Guidelines for Patent Cases"); *see also, e.g.*, *Personalized User Model, L.L.P. v. Google, Inc.*, C.A. No. 09-525-LPS, 2014 WL 807736, at *2 (D. Del. Feb. 27, 2014) (granting motion to strike portions of an expert report providing legal testimony on issues of assignment and transfer of patent rights); *St. Jude*, at 1 (Ex. C) (granting motion to strike expert report from Mr. Nixon on "practices and procedures before the USPTO"); *CNH Am.*, at 70:21-24 (Ex. D) ("No patent law experts. I don't permit them in my Court"); *S.O.I. Tec Silicon On Insulator Techs., S.A. v. MEMC Elec. Materials, Inc.*, 745 F.

SHAW KELLER LLP
The Honorable Mary Pat Thynge
Page 2

Supp. 2d 489, 507 n.16 (D. Del. 2010) (denying motion to admit testimony of patent law expert); *Software AG v. BEA Sys., Inc.*, C.A. No. 03-739-GMS, D.I. 234 (transcript), at 25:15-24 (D. Del. April 4, 2005) (Ex. F) (refusing to allow testimony from patent law expert); *Ondeo Nalco Co. v. EKA Chems., Inc.*, C.A. No. 01-537-SLR, 2003 WL 1524658, at *3 (D. Del. Mar. 21, 2003) (striking report and testimony from a patent law expert).

While some judges have allowed patent law experts to testify about PTO practices and procedures, others, including Judge Stark, have prohibited even this limited category of expert testimony. *Compare AstraZeneca*, 2012 WL 6043266, at *1-2 (excluding expert testimony not only on substantive issues of patent law, but also "on procedures at the PTO"); *St. Jude*, at 1 (Ex. C) (explaining that "[t]he only portion of attorney Nixon's report for which plaintiff offers any meaningful authority in support of admissibility (that is, about practices and procedures before the USPTO, pp. 3-7 of the report) is akin to a legal brief, and should not be the subject of expert testimony"); *CNH Am.*, at 73:24-74:17 (Ex D) (excluding all patent law experts, including as to "Patent Office policies and procedures"), *with Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, C.A. No. 08-464, 2010 WL 3907490, at *2 (D. Del. Sept. 21, 2010) (Bartle, J.) (acknowledging that "[t]he law of this district is clear that experts in patent cases may not opine on 'substantive issues of patent law'" but allowing expert testimony "to the extent it explains the PTO's practices and procedures"); *W.L. Gore & Assocs., Inc. v. C.R. Bard, Inc.*, C. A. No. 11-515-LPS-CJB, D.I. 457 (memo. order), at 7-11 (Ex. G) (D. Del. Nov. 20, 2015) (granting motion to exclude opinions and testimony from a patent law expert except as to "general PTO practice and procedure"; further noting that the district court might "ultimately determine that even these two categories of testimony will not be particularly 'helpful' to it").

This well-established practice of excluding patent law experts is supported by sound policy considerations. In a bench trial, testimony from a patent law expert is a waste of time, as the court is well-equipped to understand PTO practice and procedure without the need for expert testimony. Patent law experts are just as unnecessary in a jury trial, where the jury will watch the patent video and receive detailed instructions on every relevant aspect of patent law before they begin their deliberations. *See* J. Robinson's "Additional Civil Trial Guidelines for Patent Cases" ("In view of the fact that the jury is shown 'An Introduction to the Patent System,' expert testimony from attorneys regarding patent practice and procedure is not required and will not be permitted except for extraordinary circumstances."); *Software AG*, at 20:15-21:7 (explaining that the court is "presumed to be the patent law expert . . . in the room that adduces those matters to the jury") (Ex. F).

Moreover, allowing a patent law expert to testify in a jury trial creates a risk that the expert will be used as a conduit for attorney argument—not only explaining how the PTO and the patent system work, but also suggesting how the jury should connect the evidentiary dots to reach their ultimate conclusions – an even more dangerous situation. *See St. Jude*, at 1 (Ex. C) (striking Mr. Nixon's report on PTO practices and procedures, explaining that this type of testimony "is akin to a legal brief, and should not be the subject of expert testimony"); *Software AG*, at 25:15-24 (Ex.F) ("I think that [the proffered patent law expert's] testimony and presence, quite frankly, before the jury is fraught with more potential for unintended mischief, perhaps, but mischief nonetheless than is offset by the value that he adds to your case. I think there are other means that you have at your disposal to adduce the facts that you need to, either by direct evidence or inferentially . . . ."). Illumina can use the fact witnesses to establish the necessary factual record and its closing

Shaw Keller llp
The Honorable Mary Pat Thynge
Page 3

argument to draw whatever inferences it wishes to draw, but it should not be allowed to bolster the credibility of those inferences through a court-approved expert.[1]

The risk of prejudice is particularly acute in this case, where Illumina has accused the inventors and their counsel of inequitable conduct through the submission of an allegedly false declaration.  Given the proffered subject matter of Mr. Nixon's testimony, it will be difficult—if not impossible—for him to testify at the jury trial without wading into the forbidden territory of inequitable conduct, an issue for the bench, that would be highly prejudicial if suggested to the jury.  In light of this high risk of prejudice and the longstanding practice of excluding this type of testimony in the District of Delaware, Illumina should not be allowed to offer opinions or testimony from Mr. Nixon on patent law or PTO practices and procedures.

During the meet-and-confer process, Illumina did not offer a justification for departing from the district court's near-prohibition on patent law experts.  Instead, Illumina offered an evidentiary trade whereby Illumina would withdraw Mr. Nixon if Plaintiffs would agree (1) "not to offer Michael Goldman [the attorney who prosecuted the patents-in-suit] as a witness during the jury trial" and (2) "not to offer any testimony or argument suggesting that the examiner considered the Zhang-authored materials [the materials at issue in Illumina's inequitable conduct allegations] as prior art in allowing any claims of the '470 Patent family [the patent family to which Illumina's inequitable conduct allegations are directed]."  Ex. H.  But Illumina has not explained why either of these scenarios would require the rebuttal testimony of a patent law expert.  If Mr. Goldman testifies, Illumina is free to cross-examine him about the subject areas of his testimony—it should not be allowed to challenge the testimony of a fact witness through an attorney–expert with no firsthand knowledge of any issue in the case.  Likewise, if a witness suggests that the examiner considered the Zhang-authored materials as prior art in allowing any claims of the '470 Patent, Illumina is free to cross-examine those witnesses and challenge this suggestion in its closing argument.  Neither of these hypothetical situations would justify the wastefulness and substantial risk of prejudice of allowing Mr. Nixon to testify.

Finally, although this issue is often addressed in the *Daubert* or *in limine* context, the *Daubert* motions in this case will not be fully briefed until February 13, 2017.  In the meantime, opening expert reports are due on October 14, 2016, with responsive reports and depositions following soon thereafter.  Thus, unless Plaintiffs' request is granted now, they will be required to incur the costs of responding to Mr. Nixon's report, deposing him, and briefing and arguing a *Daubert* motion—all of which is unnecessary in light of this Court's longstanding practice of

---

[1] *See S.O.I. Tec*, 745 F. Supp. 2d at 507 n.16 (denying motion to admit expert testimony of a patent law expert regarding "(1) the context of when and under what circumstances an applicant may make amendments after receiving a notice of allowance; (2) procedurally how these amendments are evaluated by the [PTO]; and (3) how the applicants here avoided substantive examination of the broad claim scope. . . by misusing these two types of [PTO] proceedings" where the expert had no specific knowledge regarding the applications at issue or the PTO's treatment of the applications); *W.L. Gore*, at 10 (Ex. G) (excluding opinions that stray beyond PTO practices and procedures including opinions on what might have happened at the PTO under different circumstances because the testimony is "infused to too great a degree with what sounds like legal opinion, or with speculation as to what may have been in another's mind").

SHAW KELLER LLP
The Honorable Mary Pat Thynge
Page 4

excluding testimony like Mr. Nixon's (including Mr. Nixon's own testimony in other cases). For these reasons, Plaintiffs respectfully request that the Court preclude Illumina from offering any expert testimony on patent law or PTO practice and procedure.

Respectfully submitted,

*/s/ Karen E. Keller*

Karen E. Keller (No. 4489)

cc:     All Counsel of Record (by electronic mail)
        Clerk of the Court (by hand delivery)

# Exhibit A



LEGAL UPDATES   |   RECOGNITION   |   CAREERS       [Sub]

OUR FIRM   PROFESSIONALS   SERVICES   INDUSTRIES   CONTACT

# Larry S. Nixon

Mr. Nixon leverages his electrical engineering background and 43-plus years of experience in the field of intellectual property law by focusing his practice primarily on providing patent law opinions, patent litigation and patent prosecution involving higher level technical issues.

In addition to having participated in hundreds of patent litigations (as counsel or as an expert witness on patent law) and having written and/or prosecuted many thousands of U.S. patents, Mr. Nixon has also served as an arbitrator and a mediator and has been active in lecturing and writing (both in the U.S. and abroad) about computer law topics.

Mr. Nixon has been listed in Virginia Super Lawyers for many years and has also been listed in The Best Lawyers in America every year since 1995.

His master's degree thesis concerned a radiating slot spacecraft antenna. He worked his way through college by building and testing prototypes and models and by writing and operating computer programs in various University laboratories, and by undertaking technical responsibilities at the Illinois Power Company, the Collins Radio Company, the Illinois State Water Survey and Lawrence Radiation Laboratories in Livermore, California.

He received his J.D. from Georgetown University Law School in 1971 (after an interruption for military service in the U.S. Army).

Mr. Nixon is currently a member of the bars of Virginia and the District of Columbia and a member of the American Bar Association and the American Intellectual Property Law Association. He has been admitted to practice before many of the Federal courts (including the Court of Appeals for the Federal Circuit and the US Supreme Court), is currently registered for alternate dispute resolution services with the AIPLA, and is on the Panel of Distinguished Neutrals at the International Institute for Conflict Prevention & Resolution (CPR).

" **It is most satisfying to help a client achieve a worthwhile goal."**

## CONTACT

PHONE: **1-703-816-4002**

FAX: **1-703-816-4100**

EMAIL: lsn@nixonvan.com

VCARD: [icon] Download

## EXPERTISE

Services:
- Patent Prosecution
- IP Litigation
- Reexamination & Reissues
- Licensing
- IP Due Diligence
- Transactional Negotiation
- Interferences
- Expert Witnessing
- Mediation & Arbitration

## EDUCATION

Patent Prosecution

IP Litigation

Nixon & Vanderhye P.C.  |  901 North Glebe Road  |  11th Floor  |  Arlington, VA 22203

PHONE: 703-816-4000    FAX: 703-816-4100

©2016 Nixon & Vanderhye P.C. All rights reserved.  Privacy Policy | Disclaimer

# Exhibit B

**COVINGTON**

BEIJING   BRUSSELS   LONDON   LOS ANGELES
NEW YORK   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Covington & Burling LLP
One CityCenter
850 Tenth Street, NW
Washington, DC 20001-4956
T  +1 202 662 6000

January 29, 2016

VIA ELECTRONIC MAIL

David M. Fry
Shaw Keller LLP
300 Delaware Ave., Suite 1120
Wilmington, DE 19801
dfry@shawkeller.com

Re:    *Cornell University, et al. v. Illumina, Inc.*, 1:10-cv-00433-LPS-MPT

Dear David:

Please find attached the CV, case/consulting list, and executed confidentiality agreement of Larry S. Nixon. In addition, Defendant makes the following disclosures for Mr. Nixon pursuant to Paragraph 13 of the protective order:

(a)    Current employer: Nixon & Vanderhye P.C.

(b)    Business address: 901 North Glebe Road, 11th Floor, Arlington, VA 22203

(c)    Business title: President of Nixon & Vanderhye P.C.

(d)    Business or profession: Patent Attorney

(e)    For the preceding four years, Mr. Nixon has no other relationship (personal or professional) with any of the parties, except currently appearing as an expert witness on behalf of Illumina, Inc. in *Enzo Life Sciences v. Illumina, Inc.*, CA No. 12-435-LPS (D. Del.) matter.

(f)    See the attached lists including (1) all cases in which Mr. Nixon has testified (at trial or deposition) in the last four years, (2) all companies for which Mr. Nixon has provided consulting services, either directly or through a consulting firm, in the last four years, and (3) all companies by which Mr. Nixon has been employed within the last four years.

Sincerely,

*/s/ Jay Alexander*

Jay Alexander

cc:    Counsel of Record (by electronic mail)

# CURRICULUM VITAE

Larry S. Nixon



## Educational Background

### University of Illinois

Bachelor of Science degree in Electrical Engineering, 1965
Master of Science degree in Electrical Engineering, 1966
Graduate Teaching Assistant
Bronze Tablet
National Science Foundation Fellowship
Tau Beta Pi
Phi Kappa Phi
Eta Kappa Nu

### Georgetown University

Juris Doctorate degree in Law, 1971

## Military Service

1967-1969 -- U.S. Army
Highest Rank: First Lieutenant
Duty: Systems Analyst, Pentagon

## Employment Background

Numerous engineering related jobs during college years

1966-1967 -- General Electric Company, Washington Patent
Operation

--performed patentability, patent validity and patent infringement searches of prior art literature at United States Patent and Trademark Office on behalf of General Electric Company and formally reported the results of such searches to various patent counsel within numerous divisions of General Electric Company.

1967-1969 -- U.S. Army, Adjutant General Corp
Pentagon, Data Systems Command

- 2 -

--designed and supervised computer programming and implementation of advance impact reporting system to better control and predict future problems with personnel reports generated by extensive computer system in Data Systems Command.

1969-1971 -- Cushman, Darby & Cushman, Washington, D.C.

--law clerk performing numerous duties for patent litigation and patent application prosecution matters such as legal research, witness interview and preparation, trial assistance, analyzing and reporting results of patentability searches, patent validity searches, patent infringement searches; preparing and filing patent applications; and prosecuting U.S. and foreign patent applications.

1971-1974 -- Cushman, Darby & Cushman, Washington, D.C.

--associate attorney continuing to assist with patent infringement litigation; taking pretrial depositions of witnesses; examining witnesses at trial; rendering legal opinions on patent validity and infringement issues; rendering legal opinions on patentability issues; preparing and filing U.S. and foreign patent applications; prosecuting patent applications before the U.S. Patent and Trademark Office; licensing negotiations.

1974-1985 -- Cushman, Darby & Cushman, Washington, D.C.

--partner of law firm specializing in all aspects of intellectual property law practice including principal responsibilities in patent infringement litigation; appearances in litigation as an expert witness on intellectual property law including practice and procedure in the U.S. Patent and Trademark Office; conducting licensing negotiations for intellectual property rights; rendering legal opinions on validity, infringement and enforceability of intellectual property rights; lecturing and publishing papers on selected intellectual property law topics; extensive patent application prosecution practice including all ex-parte and inter-partes practices before U.S. Patent and Trademark Office such as reissue, reexamination, interference and appeals to the Patent Office Board of Patent Appeals and Interferences; some trademark and copyright law practice; principal client responsibilities for major clients.

1985-present -- Nixon & Vanderhye, Arlington, Virginia

--co-founder and President of intellectual property law firm specializing in all aspects of intellectual property law including principal responsible attorney in patent, copyright and trademark infringement litigations; witness interrogations; expert witness on patent law and practice in patent infringement litigation; conducting licensing and litigation settlement negotiations; preparation and prosecution of U.S. and foreign patent applications; all ex-parte and inter-partes practices before the U.S. Patent and Trademark

- 3 -

Office including reissue, reexamination, interference and appeals to the Patent Office Board of Patent Appeals and Interferences; rendering legal opinions on validity, infringement and enforceability of intellectual property rights; some practice of trademark law; principal client responsibilities for many major clients; administration of rapidly growing law firm.  Listed in the Best Lawyers in America since 1995 and in Virginia Super Lawyers.

## Arbitration/Mediation Experience

Appointed Arbitrator in several prior cases. Participant in formal 2-day arbitration/mediation AIPLA course run by Tom Arnold (Seattle, Washington, 1996).

Certified as Panelist for ADR at National Patent Board in 1999

- One of three Arbitrators in a major case, concluded in 1998, involving two large corporate entities.

- A sole Arbitrator in another major case in 1999.

- One of three Arbitrators in another major case involving the two largest competitors in an important industry including a 3-day hearing in 2005 and final decision in early 2006.

Have successfully mediated settlement in two cases then in litigation (one minor, one major).   Currently mediating patent litigation/licensing/bankruptcy disputes in 2006-_____.

On AIPLA list of potential arbitrators/mediators.   On CPR's Panel of distinguished Neutrals.

Participated in numerous mock trials as part of potential settlement negotiation and/or trial preparation.

## Bar Memberships

Admitted to practice law in Virginia since 1971

Admitted to practice law in the District of Columbia since 1971

Registered Patent Attorney (Reg. No. 25,640) in U.S. Patent and Trademark Office since 1971 (registered patent agent since 1969)

- 4 -

Virginia State Bar

    Board of Governors, Intellectual Property Law Section 1988-1991

District of Columbia Bar Association

American Intellectual Property Law Association

American Bar Association

Supreme Court of the United States

U.S. Court of Appeals for the Federal Circuit

U.S. Court of Appeals for the District of Columbia Circuit

U.S. Court of Appeals for the Fourth Circuit

U.S. Court of Appeals for the First Circuit

Plus many other Federal Courts.

- 5 -

## Lectures and Publications

April 2, 1974 -- meeting of the Institute of International Studies in London; presentation of paper entitled "Patentability of Computer Software in the United States."

April 22, 1983 -- meeting of the Chartered Institute of Patent Agents in England; presentation of paper entitled "Protection of Intellectual Property Rights in the United States for Computer-Aided Processes, Machines and Audio-Visual Displays."

May 1983 -- publication by the Chartered Institute of Patent Agents of paper entitled "Protection of Intellectual Property Rights in the United States for Computer-Aided Processes, Machines and Audio-Visual Displays."

February 7, 1984 -- meeting of the American Patent Law Association; lecture on "How to Prepare and Prosecute a Chemical Patent Application Involving Microprocessor Controlled Apparatus."

March 30, 1984 -- meeting of the Indiana State Bar Association; lecture on "Protection of Computer Processes and Machines."

January and February 1985 -- Law Technology Press, publication of parts I and II of article entitled "Protection of Intellectual Property Rights in the United States for Computer-Aided Processes, Machines and Audio-Visual Displays."

January 15, 1985 -- joint meeting of the American Intellectual Property Law Association, District of Columbia Bar and Virginia State Bar; lecture regarding "Practice under the New Interference Rules."

March 10-11, 1994 -- Georgetown University Law Center, Washington, D.C., The Seventh Annual Advanced Computer Law Institute, "Lessons Learned From Winning Counsel: What Worked, What Didn't Work and What was Decisive," *Nintendo v. Atari Games*, with Thomas G. Gallatin, Jr., Mudge, Rose, Guthrie, Alexander & Ferdon.

November 16-17, 1995 -- Practicing Law Institute/Winning Strategies in Patent Litigation 1995: "Preparing and Prosecuting a Patent to Win in Litigation."

November 15, 1996 -- Practicing Law Institute/Patent Litigation 1996: "Obviousness And Best Mode: What Can Defendants Do To Win With Them Today?", with Ralph A. Falcone.

- 6 -

November 18, 1997 -- Practicing Law Institute/Patent Litigation 1997: "Obviousness And Best Mode: What Can Defendants Do To Win With Them Today?", with Ralph A. Falcone.

October/November 1997, "Software Can Be Patented", IEEE Potentials, pp. 21-22 with J. Scott Davidson.

October/November 1997, "Legal Politics", IEEE Potentials, pp. 25-27, with J. Scott Davidson

November 16, 2001 -- Seminar at Shiga International Parent Office:  Recent changes to U.S. Patent Law, Prior Art Date of Published Applications; Inter Partes Reexamination; Recent Changes in US Doctrine of Equivalents

May 23, 2002 -- Seminar at The Royal Institute in London for CIPA (Chartered Institute of Patent Agents)

## INTELLECTUAL PROPERTY CASES IN
## WHICH LARRY S. NIXON HAS PARTICIPATED

(The underscored name indicates the party on behalf of which Mr. Nixon participated)

(*indicates participation as an expert witness)

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| Sperry Rand Corp. v. Control Data | 167 USPQ 394, 319 F.Supp. 629 (D. Md. 1970) |
| Stark Brothers Nurseries & Orchards Co. v. George L. Baugher d/b/a Adams County Nursery & Fruit Farms and John H. Baugher | (M.D. Pa.) (CA 74-184) |
| Nelson Irrigation Corp. v. Rain Bird Eastern Sales | (S.D. Ill.) (CA P-Civ-74-155) |
| *Hesston Corp. v. John Deere & Co. | (D. Kan.) (CA 74-177-C6) |
| *Hesston Corp. v. John Deere & Co. | (D. Utah) (CA 74-117-C6) |
| Electronic Assistance Corp. v. City of New York et al (Control Data) | 181 USPQ 808 (S.D.N.Y. 1974); 362 F.Supp. 755, 180 USPQ 215 (S.D.N.Y. 1973) |
| Lingl Corp. v. EA Industries, Inc. | (W.D.N.C.) (CA A75-14) |
| General Motors Corp. v. Maremont Corp. | (E.D. Mich.) (CA 4-72071) |
| Hale Bros. v. United States (v. Control Data as third-party defendant) | (U.S. Ct. Cl.) – 192 USPQ 114 (Ct. Cl. 1976) |
| Technitrol v. Control Data | 550 F.2d 992, 193 USPQ 257 (4th Cir. 1977); 185 USPQ 801 (D. Md. 1975); 394 F.Supp. 511 (D. Md. 1975) |
| Bain v. Action Lures Co. | (S.D. Miss.) (CA J 76-386(c)) |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| W.R. Grace & Co. and Woodward Chemicals Co. v. Pullman Inc. | 74 F.R.D. 80 (W.D. Okla. 1977); 446 F.Supp. 771 (W.D. Okla. 1976); 437 F.Supp. 1062 (W.D. Okla. 1976) |
| EMI Limited v. Pfizer Inc. | (D. Del.) (CA 77-304) |
| Potter v. U.S. (v. Control Data as third-party defendant) | (U.S. Ct. Cl.) (111-78) |
| Levine v. United States (v. Control Data as third-party defendant) | (U.S. Ct. Cl.) (509-78) |
| Potter v. Control Data | 641 F.2d 190, 211 USPQ 493 (4th Cir. 1981); 207 USPQ 763 (E.D. Va. 1980) |
| RCA Corporation v. U.S. | 650 F.2d 285 (Ct. Cl. 1980) |
| Ball Corporation v. Honeywell | (D. Minn.) (CA 483-436) |
| *Deere & Co. v. Massey-Ferguson (In re Deere & Co. Field Cultivator and Chisel Plow patent litigation, MDL Docket No. 405) | (D. Iowa) |
| Ampex v. United States (v. Control Data as third party defendant) | 229 Ct.Cl. 870 (1981) |
| Larry Singer v. Gerald J. Mossinghoff | (D.D.C.) (CA 82-0679) |
| Ball Corporation v. United States | 219 USPQ 73 (U.S. Ct. Cl. 1982); 729 F.2d 1429, 221 USPQ 289 (Fed. Cir. 1984) |
| Codex Corp., et al, v. Milgo Electronic Corp., et al | 215 USPQ 165, 534 F.Supp. 418 (D. Mass. 1982); 217 USPQ 878, 541 F.Supp. 1198 (D. Mass. 1982); 219 USPQ 499, 717 F.2d 622 (1st Cir. 1983) |
| Rixon, Inc. v. Racal-Milgo, Inc. | 217 USPQ 941, 551 F.Supp. 163 (D. Del. 1982) |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *Construction Industries v. <u>Balco</u> | (D. Kan.) (CA 82-1013) |
| <u>M.A. Industries, Inc.</u> v. Clay & Bailey Mfg. Co., (Inc.) | (W.D. Mo.) (CA 83-1107-CVW6) |
| <u>RCA</u> v. United States | (U.S. Cl. Ct.) (154-84c) |
| United Business Communications, Inc. v. <u>Racal-Milgo, Inc.</u> | 224 USPQ 148, 591 F.Supp. 1172 (D. Kan. 1984) |
| Codex Corp. v. <u>Racal-Milgo, Inc.</u> | 225 USPQ 51 (D. Mass. 1984) (see also 553 F.2d 735, 194 USPQ 49 (1st Cir. 1977), cert. denied, 434 U.S. 860, 195 USPQ 466 (1977); 541 F. Supp. 1198, 217 USPQ 878 (D. Mass. 1982); 534 F. Supp. 418, 215 USPQ 165 (D. Mass. 1982); 717 F.2d 622, 219 USPQ 499 (1st Cir. 1983); and 200 USPQ 565 (S.D. Fla. 1977)) |
| <u>Sperry Corporation</u> v. VMX, Inc. | (D. Del.) (CA 85-43(WKS)) |
| <u>Nu-Metrics, Inc.</u> v. HMR Communications, Inc. | (W.D. Pa.) (CA 86-666) |
| <u>Nu-Metrics, Inc.</u> v. Ash Instrumentation Inc. | (W.D. Pa.) (CA 86-667) |
| <u>Metretek, Incorporated</u> v. Metscan Corporation | (W.D.N.Y. 1987) (CA 86-0794T) |
| *Kidde, Inc. v. <u>Fike Metal Products Corporation</u> | (W.D. Mo.) (CA 85-0399-CV-W-6); U.S. Dist. Lexis 12818 (1989) |
| <u>Checkmate Electronics</u> v. Lundy Corporation | (E.D. Va. 1987) (CA 87-1156-A) |
| Phillips Petroleum Company v. <u>Mitsui Petrochemical Industries, Inc. et al</u> | (S.D. Tex.) (CA H-88-2498) |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *Hesston Corp. v. Sloop | 17 USPQ2d 1733, 734 F.Supp. 952; 14 USPQ2d 1410, 730 F.Supp. 1055 (D. Kan. 1990); 1988 WL 236357 (D. Kan. 1988) |
| Fox Industries, Inc. v. Structural Preservation Systems, Inc. | 6 USPQ2d 1577 (D. Md. 1988) (see also 17 USPQ2d 1577 (D. Md. 1990); 922 F.2d 801, 17 USPQ2d 1579 (Fed.Cir. 1990)) |
| Cincinnati Bell Information Systems, Inc. v. Racal Data Communications, Inc. | (TTAB Cancellation No. 17,530) |
| Cincinnati Bell Information Systems, Inc. v. Racal Data Communications, Inc. | (TTAB Cancellation No. 17,543) |
| The Gillette Company v. American Safety Razor Company | (D. Mass.) (CA 88-1235-WE) |
| *Standard Havens Products, Inc. v. Gencor Industries, Inc. | 25 USPQ2d 1949, 810 F.Supp. 1072 (W.D. Mo. 1993) |
| Hexcel Corporation v. Advanced Textiles, Inc. and H. Keith Hutson | 1992 WL 42338 (Fed. Cir. 1992); 716 F. Supp. 974, 12 USPQ2d 1390 (W.D. Tex. 1989) |
| Atari Games Corporation v. Nintendo of America and Nintendo Co., Ltd. | (N.D. Cal. 1988) (C-88-4805-FMS) (C-89-0027-FMS) (See also 30 USPQ2d 1401 (N.D. Cal. 1993); 24 USPQ2d 1015, 975 F.2d 832 (Fed. Cir. 1992); 18 USPQ2d 1935 (N.D. Cal. 1991); 14 USPQ2d 1034, 897 F.2d 1572 (Fed. Cir. 1990) |
| Barnes Engineering Company v. The Racal Corporation | (S.D. Fla) (89-8010 Civ.-Zloch) |
| Jan R. Coyle v. Nintendo of America, Inc. | (C.D. Cal. 1990) (CV-87-7198-MRP (Tex.) |
| Polymedica Industries, Inc. v. Beam Tech, Ltd. | (D. Colo.) (CA-90M1858) |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| *Associated Equipment Corp. v. Authorized Motor Parts et al | (E.D. Mo.) (90-CV-1364C (7)); see also 27 USPQ2d 1784, 996 F.2d 317 (Fed. Cir. 1993) |
| Alpex Computer Corp. v. Nintendo Co., Ltd., and Nintendo of America | (S.D.N.Y.) (86 Civ. 1749 (KMW)); 1994 WL 681752; 1994 WL 318659; 1994 WL 330381; 1994 WL 139423 (S.D.N.Y. 1994); 34 USPQ2d 1167 (S.D.N.Y. 1994); 1992 WL 51534 (S.D.N.Y. 1992); 1991 WL 268631; 1991 WL 195939; 770 F.Supp. 161; 20 USPQ2d 1782; 1991 WL 8549 (S.D.N.Y. 1991); 1988 WL 87511 (S.D.N.Y. 1988); 996 WL 640819, 102 F.3d 1214, 40 USPQ2d 1667 (Fed. Cir. 1996) |
| Warner-Lambert v. American Safety Razor | (D. Del) (CA 91-11) |
| InterTherapy, Inc. v. Cardiovascular Imaging Systems, Inc. | (C.D. Cal.) (SA CV 91-0202 GLT RWRx) |
| AT&T v. Racal-Milgo Skynetworks, Inc. | (W.D.N.C.) (C-C-91-0073-MU) |
| Loral Fairchild Corp. v. Matsushita Electric Industrial Co. Ltd., Sharp Corporation, et al | (E.D. Va. 1991) (91-1293-A); see also 22 USPQ2d 1158 (E.D. Va. 1991) |
| *American Academy of Science v. Novell, Inc. et al | (N.D. Cal.) (CA 91-4300 EFL) – 24 USPQ2d 1386 (N.D. Cal. 1992); see also, 367 F.3d 1359, 70 USPQ2d 1827 (Fed. Cir. 2004) |
| *Arkla Chemical v. Barnco | (La.) |
| *Charles Petrossky v. Nike, Inc. | (E.D. Va.) (CA 91-0431A) |
| Michael I. Rackman v. Nintendo of America Inc. and Nintendo Co., Ltd. | (S.D. N.Y.) (92 Civ. 8063 (PKL)); see also 1994 WL 665794, 34 USPQ2d 1068 (S.D.N.Y. 1994) |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| Fairchild Semiconductor Corporation v. Nintendo Co., Ltd. and Nintendo of America, Inc. | (W.D. Wash.) (C92-1971C); see also 1994 WL 558207 (Fed. Cir. 1994); 1994 WL 560607, 30 USPQ2d 1657 (W.D. Wash. 1994); 27 USPQ2d 1070, 810 F.Supp. 173 (D.S.C. 1992) |
| Edward L. Gussin v. Nintendo of America, Inc. | (C.D. Cal.) (CV 93-4308 HLH (JGX)); 33 USPQ2d 1418 (C.D. Cal. 1994); 1995 WL 460566 (Fed. Cir. 1995), *cert. denied*, 116 S.Ct. 1564 (1996) |
| *Preco Industries, Inc. v. Autodesk, Inc. et al | (D. Kan.) (CA 93-2334 (KHV); see also 1994 WL 262668 |
| Sitrick v. Nintendo of America, Inc. and Sega of America, Inc. | (N.D. Ill.) (CA No.  94-C-5515 ACW) – 42 USPQ2d 1700 (N.D. Ill. 1997) |
| Citibank/TTI v. Online Resources & Communications Corporation | (E.D. Va.) (C.A. No. 94-1535-A) |
| *High Tech Medical Instrumentation Inc. v. New Image Industries, Inc. | 161 F.R.D. 86 (N.D. Cal. 1995); (CA No. C-93-4152 SBA); 1995 WL 381502 (N.D. Cal. 1995); 49 F.3d 1551, 33 USPQ2d 2005 (Fed. Cir. 1995) |
| Tekmax, Inc. & Neids, Inc. v. Exide Corporation | 1995 WL 434352 (D. Or.) (C.A. No. CV95-32-HA) |
| *Quantel, Ltd. v. Adobe Systems Inc. | (Delaware) (C.A. No. 96-18-RRM) |
| *Yamaha Corp. v. ESS Technology, Inc. | 1995 WL 568429 (C.D. Cal.) (C.A. No. CV95-1660KN); 1996 WL 146499 (Fed. Cir.) |
| *Unidynamics Corp. d/b/a/ Crane National Vendors v. Automatic Products International, Ltd. | (E.D. Mo.) (C.A. No. 4:95CV01185 CDP) – 157 F.3d 1311, 48 USPQ2d 1099 (Fed. Cir. 1998) |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| Jack A. Ekchian v. <u>Lucas Automation & Control Engineering Inc.</u> | (E.D. Va.) (C.A. No. 95-1273A) – 37 USPQ2d 1477 (E.D. Va. 1995); 104 F.3d 1299, 41 USPQ2d 1364 (Fed. Cir. 1997) |
| *<u>Interactive Technologies, Inc.</u> v. Pittway Corporation and Ademco Distribution, Inc. | (D. Minn. 3rd Div.) (C.A. 3-95-771) |
| *<u>The Johns Hopkins University</u> v. Cardiac Pacemakers Inc. and Guidant Corporation | (D. Md., N.D.) (C.A. Y-96-1527) |
| J. Carl Cooper, PIXEL Instruments Corp. & Technology Licensing Corp. v. <u>Toshiba America Consumer Products</u> | (N.D. OH E.D.) (1:97 CV 2006) |
| *<u>Level One Communications, Inc. </u> v. SEEQ Technology, Inc. | (N.D. CA SF Div) (C-95-04254 MHP) – 987 F.Supp. 1191 (N.D. Cal. 1997) |
| *CardioGenesis Corporation v. <u>PLC Systems, Inc. & PLC Medical Systems, Inc.</u> | (N.D. CA SJ Div)(CV 96-20749 SW (EAI)) |
| *<u>WACOM Co., Ltd. & WACOM Technology Corporation</u> v. CAMCOMP, Inc. | (C.D. CA S Div) (SA CV97-814 HAS (EEx)) |
| *<u>Communications Information Services, Inc.</u> v. Cellular Technology Services, Inc. & Air Touch Communications, Inc. | (N.D. GA ATL. Div) (1:98-CV-0126 ODE) |
| Advanced Interactive Inc. v. <u>Toshiba Consumer Products, Inc., Toshiba America, Inc., Toshiba Corporation et al</u> | (N.D. Ill. E.D.) (98 C 6243) (J. Gottschall) |
| Arachnid Inc. v. <u>TouchTunes, Inc. et al</u> | (N.D. Ill. E.D.) (98 C 3765) (JFH) |
| *<u>Arthur A. Corry</u> v. CFM Majestic, Inc., et al | (E.D. VA) (CA-98-407-A) – 16 F.Supp.2d 660, 48 USPQ2d 1518 (E.D. Va. 1998) |
| *<u>The Proctor & Gamble Co.</u> v. Conopro, Inc. | (E.D. VA) (CA-98-764-A) |

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *Pacesetter Inc. v. Cardiac Pacemakers, Inc. | (D. MN (3rd Div)(Civ. 4-96-1084) – 50 USPQ2d 1799 (D. Minn. 1999) |
| *Smith et al v. Barrett et al | (D. MD. 1998) |
| Advanced Interactive, Inc. v. Matsushita et al (including Toshiba Corp. et al) | (N.D. Ill. 1998) (98 C6243) |
| *Fike Corporation v. The United States | (Ct.cls) (No. 95-58C) – 41 Fed. Cl. 776 (1998) |
| *Sofamor Danek Holdings Inc. v. United States Surgical Corp. and Surgical Dynamics, Inc. | (W.D. TN, WDIV) 98-2369-GA – 49 USPQ2d 2016 (W.D. Tenn. 1998) |
| *International EZ UP Inc. et al v. Variflex, Inc. et al | (C.D. Cal.) 98-0167-WJR(RNBx) |
| *Supracor, Inc. v. Reebok International | (N.D. Cal.)  97 20818 JW |
| *Unipat, A.G. v. Sauer, Inc. Sauer-Sundstrand Company, Inc., Hydro-Gear, Inc., Hydro-Gear Limited Partnership and Lowes Home Centers, Inc. | (Delaware) 98-495 (SLR) |
| *TypeRight Keyboard Corporation v. Microsoft Corporation and "Advance Comprehensive Ergonomics, Inc. | (S.D. Cal.) 98CV1358L(LAB) – 374 F.3d 1151, 71 USPQ2d 1501 (Fed. Cir. 2004) |
| *Fem Rx Inc. v. Cryogen Inc. et al | (N.D. Cal.) C98-02330 VRW |
| *Cryogen V. Johnson & Johnson et al | (N.D. Cal.) C99-02471 |
| *VLT Corporation and Vicor Corporation v. Unitrode Corporation | (D. Mass.) 98-CV-11152-PBS – 194 FRD 8 (D. Mass. 2000) |
| *Penalty Kick Management, Ltd. v. The Coca-Cola Company | (N.D. Georgia) 1:97-CV-1821 CAM – 58 USPQ2d 1916 (N.D. Ga. 2001); 318 F.3d 1284, 65 USPQ2d 1563 (11th Cir. 2003) |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| Plasma Physics Corporation et al v. Fujitsu et al (including <u>Toshiba Corporation et al</u>) | (E.D.N.Y.) CA No. 99-8593 (ADS) |
| *<u>ADC Telecommunications</u> v. Thomas & Betts Corp. & Augat Communications | (D. Minn) 98-CV-2055 DWS/AJB |
| *Bell Communications Research, Inc. (Telcordia) v. <u>Fore Systems, Inc.</u> | (D. Del) 98-586 (JJF) |
| *Telcordia Technologies, Inc. v <u>Fore Systems, Inc.</u> | (D. Del) 99-357-JJF |
| *Surgical Dynamics Inc. v. <u>Karlin Technology Inc.</u> | (C.D. Cal.) CV-95-0258 GHK (BQRx) – 177 F.3d 968, 50 USPQ2d 1465 (Fed. Cir. 1999) |
| *<u>Micronic Laser Systems Inc</u>. v. ETEC Systems, Inc. | (N.D. Cal.) C-00-00101 VRW |
| *<u>Elan Pharmaceuticals Inc. & Athena Neurosciences Inc.</u> v. Mayo Foundation for Medical Education and Research | (N.D. Cal.) C99-4464 WHA – 175 F.Supp.2d 1209 (N.D. Cal. 2000); 64 USPQ2d 1292 (Fed. Cir. 2002) (withdrawn); 346 F.3d 1051, 68 USPQ2d 1373 (Fed. Cir. 2003) |
| *E. Neil Moore v. <u>Medtronic, Inc.</u> | (D. MN, 4th Div.) 99-CV-2066 ADM/AJB |
| *<u>Ortho-McNeil Pharmaceutical, Inc.</u> v. Barr Laboratories, Inc. | (D. NJ) CA. 99-CV-00235 (GEB) |
| *<u>Genesys Telecommunications Laboratories, Inc.</u> v. Kana Communications, Inc. | (D. Del.) CA 99-666-RRM |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| PC Connector Solutions LLC v. <u>Smart Disk Corp. and Fuji Photo Films USA Inc.</u> | (C.D. Cal) CA 00-06817 ABC (MAN$_x$), transferred to the M.D. Fla. – CA 2:00-cv-539-FtM-29D – 406 F.3d 1359, 74 USPQ2d 1698 (Fed. Cir. 2005) |
| *John Donovan Enterprises Florida, Inc. v. Badger Truck Refrigeration Inc.; Allied Plastics, Inc. and <u>Thermo King Corporation</u> | W.D. WI Civil No. 00C0272S |
| Soundview v. <u>Toshiba et al</u> | 00-CV-754 (Conn.) – 61 USPQ2d 1538 (D. Conn. 2001); 281 F.Supp.2d 399, 68 USPQ2d 1380 (D. Conn. 2003) |
| Parental Guidance v. <u>Toshiba et al</u> | 00-CV-262 (E.D. Tx) |
| *Colin Wahl, Investor Force Holdings, Inc., Investor Force, Inc., & Internet Capital Group Inc. v. <u>Dakin & Willison, Inc., Dana Dakin and B. Thomas Willison</u> | (E.D. PA) (CV00-2451) |
| *Axcelis Technologies v. <u>Applied Materials</u> | (D. Mass.) CA. No. 01-10029-DPW – 66 USPQ2d 1039 (D. Mass. 2002) |
| *Eolas Technologies, Inc. v. <u>Microsoft Corporation</u> | (N.D. Ill.) CA. No. 99C-0626-JBZ – 65 USPQ2d 1090 (N.D. Ill. 2002); 274 F.Supp.2d 972, 70 USPQ2d 1937 (N.D. Ill. 2003); 70 USPQ2d 1939 (N.D. Ill. 2004); 399 F.3d 1325, 73 USPQ2d 1782 (Fed. Cir. 2005); 79 USPQ2d 1597 (Fed. Cir. 2006) |
| *<u>Intel</u> v. Broadcom | (D. Del.) CA No. 00-796-RRM – 167 F.Supp.2d 692 (D. Del. 2001) |
| *<u>Ciena Corporation</u> v. Corvis Corporation | (D. Del) CA No. 00-662 (JJF) – 210 FRD 519, 66 USPQ2d 1798 (D. Del. 2002) |
| *<u>Medtronic Sofamor Danek, et al</u> v. Osteotech | (W.D. Tenn) CA No. 99-2656-GV |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *Evans et al v. General Motors Corp. | (CT Superior Court, Waterbury District) CV-94-0156090-S |
| *The Chamberlain Group, Inc. v. Interlogix, Inc. | (ND Ill., Eastern Division) CA No. 01-C-6157 (SBC) – 2002 WL 1263984 (N.D. Ill. June 3, 2002) |
| *University of Florida Tissue Bank Inc., Regeneration Technologies, Inc., Sofamor Danek Group, Inc. and Sofamor Danek, L.P. v. Osteotech, Inc. | (N.D. Tenn., Gainesville Div.) No. 99-CV-33 MMP |
| *ADC Telecommunications, Inc. v. Panduit Corp. | (D. MN) 01-CV-477 (ADM/AJB) |
| *Tulip Computers v. Dell Computer Corp. | (D. Del) 00-981 (RRM) – 63 USPQ2d 1527 (D. Del. 2002) |
| *VLT Corp. v. Artesyn Technologies, et al | (D. Mass.) 01-10238-PBS |
| *Vivid Image v. Jack Guttman et al | (S.D. Cal.) 01-05148-B11 |
| Flashpoint Technology v. Toshiba America et al | (D. Del) 02-554 |
| Data Treasury Corp. v Ingenico, Inc.. | (E.D. TX, Texarkana Div.) 02-CV-95 (Folsom) |
| *Synopsys, Inc. v. Nassda Corp. | (N.D. Cal., SF Div.) 01-2519-SI |
| *Level One Communications, Inc. v. Altima Communications, Inc. | (E.D. Cal.) Case No. CIV S-99-2488 GEB (GGH) |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *NTP, Inc. v. Research In Motion, Ltd. | (E.D. VA, Richmond Div.) 3:01CV767 (Spencer) – 261 F.Supp.2d 423, 67 USPQ2d 1574 (E.D. Va. 2002); 270 F.Supp.2d 751, 67 USPQ2d 1594 (E.D. Va. 2003); 67 USPQ2d 1587 (E.D. Va. 2003); 392 F.3d 1336, 73 USPQ2d 1231 (Fed. Cir. 2004) (withdrawn); 418 F.3d 1282, 75 USPQ2d 1763 (Fed. Cir. 2005); 397 F.Supp.2d 785, 76 USPQ2d 1857 (E.D. Va. 2005) |
| *PolyMASC Pharmaceuticals v. Alza Corporation | (D. Del.) Case No. 01228 (JJF) – 73 USPQ2d 1319 (D. Del. 2004) |
| *On Demand Machine Corporation v. Ingram Industries, Inc. and Lightning Source, Inc. | (ED of MO, Eastern Div.) Case No. 4:01-CV-01668 MLM – 442 F.3d 1331, 78 USPQ2d 1428 (Fed. Cir. 2006) |
| *RSA v. Gregg, Shareholder | AAA |
| *QRS Diagnostic, LLC v. Motara Instruments, Inc. | (D of Mn) Case No. 01-CV-1782 RHK/SRN |
| Tech Search v. Bosch, Toshiba Consumer Products, Inc., Sony, et al. | (N.D. IL. E.Div.) Case 01-C-9150 |
| *Pharmastem Therapeutics, Inc. v. Viacell, Inc., Cryo-Cell International, Inc., Corcell, Inc.., Stemcyte, Inc., CBR Systems, Inc. f/k/a/ Cord Blood Registry, Inc., Birthcells Technology, Inc., Nustem Technologies, Inc. and Bio-Cell, Inc.. | (D. Del.), Case No. 02-CV-148-GMS |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS**<br>**OF REPORTED DECISIONS** |
|---|---|
| *U.S. Philips Corporation v. <u>Atmel Corporation, LSI Logic Corporation,</u> Semtech Corporation, Semtech New York Corporation, and Microchip Technology Incorporated | (SD of NY)  Case No. 01-CV-9178 (LAP) |
| *<u>VLT, Inc.</u> v. Lucent…, Artesyn…, Lambda Electronics, & Power-One | (D. Mass.) CA Nos. 00-11049 PBS, 01-10238 PBS, 00-10957 PBS, 01-10207 PBS |
| *Imagexpo, LLC v. <u>Microsoft Corp.</u> | (E.D. VA) Case No. 3:02CV751 – 2003 WL 23147556 (E.D. Va. 2003); 299 F.Supp.2d 550 (E.D. Va. 2003) |
| *HyperPhrase v. <u>Microsoft Corp.</u> | (W.D. WI) Case 02 C 0647 S |
| *<u>BIAX</u> v. Apple Computer, IBM and Motorola | (D. Del.) CA 01-601-KAJ |
| *<u>Inverness Medical Switzerland and Unipath Diagnostics</u> v. Acon Laboratories | (D. Mass.) – CA 02-12303 – PBS |
| *<u>Inverness Medical Switzerland and Unipath Diagnostics</u> v. Acon Laboratories | (D. Mass.) - CA 03-11323 – PBS – 323 F.Supp.2d 227 (D. Mass. 2004); 367 F.Supp.2d 182, 77 USPQ2d 1693 (D. Mass. 2005) |
| *<u>Inverness</u> v. Pfizer | (D NJ) CA 02-1029 KSH |
| *Fred B. DuFresne v. <u>Microsoft Corporation, Adobe Systems, Inc. and Macromedia, Inc.</u> | (D. Mass.) CA 02-11778 - RCL |
| RDM Corporation and Research Development and Manufacturing Corp. v. <u>Ingenico Corporation and Ingenico Inc.</u> | (D. Minn) CA 02-CV-3662 JNE/JGL |
| NCR v. <u>Ingenico</u> and <u>SMTC</u> (In Re Certain Signature Capture Devices) | ITC Inv. No. 337-TA-504 |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| IP Innovation v. <u>Toshiba Corp.</u> | (N.D. Ill) CA 03C6566 (JFH) |
| Verve LLC v. <u>Ingenico Corp.</u> | (E.D. Mich., Southern DIV.) CA-03-73481/GCS |
| *TV Interactive Data Corp. v. <u>Microsoft Corporation</u> | (N.D. CA, Oakland) 02-CV-02385 (SBA) |
| *Electromotive Division of General Motors v. <u>Transport Systems Division of General Electric</u> and Daido Industrial Bearings, Ltd. | (E.D. MI, SD) Civil 03-70940 (JCO, RSW) – 417 F.3d 1203, 75 USPQ2d 1650 (Fed. Cir. 2005) |
| *Forney Corporation v. <u>Mark Khesin, Reuter-Stokes, GE Power Systems</u> and Wolf Greenfield & Sacks | (D. Mass.) CA 02-11301 (RGS) |
| *<u>Boston Scientific Corp. and Target Therapeutics</u> v. Cordis Corp. | (N.D. Cal., San Jose) CA 02-1474 (JW) |
| *<u>Symantec Corp.</u> v. Computer Associates International, Inc. | (E.D. of Mich., SD) Case 02-73740-CV |
| Verve LLC v. <u>Ingenico</u> et al | (W.D. of TX, Austin Div.) Case A04-CA-062-LY |
| In the Matter of Certain Point of Sale Terminals and Components (Verve LLC v. <u>Ingenico</u> et al.) | ITC Inv. No. 337-TA-524 |
| Verve LLC v. <u>Ingenico</u> et al. | (N.D. of CA, San Jose Div.) Case 04-03659-HRL |
| *<u>3M Innovative Properties Company and Dyneon LLC</u>, v. Dupont Dow Elastomers, LLC | (D. MN.) Civil # 03-3364 PAM/RLE |
| *Cook Biotech, Inc. & Purdue Research Foundation v. <u>Acell, Inc.,</u> <u>Stephen F. Badylak and Alan R. Spievack</u> | (ND of IN, Lafayette Div.) 4:03-CV-0046 (AS) |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| *Soverain Software LLC v. Amazon.com, Inc., et al. | (ED TX, Tyler Div.) (CA 6:04-CV-14) LED – 383 F.Supp.2d 904, 79 USPQ2d 1208 (E.D. Tex. 2005) |
| *Post X Corporation v. Secure  Data in Motion, Inc. | (ND  CA) (CA 02-0448-3) SI |
| Whirlpool Corp. v. LG Electronics and General Electric Company | (WD MI, S.Div.) (CA 1:04-CV-0100) RAB |
| *Sunrise Telecom Inc. v. Acterna, LLC | (DMd, Greenbelt) (CA 04-CV-1049) PJM |
| *Wyeth v. Teva Pharmaceuticals | D. NJ CA 03-1293 (KSH) |
| *Erik B. Cherdak v. The Stride Rite Corp. | D. Md. 05-CV-445 (RWT) |
| *Erik B. Cherdak v. BBC International, Ltd., et al | D. Md. 05-CV-765 (RWT) |
| *Bayer AG Healthcare AG, and Bayer Pharmaceuticals Corporation v. Dr. Reddy's Laboratories, Ltd. and Dr. Reddy's Laboratories, Inc. | D. Del. CA 04-179 (SLR) |
| *Ole K. Nilssen and Geo Foundation, Ltd. v. Universal Lighting Technologies, Inc. | (MD of TN, Nashville) Civil Action No. 3:04-0080 |
| *Uniloc USA, Inc., and Uniloc Singapore Private Limited v. Microsoft Corporation | (D of R.I.) Civil Action No. 03-CV-440 (WES) |
| *Pfizer Inc. et al. v. Teva Pharmaceuticals USA, Inc. | (Dist. of NJ) C.A. 04-1418 (DMC) |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| *<u>Dimension One Spas, Incorporated</u> v. Coverplay, Inc. | (SD of CA) 03-CV-1099L (JFS) |
| *<u>ADC Telecommunications, Inc.</u> v. Switchcraft, Inc. | (D. MN) CA 04-1590 (ADM/JSM) |
| *Calgon Carbon Corporation v. <u>Town of Ontario, New York</u> and <u>Robert Wykle, as Superintendent of Ontario Water Utilities Department</u>, and <u>Trojan Technologies, Inc.</u> | (WD of NY) Civil Action 01-CV-6411 T(B) |
| *<u>Samsung Electronics Co., Ltd</u> v. Rambus Inc. | (ED of VA, Richmond Div.) Civil Action 3:05-CV-00406-REP |
| *<u>Applied Materials, Inc.</u> v. Tokyo Seimitsu Co., Ltd. and Accretech USA, Inc. | (ED VA, Norfolk Div.) Civil Action No. 2:05CV476 |
| *Ricoh Corporation, and Ricoh Company, Ltd. v. <u>Pitney-Bowes Inc.</u> | (District of New Jersey) CA 2:02-CV-5639 (WGB) |
| *Cardiac Science, Inc. v. <u>Koninklijke Philips Electronics N.V., dba Royal Philips Electronics, Philips Electronics North America Corporation, and Philips Medical Systems North America, Inc.</u> | (District of Minnesota) Civ. No. 03-1064 (DWF/RLE) |
| *<u>Micron Technology, Inc.</u> v. Rambus Inc. | (District of Delaware) Civil Action No. 00-792-RM) |
| *Biovail Laboratories International SRL v. <u>Impax Laboratories Inc.</u> | ED of Pennsylvania Case No. 05-CV-1085 |
| *Qualcomm Incorporated v. <u>Broadcom Corporation</u> | SD of California Case 05-CV-1662 (BLM) |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *Precor Incorporation and Larry S. Miller v. <u>Fitness Quest Inc. and New Balance Athletic Shoe, Inc.</u> | WD of Washington Case 05-0993 RSL |
| *Novartis Pharmaceuticals Corporation, Novartis Pharma AG, and Novartis International Pharmaceuticals Ltd. v. <u>Teva Pharmaceuticals USA, Inc.</u> | (District of New Jersey) CA No. 05-1887 (KSH and DMC) |
| *<u>Medimmune Oncology, Inc.</u> v. Sun Pharmaceutical Industries, Limited | District of Maryland Case No. 1:04-CV-02612-MJG |
| <u>Zipher Ltd. and Videojet Technologies, Inc.</u> v. Markem Corp. | WD of Wisconsin CA No. 06-C-0745 S |
| *OMAX Corp. v. <u>Flow International Corp.</u> | WD of Washington CV 04-2334 RSL |
| *Sumitomo Mitsubishi Silicon Corporation, aka Sumco and Sumco USA Corporation v. <u>MEMC Electronic Materials, Inc.</u> | ND CA, Oakland Division C 05-02133 SBA (JCS) |
| *<u>Trading Technologies International, Inc.</u> v. eSpeed, Inc. | ED ND Illinois 04C5312 |
| <u>Leviton Mfg. Co.</u> v. Universal Security Instruments and Shanghai Meihao Electric, Inc. | District of MD 05-0889 AMD |
| <u>Leviton Mfg. Co.</u> v Zhejiang Dongzheng Electrical Co., et al | District of NM 05-0301-JB/DJS |
| <u>Leviton Mfg. Co.</u> v. Nicor, Inc., et al | District of NM 04-0424 JB/LFG 04-1295 MCA/ACT |
| *<u>Spectralytics, Inc.</u> v. Cordis Corporation and Norman Nobel, Inc. | D. MN CA No. 05-1464 (PJS/RLE) |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *<u>Microsoft</u> v. Alcatel-Lucent | ITC Investigation No. 337-TA-598 |
| *01 Communique Laboratory, Inc. v. <u>Citrix Systems, Inc. and Citrix Online, LLC</u> | ND OH (East Div.) Case No. 1:06-CV-0253 |
| *<u>Church & Dwight Co., Inc.</u> v. Abbott Laboratories | D of N.J. 05-CV-2142 (GEB) |
| *<u>Schering AG and Berlex, Inc.</u> v. Barr Laboratories, Inc. | D of NJ CA 05-02308 (PS) (ES) |
| *Morgan Hetrick v. <u>Cessna Aircraft Company</u> | 18th Judicial Dist., DC, Sedgwick County, KS  03 CV 3030 |
| *<u>Dr. Juan Carlos Parodi</u> v. Cordis Corporation | AAA Case No. 50 133T 0010806 |
| SPA Syspatronic A.G. v <u>Ingenico Corp., Ingenico S.A., et al.</u> | ED TX  CA No. 2:07 cv 416 (LED) |
| *GTX Corporation v. <u>KOFAX Image Products, et al.</u> | ED of TX CA No. 6:06 cv 244 (LED) |
| *DealerTrack, Inc. v. <u>Route One LLC et al.</u> | CD of CA (Southern Div.) CV06-2335 AG(FMOx) (Consolidated with CV06-6864 and CV07-215) |
| *<u>Global Locate, Inc. (Broadcom)</u> v. SiRF Technologies, Inc. et al. | USITC (DC) Investigation No. 337-TA-602 Re:  Certain GPS Devices and Products Containing Same |
| *<u>Sensormatic Electronics Corporation</u> v. The Tag Company US LLC; Phenix Label Company; and Dennis Gardonniex | USDC  SD of FL Case No. 06-81105-Civ-Hurley/Hopkins |

0067728.01

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| *Cushion Technologies, LLC v. <u>Adidas Salomon North America, Inc., et al.</u> | USDC  ED of TX<br><br>CA No. 2-06CV347 (Ward) |
| CardSoft, Inc. et al. v. <u>Ingenico Inc., Ingenico Corp., Ingenico SA,</u> et al. | USDC ED of TX<br>Case No. 2:08-CV-00098 (TJW) |
| *Steven F. Reiber & Mary L. Reiber v. <u>Toshiba America Information Systems, Inc., Hewlett-Packard Company, Seagate Technology, Western Digital Corporation, Dell, Inc.</u> | USITC (DC)<br>Investigation No. 337-TA-616<br>Re: Certain Hard Disk Drives, Components Thereof, and Products Containing the Same |
| *<u>Henrob Limited</u> v.Ballhoff System Technik GmbH, & Co.KG, Ballhoff Rivnut, Inc., Bayerische Motoren Werke AG, BMW NA, Rolls-Royce Motor Cars Ltd. and Rolls-Royce NA | USDC ED of MI<br>Case No. 05-CV-73214-DT (RHC) |
| *<u>INEOS Fluor Holdings Ltd, INEOS Fluor Ltd., INEOS Fluro Americas LLC</u> v. Sinochem Modern Environmental Protection; Sinochem Environmental Protection Chemicals; Sinochem Ningbo, Ltd., Sinochem (U.S.A.) Inc. | USITC (DC)<br>Investigation No. 337-TA-623<br>Re:  Certain Processes for The Manufacture of R-134a Coolant (otherwise known as 1,1,1,2- Tetrafluoroethane) |
| *<u>Palomar Medical Technologies, Inc. and The General Hospital Corporation</u> v. Candela Corporation | USDC D of MA<br><br>CA No. 1:06-CV-11400-RWZ |
| *DigaComm, LLC v. <u>Vehicle IP, LLC, Bradley Larschan</u> | AAA and<br>USDC, ND of Illinois, Case No. 08-CV-338 |
| *Dupont Air Products Nanomaterials LLC v. <u>Cabot Microelectronics Corporation</u> | USDC for District of Arizona<br>CV06-2952-PHX-ROS |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *Magotteaux International S.A. v. <u>Fonderie Acciaierie Roiale S.p.A (F.A.R.)</u>, et al | USITC (CD) Investigation No. 337-TA-644 Re: Certain Composite Wear Components and Products Containing the Same |
| *Wisconsin Alumni Research Foundation v. <u>INTEL Corporation</u> | WD WI Case No. 08-C-78-C |
| *Abbott Laboratories and Surmodics, Inc. v. <u>Church & Dwight Co., Inc.</u> | ND Ill. Case No. 07CV 3428 |
| *Rembrandt Data Technologies LP v. AOL, LLC; Cavalier Telephone, LLC; The Brink's Company; Brink's Home Security, Inc.; DirectTV, Inc.; <u>Hewlett-Packard Company</u>; Canon U.S.A., Inc.; Canon Business Solutions, Inc. and Canon Information Technology Services, Inc. | ED of VA, Alexandria Div, CA No. 1:08-cv-1009 GBL/IDD |
| *Move, Inc. et al v. <u>Real Estate Alliance Ltd.</u> et al | CD of CA, Western Div., CV 07-02185-GHK(AJWx) |
| *Dey, L.P., Dey, Inc., and Mylan, Inc. v. <u>Sepracor Inc.</u> | SD NY C.A. No. 1:07-cv-2353 (JGK) |
| *<u>Motorola, Inc.</u> v. VTech Communications Inc., and VTech Telecommunications Ltd. | ED of TX, Texarkana Division, Civil Action No. 5:07-cv-171-DF-CRC |
| *Safety Syringes, Inc. v. <u>Plastef Investiseements and Sanofi-Aventis</u> | CD of CA CV 07-02307 FMC (PLAx) |
| *<u>Power Integrations, Inc.</u> v. Fairchild Semiconductor International, Inc., Fairchild Semiconductor Corporation and System General Corporation | D of DE CA No. 08-309 JJF-LPS |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *Fred Bassali v. <u>Johnson Controls, Inc.</u> | WD of MI<br>Case No. 1:08-CV-00029 PLM |
| *<u>Dr. Stephen F. Badylak</u> v. Purdue University, and The Trustees of Purdue University | State of Indiana, Tippecanoe Circuit court, County of Tippecanoe, Cause No. 79C01-0507-CT-00024 |
| *Protostorm, LLC and Peter Faulisi v. <u>Antonelli, Terry, Stout & Kraus, LLP, et al.</u> | ED of NY<br>C.A. 08 Civ. 931 (NGG) (JO) |
| *<u>Sargent Manufacturing Company</u> v. Cal-Royal Products, Inc. | D of CT<br>C.A. No. 3:08cv00408 (CFD) |
| *CNH America, LLC and Blue Leaf, IP, Inc. v. <u>Kinze Manufacturing, Inc.</u> | D of DE<br>C.A. No. 08-945-GMS |
| *<u>Sanofi-Aventis Deutschland GmbH</u> v. Genentech, Inc. and BioGen IDEC, Inc. | ND of CA, SF Div. CA Nos. 08-cv-4909 SI (BZ) and 09-cv-4919 SI |
| *Elan Pharma International Limited v. <u>Alcon Laboratories, Inc., Alcon Manufacturing, Ltd. and Alcon research, Ltd.</u> | ED of TX, Sherman Div.<br>CA No. 4:09-DV-32 |
| Greenlight Technologies LLC v. <u>Leviton Manufacturing Co., Inc.</u>, et al. | ED TX Tyler Div. CA No. 6:10-cv-00458-LED |
| *<u>Meadwestvaco Corporation et al</u> v. Rexam PLC et al. | ED VA, Alexandria Div. C.A. No. 1:10-cv-511-GBL-TRJ |
| *<u>Palomar Medical Technologies, Inc. and The General Hospital Corporation</u> v. Tria Beautify, Inc. | District of Massachusetts, 1:09-cv-11081-RWZ |
| *<u>DDB Technologies, LLC</u> v. AOL Inc. | WD of TX, Austin Div., 1:10-cv-00246-JRN |

| NAME OF CASE | VENUE AND CITATIONS OF REPORTED DECISIONS |
|---|---|
| *Shire LLC v. Travis C. Mickle and KemPharm, Inc. | WD of VA, 7:10-CV-00434 |
| *National Pasteurized Eggs, Inc. and National Pasteurized Eggs, LLC v. Michael Foods, Inc., Abottsford Farms, Inc., Crystal Farms Refrigerated Distribution Company, and M.G. Waldbaum Company | WD of WI, 10-CV-646 |
| *St. Jude Medical, Cardiology Division, Inc., St. Jude Medical Systems AB and St. Jude Medical S.C., Inc., v. Volcano Corporation | D. of DE, 10-631-SLR |
| *TransWeb, L.L.C., v. 3M Innovative Properties Company and 3M Company | D. of NJ, 10-04413 (FSH/PS) |
| *Samsung v. Apple Inc. | USITC (CD) Investigation No. 337-TA-794 Re: Certain Electronic Devices, Including Wireless Communication Devices, Portable Music and Data Processing Devices, and Tablet Computers |
| *Boston Scientific Corporation, Cardiac Pacemakers, Inc., Guidant LLC and Guidant Sales LLC v. Mirowski Family Ventures, LLC | SD of IN, Indianapolis Division CA No. 1:11-cv-0736WTL DKL |
| *SynQor, Inc. v. Artesyn Technologies, Inc., et al. | ED of TX, Marshall Division CA No. 2:11-CV-444-MHS-CMC |
| *Motorola Mobility, Inc. and General Instrument Corp. v. TiVo Inc. | ED of TX, Marshall Division Case No. 5:11-cv-00053-JRG |

0067728.01

| **NAME OF CASE** | **VENUE AND CITATIONS OF REPORTED DECISIONS** |
|---|---|
| *<u>Southern Research Institute and Genzyme Corporation</u> v. Abon Pharmaceuticals LLC | D. of NJ, CA No. 12 CV 4709 (JEI/KMW) |
| *<u>Medtronic, Inc. and Medtronic USA, Inc.</u> v. Edwards Lifesciences Corporation, Edwards Lifesciences, LLC and Edwards Lifesciences U.S., Inc. | D. Minn., CA No. 11-CV-1650 (JNE/JSM) |
| *<u>Trading Technologies International, Inc.,</u> v. CQG, Inc. and CQGT, LLC | N.D. of Illinois, Eastern Division Civil Action No. 05-4811 (SJC/SIS) |
| *<u>DDB Technologies LLC</u> v. Fox Sports Interactive Media LLC | WD of Texas, Austin Division CA No. A-11-cv-929-LY |
| *California Institute of Technology v. <u>Hughes Communications, Inc., et al.</u> | CD of California Case No. 2:13-CV-7245 MRP (JEM) |
| *MUSC Foundation For Research Development and Charleston Medical Therapeutics, Inc. v. <u>Astrazeneca Pharmaceuticals LP</u> | D. South Carolina, Charleston Division Civil Action Nos. 2:13-cv-02078 and 2:13-cv-03438 |
| *Enzo Life Sciences, Inc. v. <u>Illumina, Inc.</u> | D of Delaware Case No. 12-435 (LPS) |
| *Enzo Life Sciences, Inc. v. <u>Agilent Technologies, Inc.</u> | D of Delaware Case No. 12-434 (LPS) |

0067728.01

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

CORNELL UNIVERSITY, CORNELL
RESEARCH FOUNDATION, INC., LIFE
TECHNOLOGIES CORPORATION AND
APPLIED BIOSYSTEMS, LLC,

        Plaintiffs,

v.

        C.A. No.  10-433-LPS

ILLUMINA, INC.,

        Defendant.

## CONFIDENTIALITY AGREEMENT

I, _Larry S. Nixon_ , state:

1.    I reside at ███████████████████████

2.    My present employer is _Nixon & Vanderhye PC_

3.    My present occupation or job description is _Patent Attorney_

4.    I have read in its entirety and understand the Stipulated Protective Order ("the Order") dated _3/21_, 2011 entered in the matter of *Cornell University, Cornell Research Foundation, Inc., Life Technologies Corporation and Applied Biosystems, LLC v. Illumina, Inc.* I agree to comply with and be bound by the terms of the Order. I solemnly promise that I will not divulge any CONFIDENTIAL information or ATTORNEYS' EYES ONLY information to persons other than those specifically authorized by the Order.  I understand and acknowledge that failure to comply with the Order could expose me to sanctions and punishment in the nature of contempt.

5.      At the termination of this action, I will return or destroy, as directed, any CONFIDENTIAL or ATTORNEYS' EYES ONLY information I received and any notes or other documents reflecting such materials.

6.      I further agree to submit to the authority of the United States District Court for the District of Delaware in the event of any violation of this agreement or dispute related to the Order.

7.      I state under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on *January 29* , 20*16*.

Date: *1-29-16*

City and State where sworn and signed: *Arlington, VA*

Printed name: *Larry S. Nixon*
[printed name]

Signature: *Larry S. Nixon*
[signature]

**Attachment A**

# Exhibit C

| ST. JUDE MEDICAL, et al., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | Civil Action No. 10-631-RGA |
| | : | |
| VOLCANO CORPORATION, | : | |
| | : | |
| Defendant. | : | |

## ORDER

Before the Court are two motions. Plaintiff filed a "Motion to Strike the Expert Report of Defendant's Patent Law Expert." (D.I. 190). Defendant filed a "Cross-Motion to Strike Expert Reports of St. Jude's Inequitable Conduct Experts." (D.I. 206).

Upon consideration of both motions and related briefing (D.I. 191, 207, 211, 217 & 222), the Court rules:

1. The Plaintiff's Motion (D.I. 190) is **GRANTED.** The only portion of attorney Nixon's report for which Plaintiff offers any meaningful authority in support of admissibility (that is, about practices and procedures before the USPTO, pp. 3-7 of the report) is akin to a legal brief, and should not be the subject of expert testimony. The balance of the report is also akin to a legal brief. The report is excluded as I do not believe it will assist the trier of fact. *See* Fed. R. Evid. 702.

2. The Defendant's Motion (D.I. 206) is **DENIED IN PART AND DISMISSED IN PART.** Defendant seeks to strike the reports of Love, Mason and Najafi. The motion as to Love is moot in view of the Court's ruling on the Plaintiff's Motion. (*See* D.I. 211, p. 6, n.4). Thus, as to the Love report, the Motion is **DISMISSED** as moot. As to the disputed "third"

Mason report, which Plaintiff represents only relates to its inequitable conduct claims (*see* D.I. 217, pp. 6-14), while there may be some inadmissible portions in it,[1] I believe that some portions are admissible and would assist me as the trier of fact on inequitable conduct. Specific details of admissibility do not need to be resolved now. Thus, as to the third Mason report, the Motion is **DENIED.** As to the Najafi report, Plaintiff also represents that it is only offered for its relevance to inequitable conduct issues. (*See* D.I. 217, pp. 15, 18). There may be some inadmissible (or irrelevant) portions to this report too, but as with the third Mason report, I believe that some portions are admissible and relevant (in support of the idea that two other individuals conceived the invention, and that the named inventors did not have sufficient knowledge to have conceived of the invention)[2] and would assist me as the trier of fact on inequitable conduct, and that specific details of admissibility do not need to be resolved now. Thus, as to the Najafi report, the Motion is **DENIED.**

3. I do not expect that any of the inequitable conduct defenses will be presented to any juries hearing issues in this case, and thus the parties should understand that the third Mason report and the Najafi report and testimony based on them will not be presented to any juries.

4. The Defendant seeks to have inequitable conduct discovery postponed until "after trial." (D.I. 207, p. 20). The Defendant states inequitable conduct discovery is "likely to squander the parties' and the Court's time and resources." (*Id.* at 18-19). The parties appear to have unlimited resources and it does not seem likely that doing inequitable conduct discovery

---

[1] Due the sequencing of the briefing, I do not know whether the exclusion of evidence for discovery violations (D.I. 225) has any impact on the contents of the third report, particularly Part VI of the report. I therefore express no opinion on that.

[2] I surmise that these other two individuals are going to testify that they conceived of the invention. I surmise that the Najafi expert opinion would be in support of their testimony.

now will impact the Court.  Thus, the Defendant's request is denied.

June 15 2012
Date

United States District Judge

# Exhibit D

```
1                    IN THE UNITED STATES DISTRICT COURT
                     IN AND FOR THE DISTRICT OF DELAWARE
2

3                              -   -   -

     CNH AMERICA LLC and BLUE LEAF        )      Civil Action
4    I.P., INC.,                          )
                                          )
5               Plaintiffs,               )
                                          )
6        v.                               )
                                          )
7    KINZE MANUFACTURING, INC.,           )
                                          )
8               Defendants.               )      No. 08-945-GMS

9                              -   -   -
                          Wilmington, Delaware
10                     Wednesday, January 3, 2011
                            9:30 a.m.
11                       PRETRIAL CONFERENCE
                               -   -   -
12

13   BEFORE:  HONORABLE GREGORY M. SLEET, Chief Judge

     APPEARANCES:
14
                 FREDERICK L. COTTRELL, III, ESQ., and
15               CHAD M. SHANDLER, ESQ.
                 Richards, Layton & Finger
16                      -and-
                 MARK BOLAND, ESQ.,
17               JOHN B. SCHERLING, ESQ. (La Jolla, CA), and
                 RAJA N. SALIBA, ESQ.
18               Sughrue Mion PLLC
                 (Washington, D.C.)
19
                               Counsel for Plaintiffs
20
                 RICHARD L. HORWITZ, ESQ.
21               Potter Anderson & Corroon, LLP
                        -and-
22               MARK L. DURBIN, ESQ., ESQ.,
                 PETER N. MOORE, ESQ., and
23               WILLIAM WARD, ESQ.
                 Wildman, Harrold, Allen & Dixon LLP
24               (Chicago, IL)

25                             Counsel for Defendant
```

1           Their expert, they claim he did a thorough job

2    on invalidity.  And it was always with the view that after

3    we saw how the case developed, how discovery developed, we

4    saw their expert reports, we saw what their actual defenses

5    were, we had every right to then for practical purposes

6    narrow the list of claims for trial.

7           And we are down to 16, there is not 35.

8    Actually, we are contemplating, given the time constraints,

9    as with any trial, we are contemplating even narrowing it

10   further, so we can make a nice crisp presentation to the

11   jury.

12          So the number of claims is neither here nor

13   there.

14          What is here nor there is in the claim charts

15   that relied on Krause, Monosem and Deere.  There is no

16   foundation.  For example, they now are coming out with

17   something called a Matermacc meter.  And after the close of

18   discovery in recent weeks, they have been making document

19   productions to us with pictures of the Matermacc.  And now

20   there is claim charts in this 282 notice about a Matermacc

21   meter and an Accord meter and a Wick meter.  We don't know

22   what they are.  We don't know if they were even on sale in

23   the U.S.,  if they were in public use in the U.S.  These are

24   European companies.  There is just no record.  There is no

25   foundation.

1          THE COURT:  Mr. Boland, I am going to deny.

2    Make your objections in realtime.

3          MR. BOLAND:  Thank you, Your Honor.

4          THE COURT:  We will address them.

5          Defendant's No. 2 I am going to deny.  We need

6    to move along.  It is my view this is pure attorney

7    argument.  You are taking excerpts of testimony out of

8    context.  You can cross-examine the Plaintiffs' experts.

9    There is no basis to conclude that the expert's opinion --

10   for me to conclude, based on these submissions -- and I will

11   not permit additional argument on this -- that Plaintiffs'

12   argument is not scientifically based, and therefore

13   unreliable.

14         Your DOE argument is an attempt at summary

15   judgment.  And I will deny that as already having been

16   rejected.  That is the Court's ruling.

17         MR. DURBIN:  Your Honor, may I address one

18   issue?

19         THE COURT:  No, you may not.  When the Court

20   says that's the Court's ruling, I am done.

21         No. 4, defendant's motion to exclude opinions of

22   plaintiffs' patent law experts, I have in big bold print:

23   No patent law experts.  I don't permit them in my Court.

24         This motion is granted.

25         MR. SALIBA:  Your Honor, this is again --

1          THE COURT:  They don't exist.  They don't live

2     on this earth, as far as I am concerned.  They have no

3     business here.  I am the expert on patent law.

4          MR. SALIBA:  Your Honor, may I address one point

5     on that issue?

6          THE COURT:  Yes.

7          MR. SALIBA:  What is at issue is willfulness,

8     our charge of willfulness, and Kinze's reliance on opinions

9     of counsel and whether the standard was appropriate or not,

10    whether those opinions are competent.  The question then is

11    how does a jury get -- how is a jury able to benchmark

12    whether those opinions are competent or not?

13         THE COURT:  You want to call an expert to say?

14         MR. SALIBA:  To discuss simply the competence of

15    the opinions that were rendered back in 2004.  We are not

16    talking about their current litigation defense.  We are

17    talking about whether Mr. Hill's opinions on which Kinze is

18    relying on are competent.  And the jury, frankly, will not

19    be able to make that assessment.

20         THE COURT:  Competence of opinions can be an

21    issue.  I agree with that.

22         Just a word:  Patent law expert, I have a

23    visceral reaction to that.

24         MR. SALIBA:  I appreciate, that Your Honor.

25    Back in July of this year you made that clear during a

1      discovery conference.

2              Mr. Osha is not a patent law expert.  He is

3      simply an expert opining on the competency of the opinion.

4              THE COURT:  That is a different proposition.  Go

5      ahead.

6              MR. SALIBA:  To the extent that Kinze's Motion

7      in Limine No. 4 wants to take a broad-brush stroke and wipe

8      out all his testimony, it is sweeping in Mr. Osha's opinions

9      on the competency.

10             We would ask that the Court consider having his

11     testimony.

12             MR. HORWITZ:  Your Honor, I have this one.

13             He is a patent law expert.  In their papers,

14     they try to do two things.  One, they say that he is talking

15     about the reasonableness of what a corporation can do in the

16     way that they consider the patents that are out there, the

17     processes and everything else.

18             He has never been an inside counsel.  He has

19     been an outside counsel his entire career.  Judge Jordan in

20     one case, they tried to mention last summer when we had the

21     first go-round on this, he allowed a person who was an

22     in-house counsel and a chief patent counsel for several

23     companies, that was the Oxford Gene case, to talk about the

24     reasonableness of what the company did.

25             Here you have got an outside counsel who has

1    always been an outside counsel, he doesn't have the

2    experience that even -- if you wanted to consider the issue

3    the way Judge Jordan considered it, this isn't a person that

4    can do it.  He is just an outside counsel.

5              There is nothing more.  We cited, I think it's

6    great language from the Federal Circuit from 2008 in the

7    Sundance case:  It is no more than advocacy from the witness

8    stand.

9              He is going to talk about the opinion, the

10   substance of the opinion, what was done.

11             I said this when we met in July on the

12   telephone:  That is not the way it's done in this Court.

13   What is done in this Court is, when, either through

14   deposition testimony or when somebody from our client is on

15   the stand, they will say, well, you know, did you think of

16   this, did you think of that, what about this, what about

17   that, you do it through cross-examination.  You don't put an

18   expert on the stand who is just a lawyer.  It is plain and

19   simple.

20             This case is no different, Your Honor, than any

21   other patent case.  There are no arcane issues that would

22   require a lawyer to get on the stand and talk about

23   willfulness.  We just shouldn't waste the time of the jury.

24             And, in fact, they have a motion as to an expert

25   that we brought in, I think that one is No. 5, Mr. Nixon,

1    and we said in responding to that one, we only got an

2    expert --

3                    THE COURT:  I have eliminated the issue by

4    banning both party's attorney experts.

5                    MR. HORWITZ:  We only got ours because you said

6    we will give them a motion in limine today.

7                    THE COURT:  That is what I am going to do with

8    this, Mr. Horwitz.  I will ban both parties' attorney

9    experts.

10                    MR. SALIBA:  Is that also Mr. Kunin on Patent

11   Office policies and procedures, which is different --

12                    THE COURT:  It is out.  It is not different, in

13   my view.

14                    MR. HORWITZ:  We took care of two motions.

15                    THE COURT:  Right.

16                    No. 5 is Plaintiffs' motion to preclude certain

17   testimony of Kinze's expert, Mr. Nixon.  That is granted.

18   And No. 4, defendant's motion is granted, a similar subject.

19                    I have in front of me Plaintiffs' No. 3, to

20   exclude evidence of obviousness and to preclude Kinze from

21   asserting a practicing prior art defense.  Hold on.  As to

22   this Plaintiffs' 3, I am only going to hear argument on the

23   practicing art issue.  I am going to deny the motion in all

24   other aspects.

25                    MR. BOLAND:  I will address that, Your Honor.

1     On that practicing the prior art issue, our concern is

2     that --

3                THE COURT:  Just, Mr. Durbin, for your

4     edification, my feeling about the balance of the motion is,

5     I can handle these objections in realtime.

6                MR. BOLAND:  I think I can follow that in your

7     comments so far.  And I appreciate it, Your Honor.

8                But the practicing the prior art, Your Honor, we

9     all know if Kinze's accused product is strictly identical to

10    some particular discrete item of prior art, regardless of

11    any Federal Circuit case, that either doesn't infringe or

12    it's invalid.  But those aren't the facts.

13               What Dr. Stein, the technical expert, does in

14    his report is he selects particular features of the EdgeVac,

15    and he says, oh, this arcuate opening, it's known, and he

16    points to some prior art.  He does random elements, one at a

17    time, and says, therefore, if it infringes it must be

18    invalid.

19               Your Honor, we think that's wholly improper.

20    And we are asking that the Court exercise its proper

21    discretion to simply keep infringement separate from

22    validity.  We are asking for an order that would bar

23    testimony or argument, just like I said.  Just because this

24    particular feature may be known, that doesn't mean that the

25    claim is either invalid or ties the two together, because

# Exhibit E

| | |
|---|---|
| **From:** | Hansen, Alexa <ahansen@cov.com> |
| **Sent:** | Friday, August 26, 2016 11:49 AM |
| **To:** | Karen Keller |
| **Cc:** | LIFE TECH-ILLUMINA; John Shaw; David Fry; Mark Rigney; Boyle, Sean (sean.boyle@thermofisher.com); Zirpoli, Christopher T; L. Maguire; Alexander, Jay; Frisch, Jared; Illumina-Cornell |
| **Subject:** | RE: Cornell University, et al. v. Illumina, Inc., C.A. No. 10-433-LPS-MPT |

Karen -

Your request for a proffer of Mr. Nixon's testimony is premature, as his expert report and deposition testimony will provide you with adequate disclosure of his trial testimony.

In the interest of compromise, however, we offer the following high-level description of Mr. Nixon's expected testimony: We expect that Mr. Nixon's testimony will relate to both a bench trial concerning inequitable conduct, and/or a jury trial concerning the priority date of the purported inventions.  The patent prosecution histories are complicated, and insights as to patent practice and PTO procedure, for example as they relate to declarations submitted to swear behind references, will be helpful to provide the jury (and the judge) with an understanding of the matters underlying the priority date of the purported inventions.

If you still want a meet and confer after you have had time to consider the above, please propose a few times next week when you are available.

Regards,
Alexa

**Alexa Hansen**
T +1 415 591 7035 | **COVINGTON**

---

**From:** Karen Keller [mailto:kkeller@shawkeller.com]
**Sent:** Friday, August 26, 2016 8:28 AM
**To:** Hansen, Alexa
**Cc:** LIFE TECH-ILLUMINA; John Shaw; David Fry; Mark Rigney; Boyle, Sean (sean.boyle@thermofisher.com); Zirpoli, Christopher T; L. Maguire; Alexander, Jay; Frisch, Jared
**Subject:** FW: Cornell University, et al. v. Illumina, Inc., C.A. No. 10-433-LPS-MPT

Alexa:

I write to follow up to my letter of August 17 concerning Illumina's expert disclosure of Larry Nixon.  My letter requested a proffer of Mr. Nixon's proposed testimony and a meet and confer to discuss no later than Wednesday, August 24. We still have not heard from Illumina.  Please provide times that your team is available to meet and confer early next week and provide the proffer of testimony for Plaintiffs to consider ahead of that meet and confer.

Regards,
Karen Keller

**From:** Amy Vari
**Sent:** Wednesday, August 17, 2016 10:22 AM
**To:** Hansen, Alexa (ahansen@cov.com)
**Cc:** Karen Keller; A. Verrecchio; D. Elderkin; David Fry; Dominic Fanelli; J. Weil; John Shaw; Karen Keller; LIFETECHILLUMINA@akingump.com; M. Pearson; Mark Rigney; N. Doshi; R. Elsby; R. Finst; S. Boyle; S. Moore; A. Hansen; A. Mayo; BRADLEY K. ERVIN; Brian Foster; C. Zirpoli; Christopher N. Sipes; Illumina-Cornell@cov.com; J. Alexander; J. Frisch; J. Lerner; L. Maguire; Matthew Kudzin; Roderick R. McKelvie; S. Balick; T. Lydon
**Subject:** Cornell University, et al. v. Illumina, Inc., C.A. No. 10-433-LPS-MPT

Ms. Hansen:

Please see the attached correspondence.


Regards,

**Amy L. Vari,** Executive Administrative Assistant  |  Shaw Keller llp

300 Delaware Avenue, Suite 1120  |  Wilmington, DE 19801

**P** 302.298.0706  |  **F** 302.300.4026  |  avari@shawkeller.com  |  www.shawkeller.com


NOTE:  This email may contain PRIVILEGED and CONFIDENTIAL information and is intended only for the use of the specific individuals(s) to which it is addressed.  If you are not an intended recipient of this email, you are hereby notified that any unauthorized use, dissemination or copy of this email or the information contained in it or attached to it is strictly prohibited.  If you have received this email in error, please delete it and immediately notify the person named above by reply email.  Thank you.

# Exhibit F

1

```
                    IN THE UNITED STATES DISTRICT COURT

                   IN AND FOR THE DISTRICT OF DELAWARE

                              -  -  -

SOFTWARE AG, and          : Civil Action
SOFTWARE AG, INC.         :

          Plaintiffs      :

     V.                   :

BEA SYSTEMS, INC.,        :

          Defendant       :    No. 03-739-GMS

                              -  -  -
                   Wilmington, Delaware
                   Monday, April 4, 2005
                   10:00 a.m.
                              -  -  -

BEFORE:  HONORABLE GREGORY M. SLEET, U.S.D.C.J.

APPEARANCES:

          MARY B. GRAHAM, ESQ.
          Morris, Nichols, Arsht & Tunnell
               -and-
          WILLIAM D. COSTON, ESQ., and
          JAMES R. BURDETT, ESQ.
          Venable LLP
          (Washington, D.C.)

                    Counsel for Plaintiffs


          STEVEN J. BALICK, ESQ.
          Ashby & Geddes
               -and-
          MICHAEL A. JACOBS, ESQ., and
          MATTHEW D'AMORE, ESQ.
          Morrison & Foerster
          (San Francisco, California)

                    Counsel for Defendant
```

2

1   THE COURT: Good morning. Keep your seats,

2   please. This is an office conference. Big office.

3       Let's start with a round from plaintiff of

4   introductions.

5       MS. GRAHAM: Good morning, Your Honor. Mary

6   Graham. With me today are Bill Coston from Venable and Jim

7   Burdett, also from Venable.

8       THE COURT: Welcome back.

9       (Counsel respond "Thank you.")

10      THE COURT: Mr. Balick.

11      MR. BALICK: Good morning, Your Honor. Michael

12  Jacobs and Matt D'Amore from Morrison & Foerster and Thomas

13  Burke from BEA.

14      THE COURT: Good morning.

15      I understand there was a query as to whether we

16  would be here until lunch. We will in all likelihood be

17  here until after lunch, quite frankly. We will break at 12,

18  because I have something to do at 12, and we all need to eat

19  something. We will be here as long as it takes. If that

20  means we have to be overnight, we will be here till the next

21  day. I hope it doesn't mean that. It depends upon the

22  level of acrimony in the room. I say that with tongue

23  partially in cheek. But given the papers I have reviewed

24  over time, I expect the argument to be vigorous, if not

25  detailed.

3

1   We will take the time we need to take. What I

2   am going to do is start out with the motions in limine.

3       What I will attempt to do is to shift back and

4   forth between the parties, in an effort to avoid anyone

5   feeling they are being beat up on exclusively as much as

6   anything else, but seriously, just to have at least what I

7   perceive to be a fair process.

8       I would like to take, having said that, BEA's

9   Motions 1 through 4 first. I only do that because it seemed

10  to me, and it may not be the case -- and if it comes to pass

11  that as we discuss this I conclude it is not the case, then

12  we will get right on with SAG's first motion -- it seems to

13  me we can probably dispose of 1 through 4 together.

14      I am going to take whoever is carrying the

15  laboring oar -- Mr. D'Amore, let me share a thought with

16  you. It seems in 1 through 4, it seems there is a theme you

17  raise of confining -- we know, Rule 26(a)(2)(B) requires

18  expert testimony for that which is revealed in their expert

19  reports. I am assuming that both sides agree with that

20  general proposition, that the rules so require.

21      Am I miscasting that, Mr. D'Amore?

22      MR. D'AMORE: Your Honor, I think it's twofold.

23  It is correct that we are saying that the experts should be

24  limited to their expert reports. That goes for both sides.

25  The issues that we raise in Motions 1 through 4 and the

4

1   first motion, doctrine of equivalents is a good example, we

2   say it is not quite enough to limit Dr. Ligler to his expert

3   report in this regard, because on the doctrine of

4   equivalents, what is in his expert report isn't sufficient

5   under the Honeywell case, for example.

6       So while it's fine to say he --

7       THE COURT: It is not sufficient to even raise

8   an equivalence issue.

9       MR. D'AMORE: It is not sufficient to even raise

10  an equivalence issue, that's correct. While it is fine to

11  say that he has very little reference to the doctrine of

12  equivalents in his report and he will only testify about

13  what is in his expert report, the fact is he doesn't lay the

14  technical predicate for allowing a doctrine of equivalents

15  case to go to trial on the couple of things he does raise.

16      Therefore, we say, since it wouldn't be enough

17  to survive a directed verdict, for example, he shouldn't be

18  allowed to testify on it at all and allow it to go to the

19  jury. Again, that was the holding in Honeywell.

20      To go back to the general principle, it is true

21  that we say, in these cases, the experts should be limited

22  to their report. There are a few cases, like the doctrine

23  of equivalents motion, where if you study the report, we

24  said, and you study his testimony, it doesn't rise to the

25  level of something that should go to the jury.

17

1   motion is granted, conditioned as just articulated by Mr.
2   D'Amore.
3          We are going to go shifting back and forth.
4   Let's go to Section No. 1, the so-called patent law expert.
5   I think both parties understand the Court's view of patent
6   law experts. But I think there is still an issue
7   outstanding. Is that correct? Mr. Burdett?
8          MR. BURDETT: Yes, Your Honor.
9          There are four basic points that Software AG
10  would like to raise, Your Honor. We don't believe this is
11  the first time that they have been raised.
12         Clearly, Mr. Nusbaum is being proffered as a
13  Patent Office procedures expert. But in actuality, what his
14  report and much of his testimony was directed to was as a
15  patent law expert, which this Court generally does not like
16  to hear from. It's clearly an inequitable issue, Point 2.
17  We don't believe in the absence of the jury his testimony
18  would be very helpful to Your Honor.
19         The third point we would like to raise is that
20  if Dr. Shasha, Professor Shasha, is correct in his
21  viewpoints with regard to the prior art upon which Mr.
22  Nusbaum relies in trying to establish materiality, then
23  really it's irrelevant. If Professor Shasha is correct, the
24  patent is invalid. It's not just unenforceable. It's
25  invalid. The Court may never even have to decide that

18

1   issue.
2          And then finally, we would just like to
3   underscore that much of his testimony is based on Professor
4   Shasha's and therefore is cumulative to Professor Shasha's
5   testimony and the report. And it has no really independent
6   basis.
7          THE COURT: Okay.
8          MR. JACOBS: Let me take those in reverse order.
9   On the last point first, what Mr. Nusbaum made clear in his
10  deposition is that he studied the references. After all, he
11  is a patent lawyer in this field and he was an examiner in
12  this field. So he is experienced in evaluating references
13  on his own. And then he confirmed his understanding of the
14  technical content of those references with Professor Shasha.
15  So the words are, relying in part or relying on.
16         In his deposition he made clear what that means
17  is confirmed by -- in other words, I am not reading
18  something into this reference that BEA's technical expert
19  does not also see in this reference. But he made clear that
20  someone who is experienced in looking at art in this field,
21  both as an examiner and as a patent prosecutor, he was
22  forming a judgment about that. He was forming a judgment
23  about that for the purposes not of validity testimony, but
24  of inequitable conduct testimony.
25         One of the things he had to do in analyzing

19

1   inequitable conduct, which is different from what a
2   technical expert does on the merits of validity, is apply a
3   different claim construction standard. He has to apply, he
4   should apply, it should be applied, the broadest reasonable
5   interpretation standard, because that's what the PTO would
6   be basing its decisions on the prior art on in an
7   examination context. Professor Shasha can't testify,
8   shouldn't be testifying to a broadest reasonable
9   interpretation. He should be applying the Court's claim
10  construction.
11         What Nusbaum does that is distinct from the
12  testimonial standpoint is a couple of things. One, he says,
13  look, I am a patent guy, I am a former examiner, I am the
14  former branch chief of this division. The PTO will not
15  allow BEA to take the depositions of the actual examiners.
16  But as a former examiner I can tell you, this prior art
17  would have been material.
18         That is one level of his expertise. It can't
19  come in through someone else because no one else is in a
20  position to say, I know what an examiner would have thought
21  had he been faced with this art.
22         He does so using this broadest reasonable
23  interpretation standard that the PTO applies during
24  examination. That is something else that no other expert
25  can testify to.

20

1          THE COURT: I wonder how we try patent cases
2   around here, then, Mr. Jacobs, because, as you know, being
3   in this district all the time, none of the four judges who
4   hear these cases routinely generally permit this type of
5   testimony.
6          MR. JACOBS: The question I have for you on
7   that, because we understood that the general category of
8   testimony that is excluded is, here is how the Patent Office
9   works, here are the ways it works well, here are the ways it
10  doesn't work so well --
11         THE COURT: We are talking about materiality
12  right here. Right?
13         MR. JACOBS: That's correct, we are talking
14  about materiality.
15         THE COURT: Very skilled counsel like yourself
16  generally have a witness who doesn't fall in the category of
17  patent law expert, since the Court is presumed to be the
18  patent law expert --
19         MR. JACOBS: Yes.
20         THE COURT: -- in the room that adduces those
21  matters to the jury. We don't do it. I don't do it as a
22  matter of routine. I am not saying simply because it's not
23  done that it shouldn't be done. I am not hidebound on this.
24  I am not sure your papers have convinced me that we need to
25  do it in this case and that it isn't indeed cumulative

21

1    testimony and you don't get to improperly say here is a
2    former patent attorney and therefore, you should, ladies and
3    gentlemen of the jury, hold him up in a light that you
4    wouldn't look at another witness who could equally testify,
5    at least if only inferentially, and have the jury draw
6    proper inferences about materiality, if the jury hears the
7    issue.
8                MR. JACOBS:  Let me just make sure we are not
9    getting tripped up by the label patent law expert, because
10   we do not want him to testify to the Court on what the
11   Federal Circuit has held.  We do not want him to testify to
12   the jury on patent law.  That is absolutely the province of
13   the Court.  I wish we had a uniform national rule on this,
14   because I agree with Your Honor's predilection on that
15   point.
16               We are not offering him as a patent law expert.
17   We are offering him as an expert on the materiality of these
18   references, based on his long experience as a patent
19   prosecutor and as an examiner in the Patent Office.
20               I want to make sure you saw the letter we
21   submitted from the Patent Office.
22               THE COURT:  Is it part of the appendices?
23               MR. JACOBS:  Part of the appendices.
24   Supplemental Exhibit 2.
25               THE COURT:  Is this it?

22

1                MR. JACOBS:  Yes.  It is a very interesting kind
2    of dilemma we are in as a defendant.
3                THE COURT:  Do you have it, counsel?
4                MR. BURDETT:  Yes, Your Honor.
5                MR. JACOBS:  This was another case, Your Honor,
6    so it is not this case.  But it was another case where we
7    sought to take the deposition of an examiner.  The PTO says
8    you can take depositions of examiners as to facts but not as
9    to mental impressions.
10               I fully understand the reason for the rule.  I
11   am not quarreling with the rule.  The point is the PTO says,
12   No, you don't take our examiners' depositions, go get
13   yourself an expert.  So that is what we have done, is we
14   have gotten ourselves somebody who is an expert and who is
15   going to apply --
16               THE COURT:  Obviously, you know and understand
17   that the PTO is not going to order the business of the Court
18   or regulate in any way, either directly or impliedly, what
19   process we determine to be appropriate.  At least if not
20   directly stated, you suggest that absent this witness, you
21   have no other ability to raise the issue, to make a factual
22   record.
23               MR. JACOBS:  I think you put your finger on it
24   well when you said it's the distinction between being able
25   to offer it directly and being able to ask people to draw

23

1    inferences.  If you rule against us on this, we will
2    obviously do our best with what we have got.  But we will
3    not be able to have a witness walk the Court or the jury,
4    depending on that decision, through the prosecution history,
5    explain cogently what arguments SAG was advancing to the
6    Patent Office, by saying here is the argument they offered.
7    Here is what it means from looking at the words and
8    understanding the art area, and then saying, now look at
9    this reference.  Here is what this reference has in it.  It
10   is directly contrary to what they said in their argument.
11               That is asking lawyers to do a lot in closing
12   argument, or it's asking the Court to do a lot without the
13   benefit of somebody walking through this rather tricky area
14   of this.
15               It is not a patent on a chair or something that
16   is relatively intuitive.
17               So there are a couple of things that we think
18   the Court would be aided by in hearing Nusbaum's testimony.
19   That walk through the prosecution history, the comparing
20   what they said with what they didn't say or what they didn't
21   reveal, based on his experience saying, in my opinion as
22   someone with expertise here, I believe that the withheld
23   information was material, and being able to say that
24   directly as an opinion and being able to back it up, rather
25   than having to argue it and ask for inferences to be drawn.

24

1    I think that's where we are.
2                MR. BURDETT:  If I may, Your Honor.
3                Mr. Nusbaum had stated in his report that I may
4    testify about patent applicant's duty of disclosure to the
5    PTO in that he was describing patent law regarding what
6    constitutes a material reference and what constitutes
7    anticipation and obviousness.  Clearly, the Court can make
8    that decision.
9                Second, with regard to materiality, Mr.
10   Nusbaum's report and during his testimony during deposition,
11   his theme was not that these particular references that he
12   is forwarding are any more material than the references of
13   record.  He didn't compare them to the references of record,
14   other than in one characterization by the patent applicant
15   with regard to a reference that completely fell out of the
16   prosecution.
17               He didn't compare it to the primary references
18   of record that the patent examiner -- who he knew
19   personally, the primary examiner, Dale Shaw was a friend of
20   his at the Patent Office.  So having this one person who is
21   now gone from the Patent Office opining as to someone who he
22   knew to be a very good patent examiner, and not explaining
23   why these particular references chosen by BEA are any more
24   relevant or any more material than the references of record,
25   the primary references of record, was a mistake we think Mr.

25

1  Nusbaum made.

2       Finally, I would just like to say that in the

3  District of Delaware case that BEA has appended to its

4  opposition to this motion in limine, they have, I believe, a

5  Judge Farnan case in which he says, this is not an "Oh, no"

6  moment.

7       This is a case, a simple case that does

8  not involve a continuation-in-part or a continuation

9  application, as in the First Northern District of Illinois

10 case that BEA cites.  Nor is it the "Oh, no" moment.  It is

11 not a particularly difficult case to construe.  We believe

12 that Your Honor can rule on that evidence.  But we don't

13 believe that Mr. Nusbaum's testimony would add to your

14 understanding.

15      THE COURT:  I tend to agree with SAG on this

16 point, Mr. Jacobs.  I think that his testimony and presence,

17 quite frankly, before the jury is fraught with more

18 potential for unintended mischief, perhaps, but mischief

19 nonetheless than is offset by the value that he adds to your

20 case.

21      I think there are other means that you have at

22 your disposal to adduce the facts that you need to, either

23 by direct evidence or inferentially, as I say.

24      So the motion will be granted.

25      Let's move back to BEA, and go to No. 2, that

26

1  is, your motion to preclude plaintiffs' technical expert

2  from providing previously undisclosed overview and tutorial.

3       We are going to do the film, I think we have

4  agreed to do the film tutorial.

5       MR. COSTON:  Yes, Your Honor.

6       MR. JACOBS:  I went back and looked at the

7  transcript of the film tutorial.  First of all, I don't

8  think that is the tutorial they are talking about.  They are

9  talking about a technical tutorial here, not a patent

10 tutorial.  If I can come back, if it is all right, I would

11 like to deal with the film subject.

12      THE COURT:  It is an overview of the patent,

13 '619 patent.

14      MR. D'AMORE:  Your Honor, we mentioned this in

15 sort of our opening motions before, this is an area where

16 Dr. Ligler says, I acknowledge, this isn't in my report.

17 There is a discussion on this topic in Dr. Chatterjee's

18 report.  Software AG's position is, Dr. Ligler should be

19 able to testify about it anyway.  It is implicit.

20      We disagree.  We think if he wanted to testify

21 to an overview tutorial of the testimony and the patent,

22 then it should have been in his report.

23      As an example, an overview of the patent is not

24 in Professor Chatterjee's report, at least not to my

25 recollection.  So therefore, he will not be presenting such

27

1  an overview.  Dr. Chatterjee has it in his report and will

2  be presenting it.  Dr. Ligler does not have it in his

3  report, and therefore should not be presenting such an

4  overview or tutorial.

5       THE COURT:  Mr. Burdett.

6       MR. BURDETT:  Your Honor, it baffles me how one

7  of 31 years of age and a Ph.D. -- or one of 31 years

8  experience and a Ph.D. in these relevant sciences can be

9  compared.  That being said, however, it would also baffle me

10 how one can study a patent, opine as to the grounds why 11

11 claims of that patent are infringed by products without the

12 bare statement saying they are infringed.

13      Clearly, Dr. Ligler knows from personal

14 experience that was well-examined his depositions,

15 personal experience back at the time that this technology

16 was being invented.  It was explored by Mr. Jacobs at great

17 length.

18      Mr. Jacobs challenged Dr. Ligler to, for

19 example, provide an example of a parameter string, and did

20 there on the spot.

21      This is not about setting forth a tutorial of a

22 55-column patent within the confines of an expert report.

23 This is an expert who carefully studied the patent, the

24 prosecution history.  Personally knew the state of the prior

25 art at the time.  Made judgment on that and opined in his

28

1  report.  Was carefully examined on two occasions, for a

2  total of about 14 hours, which clearly established his

3  ability to provide a tutorial, if necessary.

4       Dr. Ligler said, if necessary, he was able to do

5  that.  Clearly, I think his personal background would

6  establish that.

7       THE COURT:  Why isn't the failure harmless?

8       MR. D'AMORE:  Well, Your Honor, the failure is

9  not harmless because we don't know, for example, what areas

10 of the patent he is going to emphasize or what he is not

11 going to emphasize.

12      THE COURT:  Why can't they make a proffer in

13 that regard?

14      MR. D'AMORE:  We don't know whether his proffer

15 is going to be, whether he is going to be presenting

16 accurate -- I have no reason to think that he wouldn't

17 testify accurately.  We don't know whether he is going to

18 make simplifications.

19      THE COURT:  You have the vehicle of objecting in

20 realtime.

21      MR. D'AMORE:  We do have the vehicle of

22 objecting in realtime, Your Honor.  But we also believe that

23 we are entitled to, A, a discussion, however brief, of the

24 issues --

25      THE COURT:  There is no question of the

# Exhibit G

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| W.L. GORE & ASSOCIATES, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-515-LPS-CJB |
| | ) | |
| C.R. BARD, INC. and BARD | ) | |
| PERIPHERAL VASCULAR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

### MEMORANDUM ORDER

In this action filed by Plaintiff W.L. Gore & Associates, Inc. ("Gore" or "Plaintiff")

against Defendants C.R. Bard, Inc. and Bard Peripheral Vascular, Inc. (collectively, "Bard" or

"Defendants"), Gore alleges infringement of United States Patent No. 5,735,892 (the "asserted

patent" or the "patent-in-suit").[1] Presently before the Court is Defendants' *Daubert* motion

("Motion") to exclude the testimony of Plaintiff's patent office expert, Nicholas Godici. (D.I.

250) For the following reasons, the Court GRANTS-IN-PART the Motion.[2]

## I.   BACKGROUND[3]

---

[1]     Gore also originally asserted infringement of U.S. Patent No. 8,221,487, but is no longer asserting that patent. (D.I. 191 at 1-2) It also was asserting infringement of U.S. Patent No. 5,700,285, but that patent is no longer at issue following the District Court's adoption of the Court's recommendation to grant summary judgment of non-infringement of the patent. (D.I. 405 at 10-11; D.I. 423)

[2]     Under the circumstances here, the resolution of this *Daubert* Motion is properly treated as non-dispositive, and is resolved by the Court pursuant to 28 U.S.C. § 636(b)(1)(A) and D. Del. LR 72.1(a)(2). *See, e.g.*, *Withrow v. Spears*, 967 F. Supp. 2d 982, 987 n.1 (D. Del. 2013) (citing cases).

[3]     The Court will assume familiarity with the background facts and procedural history detailed in its previously-issued Report and Recommendations. (*See, e.g.*, D.I. 221, 361, 369, 428, 429, 435, 436)