# ASHBY & GEDDES

ATTORNEYS AND COUNSELLORS AT LAW

500 DELAWARE AVENUE

P. O. BOX 1150

WILMINGTON, DELAWARE 19899

TELEPHONE
302-654-1888

FACSIMILE
302-654-2067

September 30, 2016

The Honorable Mary Pat Thynge                          **REDACTED PUBLIC VERSION**
United States District Court
844 N. King Street
Wilmington, DE  19801

Re:    _Cornell University, et al. v. Illumina, Inc.,_ C.A. No. 10-433-LPS-MPT

Dear Judge Thynge:

Illumina hereby responds to Plaintiffs' September 29, 2016 letter-brief in the above case
(D.I. 492).  At the heart of Plaintiffs' motion is a desire to have a lopsided trial where Plaintiffs
can offer testimony from their own patent attorney, Michael Goldman, who prosecuted the '470
Patent family, but Illumina has no opportunity to respond with its own witness.  In particular,
Plaintiffs want to preserve their ability to offer Mr. Goldman on aspects of patent office practice
and procedure, specifically, on a "Rule 131 declaration," but to preclude Illumina from
presenting testimony on these specialized aspects of patent office practice and procedure.

Illumina tried to obviate this dispute by offering a compromise that neither party would
offer patent law testimony.  Plaintiffs refused.  Pls. Ex. H.  Indeed, Plaintiffs refused to stipulate
even as to the meaning of the Rule 131 declaration in the case, preserving instead their right to
put on patent law testimony on the subject while seeking to bar Illumina from responding in
kind.  _Id._  Plaintiffs thus overtly take the position that patent law testimony is relevant and
necessary in this case, and seek, through their motion, to tilt the playing field so that they, and
only they, can put on such testimony.  Plaintiffs' suggestion that Illumina can simply respond by
cross-examining Plaintiffs' patent attorney does nothing to level the playing field, but instead
further confirms Plaintiffs' lopsided position.  None of the cases cited by Plaintiffs supports such
an unfair result, and Plaintiffs' motion should be denied.[1]  Plaintiffs appear to believe that they
can draw a distinction between their witness and Illumina's witness by labeling their prosecuting
attorney as a fact witness and Illumina's attorney-witness as an expert witness.  However, it is a
distinction without a difference, as both witnesses would offer testimony on the same subject,
and the interests of fairness require that the jury either be permitted to hear from both witnesses
or neither witness.

---

[1] To be sure, the Court may ultimately decide that no patent law testimony is appropriate.
However, that is not the basis of Plaintiffs' motion, which instead attempts to preserve Plaintiffs'
ability to introduce such testimony while precluding Illumina from doing so.

{01151384;v1 }

The Honorable Mary Pat Thynge
September 30, 2016
Page 2

I.    Testimony Concerning Patent Office Practice and Procedure Regarding Rule 131
      Declarations Will Assist the Trier of Fact.

      The issue on which Illumina may seek to offer expert testimony concerns U.S. Patent and
Trademark Office ("PTO") practice and procedure concerning, in particular, a Rule 131
declaration. This issue arises in the context of the '470 Patent, where the applicants relied on a
Rule 131 declaration to overcome rejections based on the Zhang and Carrino references. The
Examiner rejected the pending claims over the Zhang and Carrino references. Ex. 1, September
11, 2003 Rejection [C001147-53]. The applicants did not attempt to distinguish Zhang or
Carrino, but instead responded by submitting a declaration pursuant to 37 C.F.R. § 1.131 (a
"Rule 131 declaration"), which permits an applicant to assert he "invented"—that is, conceived
and reduced to practice—the claimed subject matter before a prior art reference's publication
dates. *See* Ex. 2, Rule 131 declaration [C001261-74]; Ex. 3, Manual of Patent Examination
Procedure ("MPEP") § 715. The Examiner subsequently allowed the '470 Patent application
without further prosecution, presumably due to a finding that the applicants' Rule 131
declaration created an earlier priority date and thus disqualified the Zhang and Carrino references
from being prior art. Ex. 4, February 23, 2004 Notice of Allowability [C001279-81].

      Plaintiffs have indicated that they may attempt to offer evidence that the Zhang or
Carrino references were considered on the merits by the PTO. The MPEP's guidelines for a
Rule 131 declaration, and how the Rule 131 declaration would be understood by an Examiner,
provide necessary context to these assertions. These issues are factual in nature, and the jury
would likely benefit from additional guidance in this arcane area of PTO practice and procedure.
*See, e.g., Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 595 F.3d 1340, 1360 (Fed. Cir. 2010) ("Larry
Nixon testified generally about the written description requirement and did not offer legal
conclusions as to the adequacy of the provisional application's disclosure. While offering general
opinions on patent practices, he did not usurp the district court's role of instructing the jury on
the law. Therefore, the district court did not abuse its discretion by permitting his testimony.");
*see also* Fed. R. Evid. 702.

II.   The Unique Circumstances of this Case Warrant Specialized Testimony About Patent
      Office Practices and Procedures.

      Illumina recognizes that patent expert testimony is generally disfavored in this District,
but submits that this case provides unusual circumstances that warrant such testimony. First, in
no case cited by Plaintiffs does it appear that the court precluded testimony from one side's
patent expert, while at the same time permitting testimony from the other side's patent attorney.
Such an imbalance, which Plaintiffs seek to preserve here, would be prejudicial and finds no
support in this Court's jurisprudence.

      Second, the testimony that Illumina would propose to offer would be factual testimony
addressing a specialized procedure before the PTO. As Plaintiffs acknowledge, patent experts
have been permitted to offer testimony as to PTO practice and procedure. *See* Pls. Ex. G;
*Brigham & Women's Hosp. Inc. v. Teva Pharm. USA, Inc.*, C.A. No. 08-464, 2010 WL 3907490,

The Honorable Mary Pat Thynge
September 30, 2016
Page 3

at *2 (D. Del. Sept. 21, 2010) (Bartle, J.); *Proctor & Gamble Co. v. Teva Pharm. USA, Inc.*, No. CIV.A. 04-940-JJF, 2006 WL 2241018, at *1 (D. Del. Aug. 4, 2006) (refusing to preclude portions of a patent expert's report related to PTO practice and procedures).  The commonly articulated rationale for rejecting patent expert testimony—that descriptions and instructions of the law are the province of the Court, *see* Judge Robinson's Additional Civil Trial Guidelines for Patent Cases[2]—does not apply here, where the proffered testimony goes to an esoteric aspect of PTO practice and procedure, like Rule 131 declarations and their requirements, and is not covered in the introductory video often shown to juries in this District.

Prohibiting Illumina from serving a report and utilizing its witness at trial would prejudice Illumina.  If, for example, Plaintiffs offered confusing or erroneous information as to the requirements or import of a Rule 131 declaration regarding the Zhang and Carrino prior art, Illumina's ability to rebut these assertions would be undermined.  This could well happen. Plaintiffs refuse to agree not to offer testimony from their own patent attorney, Mr. Goldman. Pls. Ex. H.  There is a material risk the jury would give his explanation of PTO practice and procedure undue weight, particularly if Illumina is given no opportunity to offer rebuttal testimony.  Until trial, it will not be known if Mr. Goldman will testify, or what will be the subject of his testimony.  Were Illumina precluded from even serving an expert report from Mr. Nixon, Illumina would have no ability to respond to Mr. Goldman's testimony.  In every case cited by Plaintiffs where the testimony of a patent expert was excluded, an expert report had already been prepared and the Court made an admissibility determination based on the specifics of the opinions and the issues to be tried.

Contrary to Plaintiffs' assertion, cross-examination would not alleviate this prejudice.

Illumina could cross-examine Mr. Goldman on these statements, but without its own witness, Illumina would be hard pressed to present evidence as to what the MPEP requires for a Rule 131 declaration and how it governs practice before the PTO.  Likewise, cross-examination would not alleviate prejudice to Illumina were Plaintiffs to offer any testimony from a witness, or attorney argument, that the Examiner considered the Zhang or Carrino references as prior art in allowing the '470 Patent.

Finally, Plaintiffs' assertion that they should not have to go through the "costs of responding to Mr. Nixon's report, deposing him, and briefing and arguing a *Daubert* motion," Pls. Ltr. (D.I. 492) at 3, rings hollow.  As noted, Illumina offered not to serve a report from Mr. Nixon if Plaintiffs would agree not to have Mr. Goldman testify and not to adduce testimony or argument that the Examiner considered the Zhang or Carrino references on their merits despite the Rule 131 declaration used to swear behind Zhang or Carrino.  Plaintiffs refused.  Pls. Ex. H.

---

[2] *See* http://www.ded.uscourts.gov/sites/default/files/Chambers/SLR/Misc/Additional_Civil_ Trial_Guidelines-Patent_Cases_12-21-10.pdf.

The Honorable Mary Pat Thynge
September 30, 2016
Page 4

      In the circumstances of this case, where Plaintiffs may call their patent attorney to offer testimony on PTO practice and procedures, Illumina respectfully submits that it should be permitted the opportunity to provide rebuttal evidence, including testimony from a witness about PTO practice and procedures.

      For the forgoing reasons, Plaintiffs' motion should be denied.

                    Respectfully,

                    */s/ Steven J. Balick*

                    Steven J. Balick (#2114)

SJB: nlm

cc:    John W. Shaw, Esquire (via electronic mail)
       Matthew A. Pearson, Esquire (via electronic mail)
       Rachel J. Elsby, Esquire (via electronic mail)

# EXHIBIT 1



## UNITED STATES PATENT AND TRADEMARK OFFICE

UNITED STATES DEPARTMENT OF COMMERCE
United States Patent and Trademark Office
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 09/918,156 | 07/30/2001 | Francis Barany | 19603/448 (CRF D-1593C) | 4406 |

7590          09/11/2003

Michael L. Goldman
NIXON PEABODY LLP
Clinton Square
P.O. Box 31051
Rochester, NY   14603

| EXAMINER |
|---|
| HORLICK, KENNETH R |

| ART UNIT | PAPER NUMBER |
|---|---|
| 1637 | |

DATE MAILED: 09/11/2003

Please find below and/or attached an Office communication concerning this application or proceeding.

PTO-90C (Rev. 07-01)

C001147

| | Application N . | |
|---|---|---|
| **Office Action Summary** | 09/918,156 | **Applicant(s)** BARANY ET AL. |
| | **Examiner** | **Art Unit** |
| | Kenneth R Horlick | 1637 |

-- *The MAILING DATE of this communication app ars n the cover sheet with th correspondenc address* --

**Period for Reply**

A SHORTENED STATUTORY PERIOD FOR REPLY IS SET TO EXPIRE **3** MONTH(S) FROM
THE MAILING DATE OF THIS COMMUNICATION.
- Extensions of time may be available under the provisions of 37 CFR 1.136(a). In no event, however, may a reply be timely filed
  after SIX (6) MONTHS from the mailing date of this communication.
- If the period for reply specified above is less than thirty (30) days, a reply within the statutory minimum of thirty (30) days will be considered timely.
- If NO period for reply is specified above, the maximum statutory period will apply and will expire SIX (6) MONTHS from the mailing date of this communication.
- Failure to reply within the set or extended period for reply will, by statute, cause the application to become ABANDONED (35 U.S.C. § 133).
- Any reply received by the Office later than three months after the mailing date of this communication, even if timely filed, may reduce any
  earned patent term adjustment. See 37 CFR 1.704(b).

**Status**

1) ☐ Responsive to communication(s) filed on _____ .

2a) ☐ This action is **FINAL**.          2b) ☒ This action is non-final.

3) ☐ Since this application is in condition for allowance except for formal matters, prosecution as to the merits is
    closed in accordance with the practice under *Ex parte Quayle*, 1935 C.D. 11, 453 O.G. 213.

**Disposition of Claims**

4) ☒ Claim(s) *1-10 and 55-70* is/are pending in the application.

    4a) Of the above claim(s) _____ is/are withdrawn from consideration.

5) ☐ Claim(s) _____ is/are allowed.

6) ☒ Claim(s) *1-9 and 59-70* is/are rejected.

7) ☒ Claim(s) *10 and 55-58* is/are objected to.

8) ☐ Claim(s) _____ are subject to restriction and/or election requirement.

**Application Papers**

9) ☐ The specification is objected to by the Examiner.

10) ☒ The drawing(s) filed on *30 July 2001* is/are: a) ☒ accepted or b) ☐ objected to by the Examiner.

    Applicant may not request that any objection to the drawing(s) be held in abeyance. See 37 CFR 1.85(a).

11) ☐ The proposed drawing correction filed on _____ is: a) ☐ approved b) ☐ disapproved by the Examiner.

    If approved, corrected drawings are required in reply to this Office action.

12) ☐ The oath or declaration is objected to by the Examiner.

**Priority under 35 U.S.C. §§ 119 and 120**

13) ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

    a) ☐ All b) ☐ Some * c) ☐ None of:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this National Stage
             application from the International Bureau (PCT Rule 17.2(a)).
    * See the attached detailed Office action for a list of the certified copies not received.

14) ☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application).

    a) ☐ The translation of the foreign language provisional application has been received.

15) ☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121.

**Attachment(s)**

1) ☒ Notice of References Cited (PTO-892)
2) ☐ Notice of Draftsperson's Patent Drawing Review (PTO-948)
3) ☒ Information Disclosure Statement(s) (PTO-1449) Paper No(s) *18* .

4) ☐ Interview Summary (PTO-413) Paper No(s). _____ .
5) ☐ Notice of Informal Patent Application (PTO-152)
6) ☐ Other: ____

C001148

Application/Control Number: 09/918,156                                          Page 2
Art Unit: 1637

1.      A request for continued examination under 37 CFR 1.114, including the fee set

forth in 37 CFR 1.17(e), was filed in this application after allowance or after an Office

action under *Ex Parte Quayle*, 25 USPQ 74, 453 O.G. 213 (Comm'r Pat. 1935). Since

this application is eligible for continued examination under 37 CFR 1.114, and the fee

set forth in 37 CFR 1.17(e) has been timely paid, prosecution in this application has

been reopened pursuant to 37 CFR 1.114.  Applicant's submission filed on 08/06/03 has

been entered.


2.      The following is a quotation of the appropriate paragraphs of 35 U.S.C. 102 that

form the basis for the rejections under this section made in this Office action:

> A person shall be entitled to a patent unless –
>
> (a) the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent.
>
> (e) the invention was described in (1) an application for patent, published under section 122(b), by another filed in the United States before the invention by the applicant for patent or (2) a patent granted on an application for patent by another filed in the United States before the invention by the applicant for patent, except that an international application filed under the treaty defined in section 351(a) shall have the effects for purposes of this subsection of an application filed in the United States only if the international application designated the United States and was published under Article 21(2) of such treaty in the English language.


3.      Claims 1, 3, and 4 are rejected under 35 U.S.C. 102(a) as being anticipated by

Carrino (WO 96/15271).

        These claims are drawn to methods comprising: carrying out a ligation detection

reaction using probes containing primer binding sites at the appropriate ends, and then

carrying out a polymerase chain reaction on the ligated products using primers targeting

said primer binding sites.

Application/Control Number: 09/918,156                                    Page 3
Art Unit: 1637

      Carrino clearly discloses such a method; see pages 11-17 and Figs. 3a-3h.


4.     Claims 1, 3, and 4 are rejected under 35 U.S.C. 102(a) as being anticipated by

Zhang (WO 95/35390).

      This document clearly discloses the claimed method; see pages 5-37 and Fig. 2.


5.     Claims 1, 3, and 4 are rejected under 35 U.S.C. 102(e) as being anticipated by

Zhang et al. (US 5,876,924). Priority for the combined LDR/PCR method as shown in

Fig. 2 of this patent has been confirmed in the parent '937 application, which has a filing

date of June 22, 1994.

      This document clearly discloses the claimed method; see especially columns 3-

18 and Figs. 2 and 13.


6.     The following is a quotation of 35 U.S.C. 103(a) which forms the basis for all

obviousness rejections set forth in this Office action:

> (a) A patent may not be obtained though the invention is not identically disclosed or described as set
> forth in section 102 of this title, if the differences between the subject matter sought to be patented and
> the prior art are such that the subject matter as a whole would have been obvious at the time the
> invention was made to a person having ordinary skill in the art to which said subject matter pertains.
> Patentability shall not be negatived by the manner in which the invention was made.

      This application currently names joint inventors. In considering patentability of

the claims under 35 U.S.C. 103(a), the examiner presumes that the subject matter of

the various claims was commonly owned at the time any inventions covered therein

were made absent any evidence to the contrary. Applicant is advised of the obligation

under 37 CFR 1.56 to point out the inventor and invention dates of each claim that was

C001150

Application/Control Number: 09/918,156                                    Page 4
Art Unit: 1637

not commonly owned at the time a later invention was made in order for the examiner to

consider the applicability of 35 U.S.C. 103(c) and potential 35 U.S.C. 102(e), (f) or (g)

prior art under 35 U.S.C. 103(a).

Claims 2, 5-9, and 64-70 are rejected under 35 U.S.C. 103(a) as being

unpatentable over any one of Carrino, WO 95/35390, or Zhang et al. '924.

These claims are drawn to the methods as described and rejected above, with

further limitations regarding: use of restriction sites in probes, arrays, quantifying,

separation by size differences, particular ligase detection reaction parameters, and

particular probe characteristics.

While the further limitations are not explicitly taught in the references, these all

unquestionably relate to reaction parameters well known and commonly used in the art

at the time of the invention, and as such do not bear on patentability.  One of ordinary

skill in the art would have been motivated to carry out these minor modifications to the

method of any one of the cited references in order to achieve the expected desired

results or routine optimization of reaction conditions.  It would have been *prima facie*

obvious to one of ordinary skill in the art at the time of the invention to carry out the

claimed methods.

C001151

Application/Control Number: 09/918,156                                    Page 5
Art Unit: 1637

7.      Claims 59-63 are rejected under 35 U.S.C. 103(a) as being unpatentable over

any one of Carrino, WO 95/35390, or Zhang et al. '924, in view of Gelfand et al. (US

5,418,149).

        These claims are drawn to the method of claim 1 as described and rejected

above, with further limitations regarding the use of dUTP and uracil N-glycosylase.

        The primary references do not disclose the use of dUTP and uracil N-glycosylase

for the purpose of rendering amplification products incapable of further amplification.

        Gelfand et al. disclose the advantageous use of dUTP and uracil N-glycosylase

for the purpose of rendering amplification products incapable of further amplification

(see columns 2-28). Both PCR and LDR amplification methodologies are discussed.

        One of ordinary skill in the art would have been motivated to use dUTP and uracil

N-glycosylase in the method of any one of the primary references because Gelfand et

al. taught that this was advantageous in rendering amplification products incapable of

further amplification. It would have been *prima facie* obvious to one of ordinary skill in

the art at the time of the invention to carry out the claimed methods.


8.      Claims 10 and 55-58 are objected to as being dependent upon a rejected base

claim, but would be allowable if rewritten in independent form including all of the

limitations of the base claim and any intervening claims. These claims require the use

of blocking groups and exonuclease digestion. While Carrino, Zhang, and Zhang et al.

teach an application using exonuclease in the case of a circular probe, there is no

Application/Control Number: 09/918,156                                Page 6
Art Unit: 1637

teaching or suggestion of the use of blocking groups in probes and subsequent

exonuclease digestion.


9.      No claims are allowable.


10.     Zhang et al. (US 6,569,647 and US 5,942,391) are made of record as references

of interest.


11.     Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kenneth R Horlick whose telephone number is 703-308-

3905.  The examiner can normally be reached on Monday-Thursday 6:30AM-5:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Gary  Benzion can be reached on 703-308-1119.  The fax phone number for

the organization where this application or proceeding is assigned is (703) 872-9306.

        Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is 703-308-

0196.

                                        Kenneth R Horlick, Ph. D
                                        Kenneth R Horlick
                                        Primary Examiner
                                        Art Unit 1637

08/26/03

# EXHIBIT 2

PATENT
Docket No.: **19603/448 (CRF D-1593C)**

## IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | | |
|---|---|---|---|---|
| Applicant(s) | : | Barany et al. | ) | Examiner: |
| | | | ) | K. Horlick |
| Serial No. | : | 09/918,156 | ) | |
| | | | ) | Art Unit: |
| Cnfrm. No. | : | 4406 | ) | 1637 |
| | | | ) | |
| Filed | : | July 30, 2001 | ) | |
| | | | ) | |
| For | : | DETECTION OF NUCLEIC ACID | ) | |
| | | SEQUENCE DIFFERENCES USING | ) | |
| | | COUPLED LIGASE DETECTION AND | ) | |
| | | POLYMERASE CHAIN REACTIONS | ) | |
| | | | ) | |

### DECLARATION OF FRANCIS BARANY, MATTHEW LUBIN, GEORGE BARANY, AND ROBERT P. HAMMER UNDER 37 CFR § 1.131

Mail Stop Non-Fee Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

We, Francis Barany, Matthew Lubin, George Barany, and Robert P. Hammer, pursuant to 37 CFR § 1.131 declare that:

1.     We are the inventors of the above-identified patent application.

2.     Prior to June 22, 1994, we conceived and diligently reduced to practice, in the United States, the invention claimed in the above-identified patent application. Evidence of this conception prior to June 22, 1994, is provided in attached Exhibit 1. For purposes of this declaration, the dates (and unrelated subject matter) have been removed from Exhibit 1, as indicated by the REDACTED stamp.

3.     Exhibit 1 is a true copy of pages from Francis Barany, Ph.D.'s grant proposal to the Department of Health and Human Services, prepared prior to June 22, 1994, which discloses the development of a multiplex ligase detection reaction/polymerase chain reaction (LDR/PCR) system. (See Exhibit 1 at page 2 of

R721150.1

- 2 -

6). Exhibit 1 also teaches the design of LDR primers for the detection of tumor genes; all of these primers have common artificial PCR primer sequences to allow subsequent amplification using only two PCR primers (Exhibit 1 at page 4 of 6 (Fig. 16)). This LDR/PCR system is illustrated in Figure 15 of Exhibit 1 (Exhibit 1 at page 3 of 6). In particular, Figure 15 illustrates the quantification of gene amplifications and deletions using LDR/PCR as follows. A sample containing a plurality of DNA templates is denatured at 94°C. The LDR primers are added, allowed to anneal to complementary sequences on the DNA templates, and ligated with a thermostable ligase. A DNA polymerase is added and PCR is carried out to amplify all LDR products simultaneously using two common "zip code" primers. As shown in Figure 15, the zip code primers are labeled to allow for detection of the extension products following PCR. Detection is carried out either by separation and quantification of different sized labeled ligation products or by capture on the appropriate oligonucleotide or PNA addressable array (Exhibit 1 at page 5 of 6 (1st full para.)).

4. We hereby declare that all statements made herein of our own knowledge are true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that any such willful false statements may jeopardize the validity of the application or any patent issued thereon.

_Nov 7,_____, 2003

Dr. Francis Barany
_____
Francis Barany

_____, 2003

_____
Matthew Lubin

_____, 2003

_____
George Barany

_____, 2003

_____
Robert P. Hammer

R721150.1



PATENT
Docket No.: **19603/448 (CRF D-1593C)**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant(s) | : | Barany et al. | ) |
| | | | ) |
| Serial No. | : | 09/918,156 | ) |
| | | | ) |
| Cnfrm. No. | : | 4406 | ) |
| | | | ) |
| Filed | : | July 30, 2001 | ) |
| | | | ) |
| For | : | DETECTION OF NUCLEIC ACID | ) |
| | | SEQUENCE DIFFERENCES USING | ) |
| | | COUPLED LIGASE DETECTION AND | ) |
| | | POLYMERASE CHAIN REACTIONS | ) |

Examiner:
K. Horlick

Art Unit:
1637

## DECLARATION OF FRANCIS BARANY, MATTHEW LUBIN, GEORGE BARANY, AND ROBERT P. HAMMER UNDER 37 CFR § 1.131

Mail Stop Non-Fee Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

      We, Francis Barany, Matthew Lubin, George Barany, and Robert P. Hammer, pursuant to 37 CFR § 1.131 declare that:

      1.    We are the inventors of the above-identified patent application.

      2.    Prior to June 22, 1994, we conceived and diligently reduced to practice, in the United States, the invention claimed in the above-identified patent application. Evidence of this conception prior to June 22, 1994, is provided in attached Exhibit 1. For purposes of this declaration, the dates (and unrelated subject matter) have been removed from Exhibit 1, as indicated by the REDACTED stamp.

      3.    Exhibit 1 is a true copy of pages from Francis Barany, Ph.D.'s grant proposal to the Department of Health and Human Services, prepared prior to June 22, 1994, which discloses the development of a multiplex ligase detection reaction/polymerase chain reaction (LDR/PCR) system. (See Exhibit 1 at page 2 of

C001263

- 2 -

6). Exhibit 1 also teaches the design of LDR primers for the detection of tumor genes; all of these primers have common artificial PCR primer sequences to allow subsequent amplification using only two PCR primers (Exhibit 1 at page 4 of 6 (Fig. 16)). This LDR/PCR system is illustrated in Figure 15 of Exhibit 1 (Exhibit 1 at page 3 of 6). In particular, Figure 15 illustrates the quantification of gene amplifications and deletions using LDR/PCR as follows. A sample containing a plurality of DNA templates is denatured at 94°C. The LDR primers are added, allowed to anneal to complementary sequences on the DNA templates, and ligated with a thermostable ligase. A DNA polymerase is added and PCR is carried out to amplify all LDR products simultaneously using two common "zip code" primers. As shown in Figure 15, the zip code primers are labeled to allow for detection of the extension products following PCR. Detection is carried out either by separation and quantification of different sized labeled ligation products or by capture on the appropriate oligonucleotide or PNA addressable array (Exhibit 1 at page 5 of 6 (1st full para.)).

4.      We hereby declare that all statements made herein of our own knowledge are true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that any such willful false statements may jeopardize the validity of the application or any patent issued thereon.

_____, 2003

Francis Barany

_____, 2003

Matthew Lubin

_____, 2003

George Barany

_____, 2003

Robert P. Hammer

R721150.1

C001264



PATENT
Docket No.: **19603/448 (CRF D-1593C)**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant(s) | : | Barany et al. | ) |
| | | | ) |
| Serial No. | : | 09/918,156 | ) |
| | | | ) |
| Cnfrm. No. | : | 4406 | ) |
| | | | ) |
| Filed | : | July 30, 2001 | ) |
| | | | ) |
| For | : | DETECTION OF NUCLEIC ACID | ) |
| | | SEQUENCE DIFFERENCES USING | ) |
| | | COUPLED LIGASE DETECTION AND | ) |
| | | POLYMERASE CHAIN REACTIONS | ) |

Examiner:
K. Horlick

Art Unit:
1637

### DECLARATION OF FRANCIS BARANY, MATTHEW LUBIN, GEORGE BARANY, AND ROBERT P. HAMMER UNDER 37 CFR § 1.131

Mail Stop Non-Fee Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

We, Francis Barany, Matthew Lubin, George Barany, and Robert P. Hammer, pursuant to 37 CFR § 1.131 declare that:

1. We are the inventors of the above-identified patent application.

2. Prior to June 22, 1994, we conceived and diligently reduced to practice, in the United States, the invention claimed in the above-identified patent application. Evidence of this conception prior to June 22, 1994, is provided in attached Exhibit 1. For purposes of this declaration, the dates (and unrelated subject matter) have been removed from Exhibit 1, as indicated by the REDACTED stamp.

3. Exhibit 1 is a true copy of pages from Francis Barany, Ph.D.'s grant proposal to the Department of Health and Human Services, prepared prior to June 22, 1994, which discloses the development of a multiplex ligase detection reaction/polymerase chain reaction (LDR/PCR) system. (See Exhibit 1 at page 2 of

R721150.1

**C001265**

- 2 -

6). Exhibit 1 also teaches the design of LDR primers for the detection of tumor genes; all of these primers have common artificial PCR primer sequences to allow subsequent amplification using only two PCR primers (Exhibit 1 at page 4 of 6 (Fig. 16)). This LDR/PCR system is illustrated in Figure 15 of Exhibit 1 (Exhibit 1 at page 3 of 6). In particular, Figure 15 illustrates the quantification of gene amplifications and deletions using LDR/PCR as follows. A sample containing a plurality of DNA templates is denatured at 94°C. The LDR primers are added, allowed to anneal to complementary sequences on the DNA templates, and ligated with a thermostable ligase. A DNA polymerase is added and PCR is carried out to amplify all LDR products simultaneously using two common "zip code" primers. As shown in Figure 15, the zip code primers are labeled to allow for detection of the extension products following PCR. Detection is carried out either by separation and quantification of different sized labeled ligation products or by capture on the appropriate oligonucleotide or PNA addressable array (Exhibit 1 at page 5 of 6 (1st full para.)).

4.      We hereby declare that all statements made herein of our own knowledge are true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that any such willful false statements may jeopardize the validity of the application or any patent issued thereon.

_____, 2003                    _____
                                            Francis Barany

_____, 2003                    _____
                                            Matthew Lubin

_November 6_____, 2003                    _George Barany_____
                                            George Barany

_____, 2003                    _____
                                            Robert P. Hammer

R721150.1

C001266



PATENT
Docket No.: **19603/448 (CRF D-1593C)**

### IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

| | | | |
|---|---|---|---|
| Applicant(s) | : | Barany et al. | ) |
| | | | ) |
| Serial No. | : | 09/918,156 | ) |
| | | | ) |
| Cnfrm. No. | : | 4406 | ) |
| | | | ) |
| Filed | : | July 30, 2001 | ) |
| | | | ) |
| For | : | DETECTION OF NUCLEIC ACID | ) |
| | | SEQUENCE DIFFERENCES USING | ) |
| | | COUPLED LIGASE DETECTION AND | ) |
| | | POLYMERASE CHAIN REACTIONS | ) |

Examiner:
K. Horlick

Art Unit:
1637

## DECLARATION OF FRANCIS BARANY, MATTHEW LUBIN, GEORGE BARANY, AND ROBERT P. HAMMER UNDER 37 CFR § 1.131

Mail Stop Non-Fee Amendment
Commissioner for Patents
P.O. Box 1450
Alexandria, VA 22313-1450

Sir:

We, Francis Barany, Matthew Lubin, George Barany, and Robert P. Hammer, pursuant to 37 CFR § 1.131 declare that:

1.　　We are the inventors of the above-identified patent application.

2.　　Prior to June 22, 1994, we conceived and diligently reduced to practice, in the United States, the invention claimed in the above-identified patent application. Evidence of this conception prior to June 22, 1994, is provided in attached Exhibit 1. For purposes of this declaration, the dates (and unrelated subject matter) have been removed from Exhibit 1, as indicated by the REDACTED stamp.

3.　　Exhibit 1 is a true copy of pages from Francis Barany, Ph.D.'s grant proposal to the Department of Health and Human Services, prepared prior to June 22, 1994, which discloses the development of a multiplex ligase detection reaction/polymerase chain reaction (LDR/PCR) system. (See Exhibit 1 at page 2 of

R721150.1

6). Exhibit 1 also teaches the design of LDR primers for the detection of tumor genes; all of these primers have common artificial PCR primer sequences to allow subsequent amplification using only two PCR primers (Exhibit 1 at page 4 of 6 (Fig. 16)). This LDR/PCR system is illustrated in Figure 15 of Exhibit 1 (Exhibit 1 at page 3 of 6). In particular, Figure 15 illustrates the quantification of gene amplifications and deletions using LDR/PCR as follows. A sample containing a plurality of DNA templates is denatured at 94°C. The LDR primers are added, allowed to anneal to complementary sequences on the DNA templates, and ligated with a thermostable ligase. A DNA polymerase is added and PCR is carried out to amplify all LDR products simultaneously using two common "zip code" primers. As shown in Figure 15, the zip code primers are labeled to allow for detection of the extension products following PCR. Detection is carried out either by separation and quantification of different sized labeled ligation products or by capture on the appropriate oligonucleotide or PNA addressable array (Exhibit 1 at page 5 of 6 (1st full para.)).

4.      We hereby declare that all statements made herein of our own knowledge are true; and further that these statements were made with the knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code and that any such willful false statements may jeopardize the validity of the application or any patent issued thereon.

_____, 2003        _____

                                 Francis Barany

_____, 2003        _____

                                 Matthew Lubin

_____, 2003        _____

                                 George Barany

_Novem. 6th_, 2003               _____

                                 Robert P. Hammer

C001268

AA

Form Approved Through REDACTED
OMB No. 0925-0001

| DEPARTMENT OF HEALTH AND HUMAN SERVICES | LEAVE BLANK FOR PHS USE ONLY. | | |
|---|---|---|---|
| **PROGRAM**   PUBLIC HEALTH SERVICE | Type | Activity | **Number** |
| **PROJECT    GRANT APPLICATION** | Review Group | | Formerly |
| F llow instructions carefully. Type in the unshaded areas only. Type density must be 10 c.p.i. | Council/Board *(Month, Year)* | | Date Received |

**1. TITLE OF PROJECT** (Do not exceed 56 typewriter spaces.)
NEW METHODS FOR CANCER DETECTION

**2a. RESPONSE TO SPECIFIC REQUEST FOR APPLICATIONS OR PROGRAM ANNOUNCEMENT**   ☒ NO   ☐ YES *(If "YES," state number*
Number:   Title: CONFIDENTIAL INFORMATION   *and title)*

**2b. TYPE OF GRANT PROGRAM** P01

| **3. PRINCIPAL INVESTIGATOR/PROGRAM DIRECTOR** | | |
|---|---|---|
| **3a. NAME** *(Last, first, middle)*  BARANY, FRANCIS | **3b. DEGREE(S)**  PH.D. | **3c. SOCIAL SECURITY NO.**  REDACTED |
| **3d. POSITION TITLE**  ASSOCIATE PROFESSOR | **3e. MAILING ADDRESS** *(Street, city, state, zip code)*  CORNELL UNIV. MEDICAL COLLEGE 1300 YORK AVENUE NEW YORK, NY 10021 | |
| **3f. DEPARTMENT, SERVICE, LABORATORY, OR EQUIVALENT**  MICROBIOLOGY | | |
| **3g. MAJOR SUBDIVISION**  CORNELL UNIV. MEDICAL COLLEGE | | |
| **3h. TELEPHONE AND FAX** *(Area code, number and extension)*  TEL: 212 746-6509  FAX: 212 746-8587 | **BITNET/INTERNET ADDRESS** BARANY@CUMC.CORNELL.EDU | |

**4. HUMAN SUBJECTS**   If "Yes,"
☒ NO   ☐ YES
4a. IRB approval no. or exemption no. or date
4b. Assurance of compliance no.

**5. VERTEBRATE ANIMALS**   If "Yes,"
☒ NO   ☐ YES
5a. IACUC approval date
5b. Animal welfare assurance no.

| **6. DATES OF ENTIRE PROPOSED PROJECT PERIOD** | | **7. COSTS REQUESTED FOR INITIAL BUDGET PERIOD** | | **8. COSTS REQUESTED FOR ENTIRE PROPOSED PROJECT PERIOD** | |
|---|---|---|---|---|---|
| From *(MMDDYY)*  REDACTED | Through *(MMDDYY)*  REDACTED | **7a. Direct Costs ($)**  $971,041 | **7b. Total Costs ($)**  $1,224,862 | **8a. Direct Costs ($)**  $5,295,869 | **8b. Total Costs ($)**  $6,995,293 |

**9. PERFORMANCE SITES** *(Organizations and addresses)*
CORNELL UNIV. MEDICAL COLLEGE
1300 YORK AVENUE
NEW YORK, NY 10021

**10. INVENTIONS AND PATENTS** *(Competing continuation application only)*
☐ NO   ☐ YES   If "YES,"   ☐ Previously reported   ☐ Not previously reported

**11. NAME OF APPLICANT ORGANIZATION**
CORNELL UNIVERSITY MEDICAL COLLEGE
ADDRESS 1300 YORK AVENUE
NEW YORK, NY 10021

**12. TYPE OF ORGANIZATION**
☐ Public: *Specify*   ☐ Federal   ☐ State   ☐ Local
☒ Private Nonprofit
☐ Forprofit *(General)*   ☐ Forprofit *(Small Business)*

**13. ENTITY IDENTIFICATION NUMBER**
1131623978A1
**Congressional District**
14

**14. BIOMEDICAL RESEARCH SUPPORT GRANT CREDIT**
Code 01   Identification SCHOOL OF MEDICINE

**15. NAME OF ADMINISTRATIVE OFFICIAL TO BE NOTIFIED IF AWARD IS MADE**
PHILIP V. GIUCA
TELEPHONE  212 746-6036
FAX  212 746-8745
TITLE  SENIOR ASSOCIATE DEAN
ADDRESS  CORNELL UNIV. MEDICAL COLLEGE
1300 YORK AVENUE
NEW YORK, NY 10021

**16. NAME OF OFFICIAL SIGNING FOR APPLICANT ORGANIZATION**
GREGORY W. SISKIND
TELEPHONE  212 746-6020
FAX  212 746-8745
TITLE  ASSOCIATE DEAN
ADDRESS  CORNELL UNIV. MEDICAL COLLEGE
1300 YORK AVENUE
NEW YORK, NY 10021

**BITNET/INTERNET ADDRESS** QMCUMC.MAIL.CORNELL.EDU

**BITNET/INTERNET ADDRESS** QMCUMC.MAIL.CORNELL.EDU

**17. PRINCIPAL INVESTIGATOR/PROGRAM DIRECTOR ASSURANCE:** I agree to accept responsibility for the scientific conduct of the project and to provide the required progress reports if a grant is awarded as a result of this application. Willful provision of false information is a criminal offense (U.S. Code, Title 18, Section 1001). I am aware that any false, fictitious, or fraudulent statement may, in addition to other remedies available to the Government, subject me to civil penalties under the Program Fraud Civil Remedies Act of REDACTED (45 CFR 79).
**SIGNATURE OF PERSON NAMED IN 3a.** *(In ink. "Per" signature not acceptable.)*
*Dr. F. Barany*
**DATE**
REDACTED

**18. CERTIFICATION AND ACCEPTANCE:** I certify that the statements herein are true and complete to the best of my knowledge, and accept the obligation to comply with Public Health Service terms and conditions if a grant is awarded as the result of this application. A willfully false certification is a criminal offense (U.S. Code, Title 18, Section 1001). I am aware that any false, fictitious, or fraudulent statement may, in addition to other remedies available to the Government, subject me...
**SIGNATURE OF PERSON NAMED IN 16.** *(In ink. "Per" signature not acceptable)*
**DATE**
REDACTED

Page 1 of 6

C001269

## REDACTED

**(ii) Development of a multiplex ligase detection reaction/polymerase chain reaction (LDR/PCR) system for detection of gene amplifications and deletions in tumor biopsies.** This study aims to develop a technology to investigate the amplification and deletion of several genes in a single assay. We have designed ligase detection primers for the following genes: SOD (on chromosome 21q), G6PD (on chromosome Xq), p53 tumor suppressor gene (on chromosome 17p), HER-2/neu (on chromosome 17q), and Int-2 (on chromosome 11q). Each set of LDR primers includes the same external "zip code" sequences, which will allow for proportional amplification of all five chromosome probes with a single pair of PCR primers. The method will be validated with genomic DNA samples from normal, and trisomy 21 human males and females. Subsequently, cell lines with known HER-2/neu and int-2 gene amplifications, and p53 deletions will be used to test the sensitivity of this technique. The assay will be extended to frozen and fixed breast tumor material. Initial studies will investigate the 100 to 200 tumors to determine the feasibility of large scale studies correlating multiple genetic alterations to the clinical/biological behavior of breast cancers.

We will use the Ligase Detection Reaction (LDR) in the first step of gene quantification to create artificial PCR templates (see Fig. 15). The LDR products will be in the same ratio as the genes from which they were derived, but will also have the same artificial PCR primer sequences (which we call "zip code" sequences) at their ends. Using only two PCR zip code primers, all of the LDR templates will be amplified together, maintaining proportionality. We will fluorescently label one of the zip code primers to allow quantification on a DNA sequencing apparatus. Because the LDR templates will include a restriction enzyme site at a unique position, restriction digestion of the PCR products will permit us to distinguish the products from different genes on the basis of their lengths. We will first test the technology by identifying the dosages of genes on chromosomes X and 21 in male, female and trisomy 21 DNA's. Investigations of deletion of p53, and amplification of HER-/neu and int-2 in breast tumors and cell lines will follow.

*(a) Design, synthesis and test of LDR/PCR oligonucleotides using known DNA samples.* Oligonucleotides will be synthesized to recognize exons in SOD (on chromosome 21q), G6PD (on chromosome Xq), p53 tumor suppressor gene (on chromosome 17p), HER-2/neu (on chromosome 17q), and Int-2 (on chromosome 11q). These oligonucleotide primers have been designed so their ligation products have unique internal sequences, but the overall length and G+C content are identical (see Fig. 16). To minimize differences in ligation rates, the exon specific region of each primer set was chosen to ligate the junction sequence of (A,T)C↓C(A,T). This junction sequence corresponds to either a proline residue (codon CCN) or on the noncoding strand opposite a tryptophan residue (TGG). This particular sequence was chosen since tryptophan and proline residues tend to be conserved, and less likely to be a site of polymorphism. In addition, each sequence contains a single *Hae*III or *Hin*P1I restriction site at slightly different positions. Adjacent to the internal gene specific sequences are "adjustment sequences" (white bars), which equalize product length at 96 bases and G+C content at 52%. The external sequences of all oligonucleotides will be the same and complimentary to a pair of "zip code" PCR primers that will amplify only ligated products and not human sequences. One of the zip code PCR primers will be fluorescently labeled, while the other will contain a biotin group.

PHS 398 (Rev. REDACTED

Number pages consecutively at the bottom throughout the application. Do *not*

Page

**275** uch as 3a, 3b.

**Pag  2 of 6**

C001270

Principal Investigator/Program Director *(Last, first, middle):*   BARANY, Francis



Fig. 15. Quantification of gene amplifications and deletions using the ligase detection reaction coupled to the polymerase chain reaction (LDR/PCR). Following denaturation, pairs of LDR primers anneal to their complementary templates and are ligated. Conditions will be optimized to obtain equal ligation efficiencies for all primer sets. Ligation with *Tth* ligase will be performed at 65°C well below the primers' designed $T_m$ values of 75°C. All LDR products will be amplified simultaneously with *Taq* polymerase using two common "zip code" primers, thus maintaining proportionality. One zip code primer contains a fluorescent group, and the other a biotin group. Products may then be captured with streptavidin coated magnetic beads, washed, and digested with *Hae*III and *Hin*P1I to release fluorescently labeled fragments of unique size. These products may be separated on an ABI 373A DNA sequencer, and their ratio will be used to determine the relative copies of genes present in the initial target sample.

C001271

Principal Investigator/Program Director (Last, first, middle): BARANY, Francis



Fig. 16. LDR primers for quantification of gene amplifications and deletions. Oligonucleotides have been designed to recognize exon 8 in the p53 tumor suppressor gene (on chromosome 17p), exon 3 of int-2 (on chromosome 11q), an internal exon in HER-2/neu (on chromosome 17q), exon 3 in SOD (on chromosome 21q), and exon 6 in G6PD (on chromosome Xq). Each LDR primer pair has the following features: (i) The left primer contains from 5' to 3' an 18 base sequence identical to the fluorescently labeled zip code primer (black bar), an "adjustment sequence" (white bar), and a gene-specific sequence of from 22 to 28 bases with a $T_m$ of 75°C (patterned bar). (ii) The right primer contains from 5' to 3' a gene-specific sequence of 20 to 25 bases with a $T_m$ of 75°C (patterned bar), a single $Hae$III or $Hin$PII restriction site at slightly different positions within the gene-specific sequence, an "adjustment sequence" (white bar), and an 18 base sequence complementary to the biotinylated zip code primer (black bar). (iii) The adjustment sequences (white bars) are designed such that the combined length of the two primers is exactly 96 bases, with 50 G+C bases and 46 A + T bases. The position of each unique restriction site generates a product which differs by at least 2 bases from the other products. (iv) The exon specific region of each primer set was chosen to ligate the junction sequence of (A,T)C↓C(A,T). This junction sequence corresponds to either a proline residue (codon CCN) or the complementary sequence of a tryptophan residue (TGG). These sequences were chosen to minimize differences in ligation rates and chance of a polymorphism at the ligation junction. Sequences of oligonucleotides are available upon request.

Ligation reactions will be carried out using test genomic DNA and the appropriate oligonucleotides (e.g. SOD and G6PD oligonucleotides for male, female, and trisomy 21 DNA's). Several ligation conditions will be tested to assure equal rates of ligation for each primer set. Ideally, ligations should go to completion, so initial ligations tested will be 10°C below the oligonucleotide $T_m$ value. The amount of ligation product may be proportionally increased by a few additional LDR cycles (1 to 5 cycles), but not so many as to have product inhibition of the ligation reaction. After ligation, $Taq$ polymerase with the zip code primers will be added, and PCR amplification will be performed. (We are aware that one LDR oligonucleotide may also serve as a primer and the other as a template for polymerase extension. Although products from those reactions may hybridize to generate a substrate for further PCR amplification, such products will not form in the absence of genomic DNA, and will be an insignificant percentage of the authentic LDR/PCR product.)

C001272

Products will be captured with streptavidin coated magnetic beads, washed of unreacted fluorescent primers, and released by digestion with *Hae*III and *Hin*P1I. This will yield fluorescently labeled fragments of different sizes which can be separated and quantified on an ABI 373A DNA sequencer. The ratios of products will be determined using the Genescan 672 software. Multiple reactions will allow us to calculate means and 95% confidence intervals. As controls, different ratios of individual PCR amplified products will be mixed and diluted for LDR/PCR. To test for equal PCR efficiencies among the LDR products, a solution will be prepared with the LDR products in known ratios. By PCR amplifying from this solution and quantifying the products at different cycles we will be able to see whether the product ratios remain the same. It may be necessary to take samples after fewer rounds of PCR amplification to avoid skewing of the product ratios as the PCR reaction plateaus.

The above protocol may be generalized to accommodate quantification of gene amplification or deletion at several dozen loci simultaneously, without the need for a conveniently placed restriction site. Following LDR ligation, the products are proportionally amplified using one unlabeled and one biotinylated zip code primer. Products will be captured with streptavidin coated magnetic beads, washed of unreacted primers, and the DNA made single stranded by washing the beads in base. Addition of a molar excess of fluorescent zip code primer and several gene specific adjacent primers (containing different size tails) which hybridize on the single stranded product allows for quantitative (90% or better) ligation in the presence of thermostable ligase. Unreacted primers are removed by washing, and the ligated products released in a small volume of base. The fluorescently labeled ligation products will be of different sizes which can be separated and quantified on an ABI 373A DNA sequencer. Alternatively, the gene specific adjacent primers will contain array specific zip codes, which will be captured by the appropriate oligonucleotide or PNA addressable array, and quantified on a Molecular Dynamics Fluorimager 575 (See Project 5 and Core B.)

The ability to simultaneously detect both small and large deletions has additional benefits for cancer research. By judiciously selecting genes from both the long and short arms of each chromosome, this LDR/PCR method could be used to generate a molecular karyotype. This could help identify additional loci associated with tumorogenesis. Once a broad chromosomal region is identified, the same LDR/PCR method could help develop a fine structure map of the region, analogous to the initial discovery of DCC [101].

In addition, small deletions or insertions of unpredictable size in tumor suppressor genes might be easily identified by synthesizing sets of LDR primers to cover every 6-10 bases in the coding region of the gene. (This will become more feasible as improvements in oligonucleotide synthesis instrumentation will allow for synthesis of dozens to hundreds of oligonucleotides at a time.) For example, in a literature survey, we identified 151 mutations in the APC gene of which 15 were insertions (9.9%), 52 were deletions (34.4%) and 84 were single base changes. All 67 insertions and deletions (44.3%) could be easily identified by using just 25 sets of LDR primers, and one set of zip code primers. The remaining single base changes could be identified by the standard PCR/LDR methods described in specific aim *(i)* above.

*(b) Sensitivity of quantification in mixed tumor/normal cell populations.* The detection of X chromosome gene dosage in male and female genomic DNA's is a model for the deletion of a single allele in cancer cells. The additional chromosome in trisomy 21 genomic DNA mimics a 50 percent gene amplification. The sensitivity of our technology can be determined by examining these model situations and by mixing male and female and trisomic and normal cells. Quantification of LDR/PCR products from multiple reaction tubes will allow us to determine gene dosage with 95% confidence limits based on the *t* test. We will need to determine the number of observations (samples) required to achieve the appropriate confidence limits for detecting a single allele deletion or 50 percent gene amplification in half of the cells in a tumor. Initial experiments will use male, female, normal, and trisomic cells as well as mixtures of these DNA's (e.g. trisomic DNA diluted with normal DNA) to test a wide range of possible gene ratios. These studies will be extended to detect gene amplifications and deletions in previously characterized breast tumor cell lines. Dilution of cultured breast tumor cells with normal cells will also help us establish the limits of the LDR/PCR method.

*(c) Detection of gene amplification or deletion in frozen and fixed tissue.* Our sample set of 100 to 200 breast tumors will be investigated for deletion of p53, and amplification of HER-2/neu and/or int-2, compared to control genes SOD and G6PD by simultaneously amplifying LDR products from all these sites. Fixed

Principal Investigator/Program Director *(Last, first, middle):* BARANY, Francis

tumor specimens corresponding to the frozen samples will be examined to develop the technology for use on formaldehyde-treated, paraffin-embedded specimens. Bone marrow aspirate samples corresponding to these primary tumors have been investigated for micrometastases by immunohistochemical techniques. Many of them have also been characterized for HER-2/neu amplification by southern blotting [125]. The results of our studies of HER-2/neu and int-2 amplification in this tumor set will be correlated with the previously explored laboratory parameters and clinical prognostic parameters (e.g. primary tumor size, lymph node status and estrogen receptor status). We recognize that our p53 LDR primers have their junction in exon 8 at codon 278, and thus may fail to ligate when used on tumors containing a mutation at or near this codon. Such a result would be falsely interpreted as a p53 deletion instead of just a single base mutation. However, the interpretation of this data, namely, that the sample had lost a *functional* p53 gene remains the same.

**REDACTED**

PHS 398 (Rev. REDACTED
Number pages consecutively at the bottom throughout the application. Do not                    Page                  279  such as 3a, 3b.                                        **Page 6 of 6**

C001274

# EXHIBIT 3

U.S. DEPARTMENT OF COMMERCE
U.S. Patent and Trademark Office
Washington, DC  20231

**MANUAL OF PATENT EXAMINING PROCEDURE**
**Eighth Edition**

**Instructions Regarding Revision No. 1**

This revision incorporates the changes necessitated by the Intellectual Property and High Technology Technical Amendments Act of 2002 (Pub. L. 107-273, 116 Stat. 1758 (2002)) and the following final rules:

(1) "Legal Processes," which became effective on September 12, 2001;

(2) "Requirements for Claiming the Benefit of Prior-Filed Applications Under Eighteen-Month Publication of Patent Applications," which became effective on December 28, 2001;

(3) "Revision of the Time Limit for National Stage Commencement in the United States for Patent Cooperation Treaty Applications," which became effective on April 1, 2002;

(4) "Amendment of Rule Regarding Filing of Trademark Correspondence via 'Express Mail'," which became effective on June 24, 2002;

(5) "Correspondence With the United States Patent and Trademark Office," which became effective on December 30, 2002; and

(6) "Revision of Patent and Trademark Fess for Fiscal Year 2003," which became effective on January 1, 2003.

It is noted that the discussion of 35 U.S.C. 102(e) in Chapters 700, 1800 and 2100 has been revised to incorporate 35 U.S.C. 102(e), as amended by the Intellectual Property and High Technology Technical Amendments Act of 2002.  However, the discussion of 35 U.S.C. 102(e) in the remaining Chapters of the Manual (i.e., Chapters 800, 900, 1500 and 2200) has not yet been updated to incorporate revised 35 U.S.C. 102(e).  These remaining Chapters will be updated in the next revision of the Manual.  When using these Chapters where 35 U.S.C. 102(e) has not yet been updated, users of the Manual should refer to Chapters 700, 1800 and 2100 for the revised 35 U.S.C. 102(e) as amended by the Intellectual Property and High Technology Technical Amendments Act of 2002.

This revision consists of replacement pages for the **Title Page** in the front of the Manual, **entire Chapters 200, 700, 1800, and 2100, Appendices II – List of Decisions Cited, L – Patent Laws, R – Patent Rules, T – Patent Cooperation Treaty, and AI – Administrative Instructions Under the PCT, and entire Index**.

Pages which have been printed in this revision are labeled as "**Rev. 1**" on the bottom.  Sections of the Manual which have been changed by this revision are indicated by "**[R-1]**" after the section title.

Additions to the text of the Manual are indicated by arrows (><) inserted in the text.  Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted.  The use of three or five asterisks in the body of the laws and rules indicates a portion of the law or rule which was not reproduced.

Magdalen Y. C. Greenlief, Editor
Manual of Patent Examining Procedure

| Remove Pages | Insert Pages |
|---|---|
| Title Page | Title Page |
| 200-1 through 200-102 | 200-1 through 200-108 |
| 700-1 through 700-256 | 700-1 through 700-276 |
| 1800-1 through 1800-158 | 1800-1 through 1800-168 |
| 2100-1 through 2100-220 | 2100-1 through 2100-226 |
| | |
| A-7 through A-46 | A-7 through A-48 |
| L-1 through L-84 | L-1 through L-84 |
| R-1 through R-320 | R-1 through R-322 |
| T-1 through T-124 | T-1 through T-126 |
| AI-1 through AI-96 | AI-1 through AI-112 |
| I-1 through I-118 | I-1 through I-94 |

Rev. 1, Feb. 2003

<u>Particular attention is called to the changes in the following sections:</u>

**CHAPTER 200:**

201           Revised to add the definition of a "national" application as a U.S. application which was either filed in the Office under 35 U.S.C. 111, or which entered the national stage from an international application after compliance with 35 U.S.C. 371.

201.03        Revised to delete the requirement that second attempts to correct inventorship be decided by the TC Director.  Also revised to clarify that an error in inventorship of a provisional application would not require correction so long as a nonprovisional application naming the correct inventorship would contain an overlap of at least one inventor with the provisional application.  Form paragraphs have been revised.

201.06        The title of this section has been changed to read, "Divisional Application."

201.06(c)     Revised to reflect deletion of 37 CFR 1.494 and amendments to 37 CFR 1.495.  Also revised to indicate that any application that will be published pursuant to 35 U.S.C. 122(b) (pre-grant publication), including any continuation or divisional application, should be filed with the specification, claims and drawings that applicant would like to have published because changes made by a preliminary amendment will generally not be reflected in the patent application publication, even if the preliminary amendment is referred to in the oath or declaration.  Also revised to clarify that when a benefit claim to a prior application is added after the filing date, the prior application cannot be incorporated by reference since this would add new matter.

201.06(d)     Revised to reflect amendments to 37 CFR 1.78.  Form paragraphs 2.36 and 2.37 have been deleted.

201.07        Revised to indicate that a continuation application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 120 or 365(c).

201.08        Revised to indicate that a continuation-in-part application must claim the benefit of the prior nonprovisional application under 35 U.S.C. 120 or 365(c).

201.11        The title of this section has been changed to read, "Continuity Between Applications: The Benefit of an Earlier Filing Date."  Revised to reflect amendments to 37 CFR 1.78.  Added a new subsection to clarify that a

         Rev. 1, Feb. 2003

claim in an application is entitled to the benefit of the filing date of an earlier provisional or nonprovisional application only if the earlier application provides an enabling disclosure of the subject matter of the claim under 35 U.S.C. 112, first paragraph.  New subsections have been added to address the requirements of a specific reference to a prior application for which benefit is claimed.  If benefit is claimed under 35 U.S.C. 120, 121 or 365(c), the specific reference to a prior nonprovisional application(s) must set forth the relationship (i.e., "continuation," "divisional" or "continuation-in-part") between each application except when the reference is to a prior application of a continued prosecution application having the same application number.  Form paragraphs have been revised.

201.11(a)      Revised to reflect deletion of 37 CFR 1.494 and amendments to 37 CFR 1.495.

201.13         Revised to reflect amendments to 37 CFR 1.55.  Revised to update the list of countries with respect to which the right of priority under 35 U.S.C. 119(a)-(d) has been recognized.

201.13(b)      Revised to reflect that 37 CFR 1.78(a)(2) no longer requires that the first sentence of a specification claiming the benefit of an earlier-filed international application indicate whether the international application was published in English.

201.14(a)      Revised to reflect amendments to 37 CFR 1.55.  Form paragraph 2.21.01 has been revised.

201.14(c)      Form paragraphs have been revised.

202.01         Revised to reflect amendments to 37 CFR 1.78.


**CHAPTER 700:**

704.14(a)      Form paragraphs have been revised.

706.02         Revised to reflect amendment to 35 U.S.C. 102(e) and added a new subsection to address reliance upon abstracts and foreign language documents in support of a rejection.

706.02(a)      The discussion of 35 U.S.C. 102(e) has been revised to reflect 35 U.S.C. 102(e) as amended by the Intellectual Property and High Technology Technical Amendments Act of 2002 (Pub. L. 107-273, 116 Stat. 1758 (2002)) and to indicate that revised 35 U.S.C. 102(e) applies in the

examination of all applications, whenever filed, and the reexamination of, or other proceedings to contest, all patents.  The filing date of the application being examined is no longer relevant in determining what version of 35 U.S.C. 102(e) to apply in determining the patentability of that application, or the patent resulting from that application.

706.02(b)      Revised to reflect amendments to 37 CFR 1.55 and 1.78.  Revised item (C) regarding how to overcome a rejection based on 35 U.S.C. 102(a) to be consistent with item (D) regarding how to overcome a rejection based on 35 U.S.C. 102(e).

706.02(f)      The material that was in this section has been moved to MPEP § 706.02(f)(2).  MPEP § 706.02(f) now addresses rejection under 35 U.S.C. 102(e) and reflects amendment to 35 U.S.C. 102(e).

706.02(f)(1)   Added new section to set forth the examination guidelines for applying references under 35 U.S.C. 102(e).

706.02(f)(2)   Material from former MPEP § 706.02(f) has been moved to this new section.  Form paragraphs have been revised.

706.02(i)      Form paragraphs have been revised.

706.02(k)      Revised to indicate that the amendment to 35 U.S.C. 102(e) in the Intellectual Property and High Technology Technical Amendments Act of 2002 did not affect the exclusion under 35 U.S.C. 103(c) as amended on November 29, 1999.

706.02(l)(1)   Revised to indicate that the amendment to 35 U.S.C. 102(e) in the Intellectual Property and High Technology Technical Amendments Act of 2002 did not affect the exclusion under 35 U.S.C. 103(c) as amended on November 29, 1999.

706.02(l)(3)   Revised to add a reference to MPEP § 706.07(a) as to when it is proper to make an office action final.

706.02(m)      Form paragraphs have been revised.

706.03(a)      Form paragraph has been revised.

706.03(c)      Form paragraphs have been revised.

706.03(d)      Form paragraphs have been revised.

706.04         Added reference to recent court decision.

Rev. 1, Feb. 2003

706.07   Form paragraph has been revised.

706.07(a)  Revised to indicate that a second or any subsequent action on the merits in any application or patent involved in reexamination proceedings may not be made final if it contains a new ground of rejection necessitated by the amendments to 35 U.S.C. 102(e) by the Intellectual Property and High Technology Technical Amendments Act of 2002, unless the new ground of rejection was necessitated by an amendment to the claims or as a result of an IDS submitted under 37 CFR 1.97(c) with the fee under 37 CFR 1.17(p).

706.07(b)  Revised to indicate that a first Office action in a continuing or substitute application may not be made final if it contains a new ground of rejection necessitated by the amendments to 35 U.S.C. 102(e) by the Intellectual Property and High Technology Technical Amendments Act of 2002.

706.07(f)  Revised to indicate that where the last day of the 2 months from the date of the final rejection falls on a Saturday, Sunday or a Federal holiday within the District of Columbia and a reply is filed on the next succeeding business day pursuant to 37 CFR 1.7(a), the reply is deemed to have been filed within the 2 months period.

706.07(h)  Revised to correct the reference to 35 U.S.C. 132.  Form paragraph 7.42.13 has been revised.  Item 16 of the comparison chart has been revised to delete the reference to 35 U.S.C. 102(e).

707.05   Revised to add a reference to MPEP § 707.05(e) regarding data used in citing references.

707.05(b)  Revised to indicate that MPEP § 609 sets forth guidelines for applicants to submit prior art to the Office.

707.05(d)  Revised to correct the spelling of "initialed."

707.05(e)  Revised to indicate that Defensive Publications and SIRs should be cited under the section "U.S. Patent Documents" on the 892 form.  Also revised to indicate that abstracts, abbreviatures, Alien Property Custodian publications, withdrawn U.S. patents, withdrawn U.S. patent application publications and other non-patent documents should be cited under the section "Non-Patent Documents" on the 892 form.  Examples as to how withdrawn U.S. patents and withdrawn U.S. patent application publications should be cited have been added.

Rev. 1, Feb. 2003

707.07(f)   Revised to indicate that in order to provide a complete application file history and to enhance the clarity of the prosecution history record, the examiner must provide clear explanations of all actions taken by the examiner during prosecution of the application.  That is, if applicant's arguments are persuasive and upon reconsideration, the examiner determines that the previous rejection should be withdrawn, the examiner must provide in the next Office communication the reasons why the previous rejection is withdrawn.  New form paragraphs 7.38.01 and 7.38.02 have been added.

708.02   Subsection VI. has been revised to add hydrogen fuel technologies as an example of inventions which materially contribute to the discovery or development of energy resources.

709   Revised to reflect amendment to 37 CFR 1.103.  The last sentence of subsection B. regarding when the period of suspension will start for a CPA and RCE has been deleted.  Form paragraph 7.56.01 has been added to subsection B. under the heading "Improper Request for Suspension."  The discussion of suspension of action at the initiative of the Office has been revised.

709.01   Revised to add a reference to MPEP § 2315.01.

711.02   Form paragraph has been revised.

711.03(c)   The discussion regarding terminal disclaimers in subsection G. has been revised to indicate that a terminal disclaimer is also required for a utility or plant application filed on or after June 8, 1995, but before May 29, 2000, where the application became abandoned during appeal, interference, or while under a secrecy order.

711.04(a)   Revised to correct the spelling of "Interferences."

713.01   An "Applicant Initiated Interview Request" form (PTOL-413A) has been added for use by the applicant where the interview is initiated by the applicant.  The form should be filled out by the applicant and submitted to the examiner prior to the interview in order to permit the examiner to prepare in advance for the interview and to focus on the issues to be discussed.

713.02   Revised to correct the spelling of "counselor."

713.04   The Interview Summary form PTOL 413 has been revised to delete the box located at the bottom of the form so that examiners will no longer be permitted to check the box to inform applicant that it was not necessary for

the applicant to supplement the form by submitting a separate record of the substance of the interview.  Effective immediately, pursuant to 37 CFR 1.133(b), it is the responsibility of the applicant or the attorney or agent to make the substance of an interview of record in the application file except where the interview was initiated by the examiner and the examiner indicated on the "Examiner Initiated Interview Summary" form, PTOL-413B, that the examiner will provide a written summary.  "Examiner Initiated Interview Summary" form, PTOL-413B has been added.

714           The revised manner of making amendments which became effective on January 31, 2003 has been added.  All applicants including applicants participating in the Office's electronic file wrapper prototype may submit amendments in reply to Office actions using the revised format.  The provisions of 37 CFR 1.121(a), (b), (c), and (d) are waived for amendments to the claims, specification, and drawings in all applications where the amendments comply with the revised amendment format.

714.13        Form paragraphs have been revised.

714.16(d)     Form paragraph has been revised.

715           Revised to indicate that if a country joined the WTO after January 1, 1996, the effective date for proving inventive activity in that country for the purpose of 35 U.S.C. 104 and 37 CFR 1.131 is the date the country becomes a member of WTO.  A reference to MPEP § 201.13 has been added to show the list of WTO member countries.  Also revised to indicate that U.S. patents, U.S. patent application publications and certain international application publications are available as prior art under 35 U.S.C. 102(e).

716.02(d)     Revised to add discussion of recent Federal Circuit decision.

719.02        Revised to add discussion as to how errors in any of the data originally entered on the file wrapper should be corrected for different series applications.

719.05        Revised to correct the spelling of "additional" and to change "SEARCHED NOTES" to "SEARCH NOTES."


**CHAPTER 1800:**

1801          Revised to indicate that PCT Article 22(1) was amended, effective April 1, 2002, to specify that a copy of the international application, a translation thereof (as prescribed), and the national fee are due to the designated

Office not later than at the expiration of 30 months from the priority date. Also revised to indicate that in those countries whose national laws are not compatible with the 30 month period now set forth in PCT Article 22(1), the filing of a demand for an international preliminary examination electing such countries within 19 months from the priority date will result in an extension of the period for entering the national stage to 30 months from the priority date.  Revised to indicate that a listing of all national and regional offices, and the corresponding time limits for entering the national stage after PCT Chapter I and PCT Chapter II, may be found on WIPO's web site at: http://www.wipo.int/pct/en/index.html.  Revised to indicate that the European Patent Office is no longer competent to act as an International Searching Authority for certain international applications filed by nationals or residents of the United States.

1817        Revised to indicate that Romania, Hungary, Bulgaria, Czech Republic, Slovakia, Slovenia, and Estonia are members of the European Patent Convention (EPC) regional patent system.  Also revised to add Tunisia, Saint Vincent and the Grenadines, Seychelles, and Nicaragua as PCT Member States.  Revised to add Sierra Leone, United Republic of Tanzania, Mozambique, and Zambia as members of the African Regional Industrial Property Organization and to indicate that Swaziland can only be designated for the purposes of an ARIPO patent and not for the purposes of a national patent, and that all other PCT Contracting States which are also party to the Harare Protocol can be designated either for a national or an ARIPO patent, or both a national and an ARIPO patent. Revised to indicate that all PCT Contracting States which are also party to the Eurasian Patent Convention can be designated either for a national or a Eurasian patent, or both a national and a Eurasian patent. Note, however, that it is not possible to designate only some of these States for a Eurasian patent and that any designation of one or more States for a Eurasian patent will be treated as a designation of all the States which are party to both the Convention and the PCT for a Eurasian patent.

1823.02     Revised to indicate that the European Patent Office (EPO) no longer searches or examines international applications filed by a resident or national of the United States if one or more claims relates to the field of biotechnology.  Also revised to include guidelines for submitting tables related to sequence listings on CD rather than on paper.

1824        Revised to indicate that paragraph numbers (e.g., paragraph numbers complying with 37 CFR 1.52(b)(6)) are acceptable provided they are not placed in the margins.

| 1828 | Revised to indicate that a notice correcting or adding a priority claim may in any event be submitted until the expiration of 4 months from the international filing date. |
|---|---|
| 1840 | Revised to indicate the USPTO, as an International Searching Authority, has agreed to conduct international searches and prepare international search reports for the Philippines and Saint Lucia.  Also revised to indicate that for international applications filed by residents and nationals of the U.S., the European Patent Office is not competent to perform the international search if one or more claims relates to the fields of biotechnology or business methods.  Revised to indicate the EPO will not search any international application to the extent that it considers that the international application relates to subject matter set forth in PCT Rule 39.1. |
| 1840.01 | Revised to include content of the notice from the European Patent Office dated November 26, 2001 limiting the EPO's competence as a PCT International Searching Authority (ISA) for international applications containing one or more claims relating to the field of biotechnology or the field of business methods.  Also revised to indicate how international applications containing claims relating to the field of biotechnology or the field of business methods will be handled by the RO/US and ISA/EP.  Revised to indicate that the international search fee must be paid to the receiving Office within one month from the time of filing the international application. |
| 1842 | Revised to include a new diagram showing the basic flow under the PCT and to include a discussion of the diagram and time limits under the PCT. |
| 1850 | Revised to indicate that Form PCT/ISA/206 may be used to invite the applicant to pay additional search fees.  Also revised to indicate that Form PCT/ISA/206 must be signed by an examiner with at least partial signatory authority.  Revised to indicate that USPTO/299 is to be used to make a record of a telephonic holding of lack of unity by the examiner under Chapter I of the PCT. |
| 1857 | Updated to include revised 35 U.S.C. 374.  Also revised to include a discussion of the publication of a sequence listing and/or tables filed in electronic form. |
| 1857.01 | Revised in view of amendments made to 35 U.S.C. 102(e) by the Intellectual Property and High Technology Technical Amendments Act of 2002 (Pub. L. 107-273, 116 Stat. 1758 (2002)). |

Rev. 1, Feb. 2003

| 1865 | Revised to include location addresses and mailing addresses for use when filing a demand in the European Patent Office or in the United States Patent and Trademark Office.  Also revised to indicate that the IPEA/US will serve as International Preliminary Examining Authority for residents or nationals of the Philippines and Saint Lucia if the U.S. was the International Searching Authority. |
|---|---|
| 1865.01 | New section added to address the European Patent Office as an International Preliminary Examination Authority.  The European Patent Office is not a competent International Preliminary Examination Authority in respect of any international application filed by a national or resident of the United States of America with the USPTO or the IB as receiving Office where the corresponding demand is filed with the EPO on or after March 1, 2002 and the international application contains one or more claims relating to the field of biotechnology, the field of business methods, or the field of telecommunication. |
| 1873 | Revised to indicate that later elections, if filed within 19 months of the priority date, have the effect of delaying the national stage until 30 months after the priority date in those additional elected States in which the 30 month time limit under PCT Article 22(1) is not compatible with their national law. |
| 1878 | New form paragraph 18.04.01 is to be used to indicate that claims meet the industrial applicability standard set out in PCT Article 33(4).  Form paragraph 18.04 has been modified to no longer address industrial applicability. |
| 1893.01(a) | Revised in view of the amendment to PCT Article 22(1) indicating that a copy of the international application, a translation thereof (as prescribed), and the national fee are due to the designated Office not later than at the expiration of 30 months from the priority date. |
| 1893.01(a)(1) | Revised in view of the amendment to PCT Article 22(1) indicating that a copy of the international application, a translation thereof (as prescribed), and the national fee are due to the designated Office not later than at the expiration of 30 months from the priority date. |
| 1893.01(a)(2) | Revised in view of the amendment to PCT Article 22(1) indicating that a copy of the international application, a translation thereof (as prescribed), and the national fee are due to the designated Office not later than at the expiration of 30 months from the priority date. |
| 1893.01(a)(3) | New section added to include the subject matter deleted from MPEP § 1893.01(b)(2). |

Rev. 1, Feb. 2003

1893.01(b)      Deleted.  Content moved to MPEP § 1893.01(a).

1893.01(b)(1)  Deleted.  Content moved to MPEP § 1893.01(a)(1).

1893.01(b)(2)  Deleted.  Content moved to new MPEP 1893.01(a)(3).

1893.01(c)      Revised to indicate that applications will not be held abandoned if an authorization to charge fees under 37 CFR 1.16 has been provided instead of an authorization to charge fees under 37 CFR 1.492.  The Office amended 37 CFR 1.25(b), effective November 7, 2000, so that an authorization to charge fees under 37 CFR 1.16 in an international application entering the national stage under 35 U.S.C. 371 is now treated as an authorization to charge fees under 37 CFR 1.492.

1893.01(d)      Revised to indicate that the translation must be a translation of the international application as filed or with any changes which have been properly accepted under PCT Rule 26 or any rectifications which have been properly accepted under PCT Rule 91.  Revised to indicate that the time period for responding to a Notification of Missing Requirements is 32 months from the priority date or 2 months from the date of the notice, whichever expires later.  The time period may be extended for up to five additional months as provided in 37 CFR 1.136(a).

1893.01(e)      Revised in view of the amendment to PCT Article 22(1) indicating that a copy of the international application, a translation thereof (as prescribed), and the national fee are due to the designated Office not later than at the expiration of 30 months from the priority date.  Also revised to indicate that the time period for responding to a Notification of Missing Requirements is 32 months from the priority date or 2 months from the date of the notice, whichever expires later.  The time period may be extended for up to five additional months as provided in 37 CFR 1.136(a).

1893.02         Revised in view of the amendment to PCT Article 22(1) indicating that a copy of the international application, a translation thereof (as prescribed), and the national fee are due to the designated Office not later than at the expiration of 30 months from the priority date.

1893.03(a)      Revised in view of the amendment to PCT Article 22(1) indicating that a copy of the international application, a translation thereof (as prescribed), and the national fee are due to the designated Office not later than at the expiration of 30 months from the priority date.

1893.03(b)      Corrected for consistency with the bibliographic data sheet reproduced in the MPEP.  Also revised to indicate that effective February 14, 2003, the

Rev. 1, Feb. 2003

"Application Filing Date" field in PALM and PAIR was relabeled "Filing or 371(c) Date."  Revised to list three exceptions to the general rule that the filing date of a national stage application is the PCT international filing date.

1893.03(c) Revised to indicate the conditions for according benefit under 35 U.S.C. 119(e) are similar in national stage applications and in applications filed under 35 U.S.C. 111(a), and that the conditions are described in MPEP § 201.11.  Also revised in view of amendments to 37 CFR 1.78.  In an application that claims the benefit of an international application, 37 CFR 1.78(a)(2) no longer requires the first sentence of the specification to include an indication of whether the international application was published under PCT Article 21(2) in English.  Under 37 CFR 1.78(a)(2)(ii), the required reference to the earlier filed application must be submitted within the later of four months from the date on which the national stage commenced under 35 U.S.C. 371(b) or (f) in the later-filed international application or sixteen months from the filing date of the prior-filed application.  If an application claims the benefit of a prior-filed provisional application that was filed in a language other than English, an English-language translation of the prior-filed provisional application and a statement that the translation is accurate must be filed in the provisional application or in the later-filed national stage application.  See 37 CFR 1.78(a)(5)(iv).

1895 Revised because 37 CFR 1.78(a)(2) no longer requires the first sentence of the specification to include an indication of whether the international application was published under PCT Article 21(2) in English.  Also revised to indicate what evidence should be provided to prove an international application was copending with a U.S. national application.  Revised to indicate that 37 CFR 1.78(a)(2)(i) requires the appropriate reference under 35 U.S.C. 120 to identify the parent application by application number (consisting of the series code and serial number) or international application number and international filing date.  Revised to indicate that 37 CFR 1.78(a)(5)(i) requires the appropriate reference under 35 U.S.C. 119(e) to identify the provisional application by provisional application number (consisting of series code and serial number).

1895.01 Revised in view of amendments made to 35 U.S.C. 102(e) by the Intellectual Property and High Technology Technical Amendments Act of 2002 (Pub. L. 107-273, 116 Stat. 1758 (2002)).  Also revised to indicate that if the priority claim to an earlier international application is made only under 35 U.S.C. 119(a)-(d) and 365(a), and not under 35 U.S.C. 120 and 365(c), the priority claim is not taken into account when determining the term of the patent.  See 35 U.S.C. 154(a)(3) and MPEP § 2701.

  Rev. 1, Feb. 2003

1896             Revised in view of amendments made to 35 U.S.C. 102(e) by the
                Intellectual Property and High Technology Technical Amendments Act of
                2002 (Pub. L. 107-273, 116 Stat. 1758 (2002)).

## CHAPTER 2100:

2105            Added discussion of a recent Supreme Court decision.

2107.01         Revised to emphasize that the cited case law relating to "incredible" utility
                is fact specific and should not be applied as a *per se* rule.

2111            Added discussion of a recent Federal Circuit decision.

2111.01         Revised to add discussion of recent Federal Circuit decisions.  Also
                revised to clarify that while applicant may be his or her own lexicographer,
                any special meaning assigned to a term must be clear from the
                specification.

2111.02         Section title revised to read "Effect of Preamble."  Section revised to
                indicate there is no litmus test defining when a preamble limits the scope
                of a claim; the determination must be made in light of the facts of each
                case.  Also revised to add discussion of recent Federal Circuit decisions.

2113            Revised to indicate that the structure implied by process steps should be
                considered when assessing patentability of product-by-process claims.

2114            Revised to add discussion of additional case law.

2131            Revised to reflect amendments to 35 U.S.C. 102(e).  Added discussion of
                a recent Federal Circuit decision.

2133.03(b)      Added discussion of a Supreme Court decision.  Revised to add discussion
                of recent Federal Circuit decisions.  Revised for consistency with recent
                Federal Circuit decisions explaining that traditional principles of contract
                law determine whether a commercial offer for sale has been made.

2133.03(c)      Added paragraph to address the question of when a process is placed "on
                sale."

2133.03(e)      Revised to add discussion of recent Federal Circuit decisions.

2133.03(e)(1)   Revised to cross-reference MPEP § 2133.03(e)(4) for factors indicative of
                experimental purpose.

Rev. 1, Feb. 2003

2133.03(e)(4)   Revised to add discussion of recent Federal Circuit decisions listing factors for determining whether a claimed invention was the subject of a commercial offer for sale primarily for the purposes of experimentation.

2136   Revised to reflect amendments to 35 U.S.C. 102(e).  The filing date of the application being examined is no longer relevant in determining which version of 35 U.S.C. 102(e) to apply.  The prior art date of a reference under 35 U.S.C. 102(e) may be the international filing date if the international filing date was on or after November 29, 2000, the international application designated the United States, and the international application was published by the World Intellectual Property Organization (WIPO) under the Patent Cooperation Treaty (PCT) Article 21(2) in the English language.  Added a new paragraph to indicate that a Statutory Invention Registration (SIR) is usable as a reference as of its filing date under 35 U.S.C. 102(e).

2136.01   Revised to indicate that a provisional 35 U.S.C. 102(e) rejection may be made if the earlier filed copending U.S. application has been published as redacted (37 CFR 1.217) and the subject matter relied upon in the rejection is not supported in the redacted publication of the patent application.  Also revised to indicate that the recent changes to 35 U.S.C. 102(e) did not affect 35 U.S.C. 103(c).

2136.02   Revised to reflect amendments to 35 U.S.C. 102(e).

2136.03   Revised to reflect amendments to 35 U.S.C. 102(e). Revised to indicate that the filing dates of foreign applications which have been published as U.S. or WIPO application publications or patented in the U.S., including international filing dates claimed as foreign priority dates under 35 U.S.C. 365(a), may not be used as 35 U.S.C. 102(e) dates for prior art purposes. Revised to indicate procedures for determining the 35 U.S.C. 102(e) date of a reference.

2138.04   Added discussion of recent Federal Circuit decisions.

2138.06   Added discussion of recent Federal Circuit decisions.

2141.03   Added discussion of a recent Federal Circuit decision.

2143.01   Added discussion of a recent Federal Circuit decision.

2144.03   Revised procedures for relying on common knowledge or taking official notice in light of recent Federal Circuit decisions.

2144.05   Revised to add discussion of recent Federal Circuit decisions.

Rev. 1, Feb. 2003

| | |
|---|---|
| 2163 | Revised to add discussion of recent Federal Circuit decisions. |
| 2163.07 | Revised to indicate that applicant may rely on an originally filed non-English language U.S. application to support correction of an error in the English translation thereof submitted pursuant to 37 CFR 1.52(d). |
| 2164.08 | Added discussion of a recent Federal Circuit decision. |
| 2172.01 | Revised to add discussion of decisions by the Board of Patent Appeals and Interferences. |
| 2173.02 | Revised to add discussion of a recent Supreme Court decision and other case law.  Revised to indicate that when making a rejection under 35 U.S.C. 112, second paragraph for indefiniteness, the examiner should include an analysis as to why the claim is "vague and indefinite." |
| 2173.05(a) | Revised to add discussion of a recent Federal Circuit decision.  Where applicant intends to use a term contrary to its ordinary meaning, the written description must clearly redefine the term. |
| 2173.05(e) | Added discussion of a recent Federal Circuit decision. |
| 2173.05(k) | Revised to indicate that claims should not be rejected on the ground of "aggregation." |
| 2173.05(n) | Revised to indicate that rejections based on undue multiplicity should be applied judiciously and should be rare, but may be appropriate when applicant presents an unreasonable number of claims which, in view of the nature and scope of applicant's invention, are repetitious and multiplied, the net result of which is to confuse rather than clarify. |
| 2181 | Revised to add discussion of recent Federal Circuit decisions.  Added new paragraphs addressing the requirements of 35 U.S.C. 112, first and second paragraph with respect to recitations under 35 U.S.C. 112, sixth paragraph ("means for" or "step for" recitations). |
| 2190 | This section has been added to address rejections under the doctrine of prosecution history laches. |

Rev. 1, Feb. 2003

# Manual of

# PATENT

# EXAMINING

# PROCEDURE

Original Eighth Edition, August 2001
Latest Revision February 2003

 

## U.S. DEPARTMENT OF COMMERCE
United States Patent and Trademark Office

Rev. 1, Feb. 2003

The U.S. Patent and Trademark Office does not handle the sale of the Manual, distribution of notices and revisions, or change of address of those on the subscription list. Correspondence relating to existing subscriptions should be sent to the Superintendent of Documents at the following address:

Superintendent of Documents                    Telephone:    202-512-2267
Mail List Section
Washington, DC 20402

Inquiries relating to purchasing the Manual should be directed to:

Superintendent of Documents                    Telephone:    202-512-1800
United States Government Printing Office
Washington, DC 20402

Orders for reproduced copies of individual replacement pages or of previous revisions of the Manual should be sent to the following address:

Commissioner of Patents and Trademarks         Telephone:    1-800-972-6382 or 703-308-9726
Attention: Certification Branch
Washington, DC 20231

Previous editions and revisions of the Manual are available on microfilm in the Patent Search Room.
The Manual is available on CD-ROM and on diskette from:

U.S. Patent and Trademark Office               Telephone:    703-306-2600
Office of Electronic Information Products and Services
Washington, DC 20231

Employees of the U.S. Patent and Trademark Office should direct their requests for the Manual, replacement pages, notices, and revisions to the Patent Academy.                    Telephone:    703-308-9660

Pursuant to the Patent and Trademark Office Efficiency Act (PTOEA) (Pub. L. 106-113, 113 Stat. 1501A-572), the head of the United States Patent and Trademark Office (USPTO) is the "Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office." The Director is assisted by the "Deputy Under Secretary of Commerce for Intellectual Property and Deputy Director of the United States Patent and Trademark Office." The patent operations of the USPTO are now headed by the "Commissioner for Patents." The trademark operations of the USPTO are now headed by the "Commissioner for Trademarks." Under section 4741(b) of the PTOEA, any reference to the Commissioner of Patents and Trademarks, the Assistant Commissioner for Patents, or the Assistant Commissioner for Trademarks is deemed to refer to the Director, the Commissioner for Patents, or the Commissioner for Trademarks, respectively. See "Reestablishment of the Patent and Trademark Office as the United States Patent and Trademark Office" published in the *Federal Register* at 65 FR 17858 (Apr. 5, 2000), and in the *Official Gazette of the United States Patent and Trademark Office* at 1234 O.G. 41 (May 9, 2000).

Additions to the text of the Manual are indicated by arrows (><) inserted in the text.   Deletions are indicated by a single asterisk (*) where a single word was deleted and by two asterisks (**) where more than one word was deleted. The use of three or five asterisks in the body of the laws, rules, treaties, and administrative instructions indicates a portion of the law, rule, treaty, or administrative instruction which was not reproduced.

First Edition, November 1949
Second Edition, November 1953
Third Edition, November 1961
Fourth Edition, June 1979
Fifth Edition, August 1983
Sixth Edition, January 1995
Seventh Edition, July 1998
Eighth Edition, August 2001
   Revision 1, February 2003

will be submitted to the Commissioner and will be returned by the Commissioner's direct order. Complaints against examiners and other employees must be made in correspondence separate from other papers.

All papers received in the U.S. Patent and Trademark Office should be briefly reviewed by the technical support staff, before entry, sufficiently to determine whether any discourteous remarks appear therein.

If the attorney or agent is discourteous in the remarks or arguments in his or her amendment, either the discourtesy should be entirely ignored or the paper submitted to the Technology Center (TC) Director with a view toward it being returned. See MPEP § 1003. If the TC Director determines that the remarks are in violation of 37 CFR 1.3, the TC Director will return the paper.

# 715    Swearing Back of Reference — Affidavit or Declaration Under 37 CFR 1.131 [R-1]

*37 CFR 1.131.  Affidavit or declaration of prior invention.*

(a)  When any claim of an application or a patent under reexamination is rejected, the inventor of the subject matter of the rejected claim, the owner of the patent under reexamination, or the party qualified under §§ 1.42, 1.43, or 1.47, may submit an appropriate oath or declaration to establish invention of the subject matter of the rejected claim prior to the effective date of the reference or activity on which the rejection is based. The effective date of a U.S. patent, U.S. patent application publication, or international application publication under PCT Article 21(2) is the earlier of its publication date or date that it is effective as a reference under 35 U.S.C. 102(e). Prior invention may not be established under this section in any country other than the United States, a NAFTA country, or a WTO member country. Prior invention may not be established under this section before December 8, 1993, in a NAFTA country other than the United States, or before January 1, 1996, in a WTO member country other than a NAFTA country. Prior invention may not be established under this section if either:

(1)  The rejection is based upon a U.S. patent or U.S. patent application publication of a pending or patented application to another or others which claims the same patentable invention as defined in § 1.601(n); or

(2)  The rejection is based upon a statutory bar.

(b)  The showing of facts shall be such, in character and weight, as to establish reduction to practice prior to the effective date of the reference, or conception of the invention prior to the effective date of the reference coupled with due diligence from prior to said date to a subsequent reduction to practice or to the filing of the application. Original exhibits of drawings or records, or photocopies thereof, must accompany and form part of the affidavit or declaration or their absence satisfactorily explained.

37 CFR 1.131(a) has been amended to implement the relevant provisions of Public Law 103-182, 107 Stat. 2057 (1993) (North American Free Trade Agreement Act), Public Law 103-465, 108 Stat. 4809 (1994) (Uruguay Round Agreements Act), and Public Law 106-113, 113 Stat. 1501 (1999) (American Inventors Protection Act), respectively. Under 37 CFR 1.131(a) as amended, which provides for the establishment of a date of completion of the invention in a NAFTA or WTO member country, as well as in the United States, an applicant can establish a date of completion in a NAFTA member country on or after December 8, 1993, the effective date of section 331 of Public Law 103-182, the North American Free Trade Agreement Act, and can establish a date of completion in a WTO member country other than a NAFTA member country on or after January 1, 1996, the effective date of section 531 of Public Law 103-465, the Uruguay Round Agreements Act (URAA). Acts occurring prior to the effective dates of NAFTA or URAA may be relied upon to show completion of the invention; however, a date of completion of the invention may not be established under 37 CFR 1.131 before December 8, 1993 in a NAFTA country or before January 1, 1996 in a WTO member country other than a NAFTA country.

>If a country joined the WTO after January 1, 1996, the effective date for proving inventive activity in that country for the purpose of 35 U.S.C. 104 and 37 CFR 1.131 is the date the country becomes a member of the WTO. See MPEP § 201.13 for a list that includes WTO member countries (the notation "W°" indicates the country became a WTO member after January 1, 1996).<

Any printed publication or activity dated prior to an applicant's or patent owner's effective filing date, or any domestic patent of prior filing date, which is in its disclosure pertinent to the claimed invention, is available for use by the examiner as a reference, either basic or auxiliary, in the rejection of the claims of the application or patent under reexamination. In addition, patent application publications >and certain international application publications< having an effective prior art date prior to the application being examined may be used in a rejection of the claims. See MPEP § 706.02(a) and § 2136 - § 2136.03.

Such a rejection may be overcome, in certain instances noted below, by filing of an affidavit or dec-

laration under 37 CFR 1.131, known as "swearing back" of the reference.

It should be kept in mind that it is the rejection that is withdrawn and not the reference.

## SITUATIONS WHERE 37 CFR 1.131 AFFIDAVITS OR DECLARATIONS CAN BE USED

Affidavits or declarations under 37 CFR 1.131 may be used, for example:

(A) To antedate a reference or activity that qualifies as prior art under 35 U.S.C. 102(a) and not under 35 U.S.C. 102(b), e.g., where the prior art date under 35 U.S.C. 102(a) of the patent, the publication or activity used to reject the claim(s) is less than 1 year prior to applicant's or patent owner's effective filing date.

(B) To antedate a reference that qualifies as prior art under 35 U.S.C. 102(e), where the reference has a prior art date under 35 U.S.C. 102(e) prior to applicant's effective filing date, and shows but does not claim the same patentable invention. See MPEP § 715.05 for a discussion of "same patentable invention." See MPEP § 706.02(a) and § 2136 through § 2136.03 for an explanation of what references qualify as prior art under 35 U.S.C. 102(e).

## SITUATIONS WHERE 37 CFR 1.131 AFFIDAVITS OR DECLARATIONS ARE INAPPROPRIATE

An affidavit or declaration under 37 CFR 1.131 is not appropriate in the following situations:

(A) Where the reference publication date is more than 1 year prior to applicant's or patent owner's effective filing date. Such a reference is a "statutory bar" under 35 U.S.C. 102(b) as referenced in 37 CFR 1.131(a)(2). A reference that only qualifies as prior art under 35 U.S.C. 102(a) or (e) is not a "statutory bar."

(B) Where the reference U.S. patent or U.S. patent application publication claims the same patentable invention. See MPEP § 715.05 for a discussion of "same patentable invention" and MPEP § 2306. Where the reference patent and the application or patent under reexamination are commonly owned, and the inventions defined by the claims in the application or patent under reexamination and by the claims in the patent are not identical but are not patentably distinct, a terminal disclaimer and an affidavit

or declaration under 37 CFR 1.130 may be used to overcome a rejection under 35 U.S.C. 103. See MPEP § 718.

(C) Where the reference is a foreign patent for the same invention to applicant or patent owner or his or her legal representatives or assigns issued prior to the filing date of the domestic application or patent on an application filed more than 12 months before the filing date of the domestic application. See 35 U.S.C. 102(d).

(D) Where the effective filing date of applicant's or patent owner's parent application or an International Convention proved filing date is prior to the effective date of the reference, an affidavit or declaration under 37 CFR 1.131 is unnecessary because the reference is not used. See MPEP § 201.11 to § 201.15.

(E) Where the reference is a prior U.S. patent to the same entity, claiming the same invention. The question involved is one of "double patenting."

(F) Where the reference is the disclosure of a prior U.S. patent to the same party, not copending. The question is one of dedication to the public. Note however, *In re Gibbs*, 437 F.2d 486, 168 USPQ 578 (CCPA 1971) which substantially did away with the doctrine of dedication.

(G) Where applicant has <u>clearly</u> admitted on the record that subject matter relied on in the reference is prior art. In this case, that subject matter may be used as a basis for rejecting his or her claims and may not be overcome by an affidavit or declaration under 37 CFR 1.131. *In re Hellsund*, 474 F.2d 1307, 177 USPQ 170 (CCPA 1973); *In re Garfinkel*, 437 F.2d 1000, 168 USPQ 659 (CCPA 1971); *In re Blout*, 333 F.2d 928, 142 USPQ 173 (CCPA 1964); *In re Lopresti*, 333 F.2d 932, 142 USPQ 177 (CCPA 1964).

(H) Where the subject matter relied upon is prior art under 35 U.S.C. 102(f).

(I) Where the subject matter relied on in the reference is prior art under 35 U.S.C. 102(g). 37 CFR 1.131 is designed to permit an applicant to overcome rejections based on references or activities which are not statutory bars, but which have dates prior to the effective filing date of the application but subsequent to the applicant's actual date of invention. However, when the subject matter relied on is also available under 35 U.S.C. 102(g), a 37 CFR 1.131 affidavit or declaration cannot be used to overcome it. *In re Bass*,

474 F.2d 1276, 177 USPQ 178 (CCPA 1973). This is because subject matter which is available under 35 U.S.C. 102(g) by definition must have been made before the applicant made his or her invention. By contrast, references under 35 U.S.C. 102(a) and (e), for example, merely establish a presumption that their subject matter was made before applicant's invention date. It is this presumption which may be rebutted by evidence submitted under 37 CFR 1.131.

(J) Where the subject matter corresponding to a lost count in an interference is either prior art under 35 U.S.C. 102(g) or barred to applicant by the doctrine of interference estoppel. *In re Bandel*, 348 F.2d 563, 146 USPQ 389 (CCPA 1965); *In re Kroekel*, 803 F.2d 705, 231 USPQ 640 (Fed. Cir. 1986). See also *In re Deckler*, 977 F.2d 1449, 24 USPQ2d 1448 (Fed. Cir. 1992) (Under the principles of *res judicata* and *collateral estoppel*, applicant was not entitled to claims that were patentably indistinguishable from the claim lost in interference even though the subject matter of the lost count was not available for use in an obviousness rejection under 35 U.S.C. 103). But see *In re Zletz*, 893 F.2d 319, 13 USPQ2d 1320 (Fed. Cir. 1989) (A losing party to an interference, on showing that the invention now claimed is not "substantially the same" as that of the lost count, may employ the procedures of 37 CFR 1.131 to antedate the filing date of an interfering application). On the matter of when a "lost count" in an interference constitutes prior art under 35 U.S.C. 102(g), see *In re McKellin*, 529 F.2d 1342, 188 USPQ 428 (CCPA 1976) (A count is not prior art under  35 U.S.C. 102(g) as to the loser of an interference where the count was lost based on the winner's foreign priority date). Similarly, where one party in an interference wins a count by establishing a date of invention in a NAFTA or WTO member country (see 35 U.S.C. 104), the subject matter of that count is unpatentable to the other party by the doctrine of interference estoppel, even though it is not available as statutory prior art under 35 U.S.C. 102(g). See MPEP § 2138.01 and § 2138.02.

## REFERENCE DATE TO BE OVERCOME

The date to be overcome under 37 CFR 1.131 is the effective date of the reference (i.e., the date on which the reference is available as prior art).

### A.    U.S. Patents *>,< U.S. Patent Application * >Publications, and International Application Publications<

See MPEP § 706.02(a) and § 2136 through § 2136.03 for a detailed discussion of the effective date of a U.S. patent *>,< U.S. patent application publication >, or WIPO publication of an international application< as a reference.

>U.S. patents,< U.S. patent application publications >, and WIPO publications of international applications< are available as prior art under 35 U.S.C. 102(e) against **>all< patent applications **>and patents under reexamination.<

Should it be established that the portion of the patent, or patent application publication, disclosure relied on as the reference was introduced into the patent application by amendment and as such was new matter, the date to be overcome by the affidavit or declaration is the date of amendment. *In re Willien*, 74 F.2d 550, 24 USPQ 210 (CCPA 1935). The effective date of a domestic patent when used as a reference is not the foreign filing date to which the application for patent may have been entitled under 35 U.S.C. 119(a) during examination. *In re Hilmer*, 359 F.2d 859, 149 USPQ 480 (CCPA 1966). Therefore, the date to be overcome under 37 CFR 1.131 is the effective U.S. filing date, not the foreign priority date. When a U.S. patent or U.S. patent application publication reference is entitled to claim the benefit of an earlier filed application,  its effective filing date is determined under 35 U.S.C. 102(e). See MPEP § 706.02(a) and § 2136 through § 2136.03.

### B.    Foreign Patents

See MPEP § 2126 through § 2127 regarding date of availability of foreign patents as prior art.

### C.    Printed Publications

A printed publication, including a published foreign patent application, is effective as of its publication date, not its date of receipt by the publisher. For additional information regarding effective dates of printed publications, see  MPEP § 2128 through § 2128.02.

### D.    Activities

An applicant may make an admission, or submit evidence of use of the invention or knowledge of the invention by others, or the examiner may have personal knowledge that the invention was used or known by others in this country. See MPEP § 706.02(c) and § 2133.03. The effective date of the activity used to reject the claim(s) is the date the activity was first known to have occurred.

## FORM PARAGRAPHS

Form paragraphs 7.57-7.64 may be used to respond to  37 CFR 1.131 affidavits.

¶  7.57 Affidavit or Declaration Under 37 CFR 1.131: Ineffective- Heading

The **[1]** filed on **[2]** under  37 CFR 1.131 has been considered but is ineffective to overcome the **[3]** reference.

**Examiner Note:**

1.    In bracket 1, insert either --affidavit-- or --declaration--.

2.    This form paragraph must be followed by one or more of form paragraphs 7.58 to 7.63 or a paragraph setting forth proper basis for the insufficiency, such as failure to establish acts performed in this country, or that the scope of the declaration or affidavit is not commensurate with the scope of the claim(s).

¶  7.58 Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Claiming Same Invention

The **[1]** reference is a U.S. patent or U.S. patent application publication of a pending or patented application that claims the rejected invention.  An affidavit or declaration is inappropriate under 37 CFR 1.131(a) when the reference is claiming the same patentable invention, see MPEP § 2306.  If the reference and this application are not commonly owned, the reference can only be overcome by establishing priority of invention through interference proceedings.  See MPEP Chapter 2300 for information on initiating interference proceedings.  If the reference and this application are commonly owned, the patent may be disqualified as prior art by an affidavit or declaration under  37 CFR 1.130. See MPEP § 718.

**Examiner Note:**

1.    If used to respond to the submission of an affidavit under 37 CFR 1.131, this paragraph must be preceded by paragraph 7.57.

2.    This form paragraph may be used without form paragraph 7.57 when an affidavit has not yet been filed, and the examiner desires to notify applicant that the submission of an affidavit under 37 CFR 1.131 would be inappropriate.

¶  7.59 Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Insufficient Evidence of Reduction to Practice Before Reference Date

The evidence submitted is insufficient to establish a reduction to practice of the invention in this country or a NAFTA or WTO member country prior to the effective date of the **[1]** reference. **[2]**

**Examiner Note:**

1.    This form paragraph must be preceded by form paragraph 7.57.

2.    An explanation of the lack of showing of the alleged reduction to practice must be provided in bracket 2.

¶  7.60 Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Reference Is a Statutory Bar

The **[1]** reference is a statutory bar under 35 U.S.C. 102(b) and thus cannot be overcome by an affidavit or declaration under 37 CFR 1.131.

**Examiner Note:**

This form paragraph must be preceded by form paragraph 7.57.

¶  7.61 Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Insufficient Evidence of Conception

The evidence submitted is insufficient to establish a conception of the invention prior to the effective date of the **[1]** reference. While conception is the mental part of the inventive act, it must be capable of proof, such as by demonstrative evidence or by a complete disclosure to another. Conception is more than a vague idea of how to solve a problem. The requisite means themselves and their interaction must also be comprehended. See Mergenthaler v. Scudder, 1897 C.D. 724, 81 O.G. 1417 (D.C. Cir. 1897). **[2]**

**Examiner Note:**

1.    This form paragraph must be preceded by form paragraph 7.57.

2.    An explanation of the deficiency in the showing of conception must be presented in bracket 2.

3.    If the affidavit additionally fails to establish either diligence or a subsequent reduction to practice, this form paragraph should be followed by form paragraph 7.62 and/or 7.63. If either diligence or a reduction to practice is established, a statement to that effect should follow this paragraph.

¶  7.62 Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Diligence Lacking

The evidence submitted is insufficient to establish diligence from a date prior to the date of reduction to practice of the **[1]** reference to either a constructive reduction to practice or an actual reduction to practice. **[2]**

**Examiner Note:**

1.    This form paragraph must be preceded by form paragraph 7.57.

2.    If the affidavit additionally fails to establish conception, this paragraph must also be preceded by form paragraph 7.61. If the affidavit establishes conception, a statement to that effect should be added to this paragraph.

3.   If the affidavit additionally fails to establish an alleged reduction to practice prior to the application filing date, this paragraph must be followed by form paragraph 7.63.  If such an alleged reduction to practice is established, a statement to that effect should be added to this paragraph.

4.   An explanation of the reasons for a holding of non-diligence must be provided in bracket 2.

5.   See  MPEP § 715.07(a), Ex parte Merz, 75 USPQ 296 (Bd. App. 1947), which indicates that diligence is not required after reduction to practice.

*¶ 7.63 Affidavit or Declaration Under 37 CFR 1.131: Ineffective, Insufficient Evidence of Actual Reduction to Practice*

The evidence submitted is insufficient to establish applicant's alleged actual reduction to practice of the invention in this country or a NAFTA or WTO member country after the effective date of the **[1]** reference. **[2]**.

**Examiner Note:**

1.   This form paragraph must be preceded by form paragraph 7.57.

2.   If the alleged reduction to practice is prior to the effective date of the reference, do not use this paragraph.  See form paragraph 7.59.

3.   If the affidavit additionally fails to establish either conception or diligence, form paragraphs 7.61 and/or 7.62 should precede this paragraph.   If either conception or diligence is established, a statement to that effect should be included after this paragraph.

4.   An explanation of the lack of showing of the alleged reduction to practice may be given in bracket 2.

*¶ 7.64 Affidavit or Declaration Under 37 CFR 1.131: Effective To Overcome Reference*

The **[1]** filed on **[2]** under 37 CFR 1.131 is sufficient to overcome the **[3]** reference.

**Examiner Note:**

1.   In bracket 1, insert either --affidavit-- or --declaration--.

2.   In bracket 2, insert the filing date of the affidavit or declaration.

3.   In bracket 3, insert the name of the reference.

## 715.01   37 CFR 1.131 Affidavits Versus 37 CFR 1.132 Affidavits

The purpose of a 37 CFR 1.131 affidavit or declaration is to overcome a prior art rejection by proving invention of the claimed subject matter by applicant prior to the effective date of the reference or activity relied upon in the rejection.

In some situations, an applicant may, alternatively, be able to overcome prior art rejections relying on references or activities which are available as prior art under 35 U.S.C. 102(a) or references which are available as prior art under 35 U.S.C. 102(e) by proving that the subject matter relied upon in the reference or activity was applicant's own invention.

Similarly, where the reference relied upon in a 35 U.S.C. 103 rejection qualifies as prior art only under 35 U.S.C. 102(f) or (g), or, in an application filed on or after November 29, 1999, under 35 U.S.C. 102(e), applicant may be able to overcome this rejection by proving that the subject matter relied upon and the claimed invention were commonly owned or subject to common assignment at the time the later invention was made.  See MPEP § 706.02(l)(1) through § 706.02(l)(3).

## 715.01(a)   Reference Is a Joint Patent or Published Application to Applicant and Another

When subject matter, disclosed but not claimed in a patent or application publication filed jointly by S and another, is claimed in a later application filed by S, the joint patent or application publication is a valid reference unless overcome by affidavit or declaration under 37 CFR 1.131 or an unequivocal declaration under 37 CFR 1.132 by S that he/she conceived or invented the subject matter disclosed in the patent or application publication and relied on in the rejection. *In re DeBaun*, 687 F.2d 459, 214 USPQ 933 (CCPA 1982).  See  MPEP § 716.10 for a discussion of the use of 37 CFR 1.132 affidavits or declarations to overcome rejections by establishing that the subject matter relied on in the patent or application publication was the invention of the applicant. Disclaimer by the other patentee or applicant of the application publication should not be required but, if submitted, may be accepted by the examiner.

Although affidavits or declarations submitted for the purpose of establishing that the reference discloses applicant's invention are properly filed under 37 CFR 1.132, rather than 37 CFR 1.131, such affidavits submitted improperly under 37 CFR 1.131 will be considered as though they were filed under 37 CFR 1.132 to traverse a ground of rejection. *In re Facius*, 408 F.2d 1396, 161 USPQ 294 (CCPA 1969).

## 715.01(b)   Reference and Application Have Common Assignee

The mere fact that the reference patent or application publication which shows but does not claim certain subject matter and the application which claims it are owned by the same assignee does not avoid the necessity of filing an affidavit or declaration under 37 CFR 1.131, in the absence of a showing under 37 CFR 1.132 that the patentee derived the subject matter relied on from the applicant (MPEP § 716.10). The common assignee does not obtain any rights in this regard by virtue of common ownership which he or she would not have in the absence of common ownership. *In re Frilette*, 412 F.2d 269, 162 USPQ 163 (CCPA 1969); *Pierce v. Watson*, 275 F.2d 890, 124 USPQ 356 (D.C. Cir. 1960); *In re Beck*, 155 F.2d 398, 69 USPQ 520 (CCPA 1946). Where, however, a rejection is applied under 35 U.S.C. 102(f)/103 or 35 U.S.C. 102(g)/103 , or, in an application filed on or after November 29, 1999, under 35 U.S.C. 102(e)/103 using the reference, a showing that the invention was commonly owned, or subject to an obligation of assignment to the same person, at the time the later invention was made would preclude such a rejection or be sufficient to overcome such a rejection. See MPEP § 706.02(l) and §  706.02(l)(1).

## 715.01(c)   Reference Is Publication of Applicant's Own Invention

Unless it is a statutory bar, a rejection based on a publication may be overcome by a showing that it was published either by applicant himself/herself or on his/her behalf. Since such a showing is not made to show a date of invention by applicant prior to the date of the reference under  37 CFR 1.131, the limitation in 35 U.S.C. 104 and in 37 CFR 1.131(a)(1) that only acts which occurred in this country or in a NAFTA or WTO member country may be relied on to establish a date of invention is not applicable. *Ex parte Lemieux*, 115 USPQ 148, 1957 C.D. 47, 725 O.G. 4 (Bd. App. 1957); *Ex parte Powell,* 1938 C.D. 15, 489 O.G. 231 (Bd. App. 1938). See MPEP § 716.10 regarding 37 CFR 1.132 affidavits submitted to show that the reference is a publication of applicant's own invention.

### CO-AUTHORSHIP

Where the applicant is one of the co-authors of a publication cited against his or her application, he or she may overcome the rejection by filing an affidavit or declaration under 37 CFR 1.131. Alternatively, the applicant may overcome the rejection by filing a specific affidavit or declaration under 37 CFR 1.132 establishing that the article is describing applicant's own work. An affidavit or declaration by applicant alone indicating that applicant is the sole inventor and that the others were merely working under his or her direction is sufficient to remove the publication as a reference under 35 U.S.C. 102(a). *In re Katz*, 687 F.2d 450, 215 USPQ 14 (CCPA 1982).

### DERIVATION

When the unclaimed subject matter of a patent, application publication, or other publication is applicant's own invention, a rejection on that patent or publication may be removed by submission of evidence establishing the fact that the patentee, applicant of the published application, or author derived his or her knowledge of the relevant subject matter from applicant. Moreover applicant must further show that he or she made the invention upon which the relevant disclosure in the patent, application publication, or other publication is based. *In re Mathews*, 408 F.2d 1393, 161 USPQ 276 (CCPA 1969); *In re Facius*, 408 F.2d 1396, 161 USPQ 294 (CCPA 1969).

## 715.01(d)   Activities Applied Against the Claims

Unless it is a statutory bar, a rejection based on an activity showing that the claimed invention was used or known prior to the filing date of the application may be overcome by an affidavit or declaration under 37 CFR 1.131 establishing a date of invention prior to the date of the activity. Alternatively, the applicant(s) may overcome the rejection by filing a specific affidavit or declaration under 37 CFR 1.132 showing that the activity was performed by the applicant(s).

## 715.02   How Much of the Claimed Invention Must Be Shown, Including the General Rule  as to Generic Claims

The  37 CFR 1.131 affidavit or declaration must establish possession of either the whole invention claimed or something falling within the claim (such as a species of a claimed genus), in the sense that the claim as a whole reads on it. *In re Tanczyn*, 347 F.2d 830, 146 USPQ 298 (CCPA 1965) (Where applicant claims an alloy comprising both nitrogen and molybdenum, an affidavit showing applicant made an alloy comprising nitrogen but not molybdenum is not sufficient under 37 CFR 1.131 to overcome a rejection under 35 U.S.C. 103 based on the combined teachings of one reference disclosing an alloy comprising nitrogen but not molybdenum and a second reference disclosing an alloy comprising molybdenum but not nitrogen). Note, however, where the differences between the claimed invention and the disclosure of the reference(s) are so small as to render the claims obvious over the reference(s), an affidavit or declaration under 37 CFR 1.131 is required to show no more than the reference shows. *In re Stryker*, 435 F.2d 1340, 168 USPQ 372 (CCPA 1971). In other words, where the examiner, in rejecting a claim under 35 U.S.C. 103, has treated a claim limitation as being an obvious feature or modification of the disclosure of the reference(s) relied upon, without citation of a reference which teaches such feature or modification, a 37 CFR 1.131 affidavit or declaration may be sufficient to overcome the rejection even if it does not show such feature or modification.

Further, a 37 CFR 1.131 affidavit is not insufficient merely because it does not show the identical disclosure of the reference(s) or the identical subject matter involved in the activity relied upon. If the affidavit contains facts showing a completion of the invention commensurate with the extent of the invention as claimed is shown in the reference or activity, the affidavit or declaration is sufficient, whether or not it is a showing of the identical disclosure of the reference or the identical subject matter involved in the activity. See *In re Wakefield*, 422 F.2d 897, 164 USPQ 636 (CCPA 1970).

Even if applicant's 37 CFR 1.131 affidavit is not fully commensurate with the rejected claim, the applicant can still overcome the rejection by showing that the differences between the claimed invention and the showing under 37 CFR 1.131 would have been obvious to one of ordinary skill in the art, in view of applicant's 37 CFR 1.131 evidence, prior to the effective date of the reference(s) or the activity. Such evidence is sufficient because applicant's possession of what is shown carries with it possession of variations and adaptations which would have been obvious, at the same time, to one of ordinary skill in the art. However, the affidavit or declaration showing must still establish possession of the invention (i.e., the basic inventive concept) and not just of what one reference (in a combination of applied references) happens to show, if that reference does not itself teach the basic inventive concept. *In re Spiller*, 500 F.2d 1170, 182 USPQ 614 (CCPA 1974) (Claimed invention was use of electrostatic forces to adhere dry starch particles to a wet paper web on the Fourdrinier wire of a papermaking machine. 37 CFR 1.131 affidavit established use of electrostatic forces to adhere starch particles to wet blotting paper moved over a fluidized bed of starch particles prior to the applied reference date. Affidavit was sufficient in view of prior art reference showing that deposition of dry coatings directly on wet webs on the Fourdrinier wire of a paper-making machine was well known in the art prior to the date of the applied reference. The affidavit established possession of the basic invention, i.e., use of electrostatic forces to adhere starch to wet paper.).

## SWEARING BEHIND ONE OF A PLURALITY OF COMBINED REFERENCES

Applicant may overcome a 35 U.S.C. 103 rejection based on a combination of references by showing completion of the invention by applicant prior to the effective date of any of the references; applicant need not antedate the reference with the earliest filing date. However, as discussed above, applicant's 37 CFR 1.131 affidavit must show possession of either the whole invention as claimed or something falling within the claim(s) prior to the effective date of the reference being antedated; it is not enough merely to show possession of what the reference happens to show if the reference does not teach the basic inventive concept.

Where a claim has been rejected under 35 U.S.C. 103 based on Reference A in view of Reference B,

with the effective date of secondary Reference B being earlier than that of Reference A, the applicant can rely on the teachings of Reference B to show that the differences between what is shown in his or her 37 CFR 1.131 affidavit or declaration and the claimed invention would have been obvious to one of ordinary skill in the art prior to the date of Reference A. However, the 37 CFR 1.131 affidavit or declaration must still establish possession of the claimed invention, not just what Reference A shows, if Reference A does not teach the basic inventive concept.

### GENERAL RULE AS TO GENERIC CLAIMS

A reference or activity applied against generic claims may (in most cases) be antedated as to such claims by an affidavit or declaration under 37 CFR 1.131 showing completion of the invention of only a single species, within the genus, prior to the effective date of the reference or activity (assuming, of course, that the reference or activity is not a statutory bar or a patent, or an application publication, claiming the same invention). See *Ex parte Biesecker*, 144 USPQ 129 (Bd. App. 1964). See, also, *In re Fong*, 288 F.2d 932, 129 USPQ 264 (CCPA 1961); *In re Defano*, 392 F.2d 280, 157 USPQ 192 (CCPA 1968) (distinguishing chemical species of genus compounds from embodiments of a single invention). See, however, MPEP § 715.03 for practice relative to cases in unpredictable arts.

## 715.03   Genus-Species, Practice Relative to Cases Where Predictability Is in Question

Where generic claims have been rejected on a reference or activity which discloses a species not antedated by the affidavit or declaration, the rejection will not ordinarily be withdrawn, subject to the rules set forth below, unless the applicant is able to establish that he or she was in possession of the generic invention prior to the effective date of the reference or activity. In other words, the affidavit or declaration under 37 CFR 1.131 must show as much as the minimum disclosure required by a patent specification to furnish support for a generic claim.

### REFERENCE OR ACTIVITY DISCLOSES SPECIES

#### A.   Species Claim

Where the claim under rejection recites a species and the reference or activity discloses the claimed species, the rejection can be overcome under 37 CFR 1.131 directly by showing prior completion of the claimed species or indirectly by a showing of prior completion of a different species coupled with a showing that the claimed species would have been an obvious modification of the species completed by applicant. See *In re Spiller*, 500 F.2d 1170, 182 USPQ 614 (CCPA 1974).

#### B.   Genus Claim

The principle is well established that the disclosure of a species in a cited reference is sufficient to prevent a later applicant from obtaining a "generic claim." *In re Gosteli*, 872 F.2d 1008, 10 USPQ2d 1614 (Fed. Cir. 1989); *In re Slayter*, 276 F.2d 408, 125 USPQ 345 (CCPA 1960).

Where the only pertinent disclosure in the reference or activity is a single species of the claimed genus, the applicant can overcome the rejection directly under 37 CFR 1.131 by showing prior possession of the species disclosed in the reference or activity. On the other hand, a reference or activity which discloses several species of a claimed genus can be overcome directly under 37 CFR 1.131 only by a showing that the applicant completed, prior to the date of the reference or activity, all of the species shown in the reference. *In re Stempel*, 241 F.2d 755, 113 USPQ 77 (CCPA 1957).

Proof of prior completion of a species different from the species of the reference or activity will be sufficient to overcome a reference indirectly under 37 CFR 1.131 if the species shown in the reference or activity would have been obvious in view of the species shown to have been made by the applicant. *In re Clarke*, 356 F.2d 987, 148 USPQ 665 (CCPA 1966); *In re Plumb*, 470 F.2d 1403, 176 USPQ 323 (CCPA 1973); *In re Hostettler*, 356 F.2d 562, 148 USPQ 514 (CCPA 1966). Alternatively, if the applicant cannot show possession of the species of the reference or activity in this manner, the applicant may be able to antedate the reference or activity indirectly by, for example, showing prior completion of one or more species which put him or her in possession of the

claimed genus prior to the reference's or activity's date. The test is whether the species completed by applicant prior to the reference date or the activity's date provided an adequate basis for inferring that the invention has generic applicability. *In re Plumb*, 470 F.2d 1403, 176 USPQ 323 (CCPA 1973); *In re Rainer*, 390 F.2d 771, 156 USPQ 334 (CCPA 1968); *In re Clarke*, 356 F.2d 987, 148 USPQ 665 (CCPA 1966); *In re Shokal*, 242 F.2d 771, 113 USPQ 283 (CCPA 1957).

It is not necessary for the affidavit evidence to show that the applicant viewed his or her invention as encompassing more than the species actually made. The test is whether the facts set out in the affidavit are such as would persuade one skilled in the art that the applicant possessed so much of the invention as is shown in the reference or activity. *In re Schaub*, 537 F.2d 509, 190 USPQ 324 (CCPA 1976).

### C.   *Species Versus Embodiments*

References or activities which disclose one or more embodiments of a single claimed invention, as opposed to species of a claimed genus, can be overcome by filing a 37 CFR 1.131 affidavit showing prior completion of a single embodiment of the invention, whether it is the same or a different embodiment from that disclosed in the reference or activity. See *In re Fong*, 288 F.2d 932, 129 USPQ 264 (CCPA 1961) (Where applicant discloses and claims a washing solution comprising a detergent and polyvinylpyrrolidone (PVP), with no criticality alleged as to the particular detergent used, the PVP being used as a soil-suspending agent to prevent the redeposition of the soil removed, the invention was viewed as the use of PVP as a soil-suspending agent in washing with a detergent. The disclosure in the reference of the use of PVP with two detergents, both of which differed from that shown in applicant's 37 CFR 1.131 affidavit, was considered a disclosure of different embodiments of a single invention, rather than species of a claimed genus); *In re Defano*, 392 F.2d 280, 157 USPQ 192 (CCPA 1968).

### REFERENCE OR ACTIVITY DISCLOSES CLAIMED GENUS

In general, where the reference or activity discloses the claimed genus, a showing of completion of a single species within the genus is sufficient to antedate

the reference or activity under 37 CFR 1.131. *Ex parte Biesecker*, 144 USPQ 129 (Bd. App. 1964).

In cases where predictability is in question, on the other hand, a showing of prior completion of one or a few species within the disclosed genus is generally not sufficient to overcome the reference or activity. *In re Shokal*, 242 F.2d 771, 113 USPQ 283 (CCPA 1957). The test is whether the species completed by applicant prior to the reference date or the date of the activity provided an adequate basis for inferring that the invention has generic applicability. *In re Mantell*, 454 F.2d 1398, 172 USPQ 530 (CCPA 1973); *In re Rainer*, 390 F.2d 771, 156 USPQ 334 (CCPA 1968); *In re DeFano*, 392 F.2d 280, 157 USPQ 192 (CCPA 1968); *In re Clarke*, 356 F.2d 987, 148 USPQ 665 (CCPA 1965). In the case of a small genus such as the halogens, which consists of four species, a reduction to practice of three, or perhaps even two, species might show possession of the generic invention, while in the case of a genus comprising hundreds of species, reduction to practice of a considerably larger number of species would be necessary. *In re Shokal, supra*.

It is not necessary for the affidavit evidence to show that the applicant viewed his or her invention as encompassing more than the species he or she actually made. The test is whether the facts set out in the affidavit are such as would persuade one skilled in the art that the applicant possessed so much of the invention as is shown in the reference. *In re Schaub*, 537 F. 509, 190 USPQ 324 (CCPA 1976).

## 715.04   Who May Make Affidavit or Declaration; Formal Requirements of Affidavits and Declarations

### WHO MAY MAKE AFFIDAVIT OR DECLARATION

The following parties may make an affidavit or declaration under 37 CFR 1.131:

(A) All the inventors of the subject matter claimed.

(B) An affidavit or declaration by less than all named inventors of an application is accepted where it is shown that less than all named inventors of an application invented the subject matter of the claim or claims under rejection. For example, one of two joint

Case 1:10-cv-00433-LPS-MPT   Document 496   Filed 10/07/16   Page 56 of 68 PageID #: 21293

inventors is accepted where it is shown that one of the joint inventors is the sole inventor of the claim or claims under rejection.

(C) A party qualified under 37 CFR 1.42, 1.43, or 1.47 in situation where some or all of the inventors are not available or not capable of joining in the filing of the application.

(D) The assignee or other party in interest when it is not possible to produce the affidavit or declaration of the inventor. *Ex parte Foster*, 1903 C.D. 213, 105 O.G. 261 (Comm'r Pat. 1903).

Affidavits or declarations to overcome a rejection of a claim or claims must be made by the inventor or inventors of the subject matter of the rejected claim(s), a party qualified under 37 CFR 1.42, 1.43, or 1.47, or the assignee or other party in interest when it is not possible to produce the affidavit or declaration of the inventor(s). Thus, where all of the named inventors of a pending application are not inventors of every claim of the application, any affidavit under 37 CFR 1.131 could be signed by only the inventor(s) of the subject matter of the rejected claims. Further, where it is shown that a joint inventor is deceased, refuses to sign, or is otherwise unavailable, the signatures of the remaining joint inventors are sufficient. However, the affidavit or declaration, even though signed by fewer than all the joint inventors, must show completion of the invention by all of the joint inventors of the subject matter of the claim(s) under rejection. *In re Carlson*, 79 F.2d 900, 27 USPQ 400 (CCPA 1935).

**FORMAL REQUIREMENTS OF AFFIDAVITS AND DECLARATIONS**

An affidavit is a statement in writing made under oath before a notary public, magistrate, or officer authorized to administer oaths. See MPEP § 604 through § 604.06 for additional information regarding formal requirements of affidavits.

37 CFR 1.68 permits a declaration to be used instead of an affidavit. The declaration must include an acknowledgment by the declarant that willful false statements and the like are punishable by fine or imprisonment, or both (18 U.S.C. 1001) and may jeopardize the validity of the application or any patent issuing thereon. The declarant must set forth in the body of the declaration that all statements made of the declarant's own knowledge are true and that all state-

ments made on information and belief are believed to be true.

### 715.05    U.S. Patent or Application Publication Claiming Same Invention

When the reference in question is a noncommonly owned U.S. patent or patent application publication claiming the same invention as applicant and its publication date is less than 1 year prior to the presentation of claims to that invention in the application being examined, applicant's remedy, if any, must be by way of 37 CFR 1.608 instead of 37 CFR 1.131. If the reference is claiming the same invention as the application and its publication date is less than 1 year prior to the presentation of claims to that invention in the application, this fact should be noted in the Office action. The reference can then be overcome only by way of interference. See MPEP §§ 2306-2308. If the reference is claiming the same invention as the application and its publication date is 1 year or more prior to the presentation of claims to that invention in the application, a rejection of the claims of the application under 35 U.S.C. 135(b) should be made. See *In re McGrew*, 120 F.3d 1236, 1238, 43 USPQ2d 1632, 1635 (Fed. Cir. 1997) (The court holding that application of 35 U.S.C. 135(b) is not limited to *inter partes* interference proceedings, but may be used as a basis for *ex parte* rejections.).

Form paragraph 23.14 or 23.14.01 may be used when making a rejection under 35 U.S.C. 135(b).

¶ *23.14   Claims Not Copied Within One Year of Patent Issue Date*

Claim **[I]** rejected under 35 U.S.C. 135(b) as not being made prior to one year from the date on which U.S. Patent No. **[2]** was granted. See *In re McGrew*, 120 F.3d 1236, 1238, 43 USPQ2d 1632, 1635 (Fed. Cir. 1997) where the Court held that the application of 35 U.S.C. 135(b) is not limited to *inter partes* interference proceedings, but may be used as a basis for *ex parte* rejections.

¶ *23.14.01   Claims Not Copied Within One Year of Application Publication Date*

Claim **[I]** rejected under 35 U.S.C. 135(b) as not being made prior to one year from the date on which **[2]** was published under 35 U.S.C. 122(b). See *In re McGrew*, 120 F.3d 1236, 1238, 43 USPQ2d 1632,1635 (Fed. Cir. 1997) where the Court held that the application of 35 U.S.C. 135(b) is not limited to *inter partes* interference proceedings, but may be used as a basis for *ex parte* rejections.

**Examiner Note:**

1.   In bracket 2, insert the publication number of the published application.

2.   This form paragraph should only be used if the application being examined was filed after the publication date of the published application.

Where the reference and the application or patent under reexamination are commonly owned, and the inventions defined by the claims in the application or patent under reexamination and by the claims in the reference are not identical but are not patentably distinct, a terminal disclaimer and an affidavit or declaration under 37 CFR 1.130 may be used to overcome a rejection under 35 U.S.C. 103. See MPEP § 718.

A 37 CFR 1.131 affidavit is ineffective to overcome a United States patent or patent application publication, not only where there is a verbatim correspondence between claims of the application and of the patent, but also where there is no patentable distinction between the respective claims. *In re Clark*, 457 F.2d 1004, 173 USPQ 359 (CCPA 1972); *In re Hidy*, 303 F.2d 954, 133 USPQ 650 (CCPA 1962); *In re Teague*, 254 F.2d 145, 117 USPQ 284 (CCPA 1958); *In re Ward*, 236 F.2d 428, 111 USPQ 101 (CCPA 1956); *In re Wagenhorst*, 62 F.2d 831, 16 USPQ 126 (CCPA 1933).

If the application (or patent under reexamination) and the domestic reference contain claims which are identical, or which are not patentably distinct, then the application and patent are claiming the "same patentable invention," defined by  37 CFR 1.601(n) as follows:

> Invention "A" is the *same patentable invention* as an invention "B" when invention "A" is the same as (35 U.S.C. 102) or is obvious (35 U.S.C. 103) in view of invention "B" assuming invention "B" is prior art with respect to invention "A."

As provided in 37 CFR 1.601(i), an interference may be declared whenever an examiner is of the opinion that an application and a reference contain claims for the "same patentable invention." An applicant who is claiming an invention which is identical to, or obvious in view of, the invention as claimed in a domestic patent or patent application publication cannot employ an affidavit under 37 CFR 1.131 as a means for avoiding an interference with the reference. To allow an applicant to do so would result in the issuance of two patents to the same invention.

Since 37 CFR 1.131 defines "same patentable invention" in the same way as the interference rules (37 CFR 1.601(n)), the USPTO cannot prevent an applicant from overcoming a reference by a 37 CFR 1.131 affidavit or declaration on the grounds that the reference claims applicant's invention and, at the same time, deny applicant an interference on the grounds that the claims of the application and those of the reference are not for substantially the same invention. See *In re Eickmeyer*, 602 F.2d 974, 202 USPQ 655 (CCPA 1979). Where, in denying an applicant's motion in interference to substitute a broader count, it is held that the limitation to be deleted was material for the opponent patentee, this constitutes a holding that the proposed count is for an invention which is not the "same patentable invention" claimed by the reference. Therefore, the applicant may file an affidavit or declaration under 37 CFR 1.131 to overcome a prior art rejection based on the reference. *Adler v. Kluver*, 159 USPQ 511 (Bd. Pat. Int. 1968).

Form paragraph 7.58 (reproduced in  MPEP § 715) may be used to note such a situation in the Office action.

## 715.07    Facts and Documentary Evidence

**GENERAL REQUIREMENTS**

The essential thing to be shown under 37 CFR 1.131 is priority of invention and this may be done by any satisfactory evidence of the fact. FACTS, not conclusions, must be alleged.  Evidence in the form of exhibits may accompany the affidavit or declaration. Each exhibit relied upon should be specifically referred to in the affidavit or declaration, in terms of what it is relied upon to show. For example, the allegations of fact might be supported by submitting as evidence one or more of the following:

(A) attached sketches;

(B) attached blueprints;

(C) attached photographs;

(D) attached reproductions of notebook entries;

(E) an accompanying model;

(F) attached supporting statements by witnesses, where verbal disclosures are the evidence relied upon. *Ex parte Ovshinsky*, 10 USPQ2d 1075 (Bd. Pat. App. & Inter. 1989);

(G) testimony given in an interference. Where interference testimony is used, the applicant must point out which parts of the testimony are being relied on; examiners cannot be expected to search the entire interference record for the evidence. *Ex parte Homan*, 1905 C.D. 288 (Comm'r Pat. 1905);

(H) Disclosure documents (MPEP § 1706) may be used as documentary evidence of conception.

Exhibits and models must comply with the requirements of 37 CFR 1.91 to be entered into an application file. See also MPEP § 715.07(d).

A general allegation that the invention was completed prior to the date of the reference is not sufficient. *Ex parte Saunders*, 1883 C.D. 23, 23 O.G. 1224 (Comm'r Pat. 1883). Similarly, a declaration by the inventor to the effect that his or her invention was conceived or reduced to practice prior to the reference date, without a statement of facts demonstrating the correctness of this conclusion, is insufficient to satisfy 37 CFR 1.131.

37 CFR 1.131(b) requires that original exhibits of drawings or records, or photocopies thereof, accompany and form part of the affidavit or declaration or their absence satisfactorily explained. In *Ex parte Donovan*, 1890 C.D. 109, 52 O.G. 309 (Comm'r Pat. 1890) the court stated

> If the applicant made sketches he should so state, and produce and describe them; if the sketches were made and lost, and their contents remembered, they should be reproduced and furnished in place of the originals. The same course should be pursued if the disclosure was by means of models. If neither sketches nor models are relied upon, but it is claimed that verbal disclosures, sufficiently clear to indicate definite conception of the invention, were made the witness should state as nearly as possible the language used in imparting knowledge of the invention to others.

However, when reviewing a 37 CFR 1.131 affidavit or declaration, the examiner must consider all of the evidence presented in its entirety, including the affidavits or declarations and all accompanying exhibits, records and "notes." An accompanying exhibit need not support all claimed limitations, provided that any missing limitation is supported by the declaration itself. *Ex parte Ovshinsky*, 10 USPQ2d 1075 (Bd. Pat. App. & Inter. 1989).

The affidavit or declaration and exhibits must clearly explain which facts or data applicant is relying on to show completion of his or her invention prior to

the particular date. Vague and general statements in broad terms about what the exhibits describe along with a general assertion that the exhibits describe a reduction to practice "amounts essentially to mere pleading, unsupported by proof or a showing of facts" and, thus, does not satisfy the requirements of 37 CFR 1.131(b). *In re Borkowski*, 505 F.2d 713, 184 USPQ 29 (CCPA 1974). Applicant must give a clear explanation of the exhibits pointing out exactly what facts are established and relied on by applicant. 505 F.2d at 718-19, 184 USPQ at 33. See also *In re Harry,* 333 F.2d 920, 142 USPQ 164 (CCPA 1964) (Affidavit "asserts that facts exist but does not tell what they are or when they occurred.").

## ESTABLISHMENT OF DATES

If the dates of the exhibits have been removed or blocked off, the matter of dates can be taken care of in the body of the oath or declaration.

When alleging that conception or a reduction to practice occurred prior to the effective date of the reference, the dates in the oath or declaration may be the actual dates or, if the applicant or patent owner does not desire to disclose his or her actual dates, he or she may merely allege that the acts referred to occurred prior to a specified date. However, the actual dates of acts relied on to establish diligence must be provided. See MPEP § 715.07(a) regarding the diligence requirement.

## THREE WAYS TO SHOW PRIOR INVENTION

The affidavit or declaration must state FACTS and produce such documentary evidence and exhibits in support thereof as are available to show conception and completion of invention in this country or in a NAFTA or WTO member country (MPEP § 715.07(c)), at least the conception being at a date prior to the effective date of the reference. Where there has not been reduction to practice prior to the date of the reference, the applicant or patent owner must also show diligence in the completion of his or her invention from a time just prior to the date of the reference continuously up to the date of an actual reduction to practice or up to the date of filing his or her application (filing constitutes a constructive reduction to practice, 37 CFR 1.131).

As discussed above, 37 CFR 1.131(b) provides three ways in which an applicant can establish prior

invention of the claimed subject matter. The showing of facts must be sufficient to show:

(A) reduction to practice of the invention prior to the effective date of the reference; or

(B) conception of the invention prior to the effective date of the reference coupled with due diligence from prior to the reference date to a subsequent (actual) reduction to practice; or

(C) conception of the invention prior to the effective date of the reference coupled with due diligence from prior to the reference date to the filing date of the application (constructive reduction to practice).

A conception of an invention, though evidenced by disclosure, drawings, and even a model, is not a complete invention under the patent laws, and confers no rights on an inventor, and has no effect on a subsequently granted patent, UNLESS THE INVENTOR FOLLOWS IT WITH REASONABLE DILIGENCE BY SOME OTHER ACT, such as an actual reduction to practice or filing an application for a patent. *Automatic Weighing Mach. Co. v. Pneumatic Scale Corp.,* 166 F.2d 288, 1909 C.D. 498, 139 O.G. 991 (1st Cir. 1909).

Conception is the mental part of the inventive act, but it must be capable of proof, as by drawings, complete disclosure to another person, etc. In *Mergenthaler v. Scudder,* 1897 C.D. 724, 81 O.G. 1417 (D.C. Cir. 1897), it was established that conception is more than a mere vague idea of how to solve a problem; the means themselves and their interaction must be comprehended also.

In general, proof of actual reduction to practice requires a showing that the apparatus actually existed and worked for its intended purpose. However, "there are some devices so simple that a mere construction of them is all that is necessary to constitute reduction to practice." *In re Asahi/America Inc.*, 94-1249 (Fed. Cir. 1995) (Citing *Newkirk v. Lulegian,* 825 F.2d 1581, 3USPQ2d 1793 (Fed. Cir. 1987) and *Sachs v. Wadsworth,* 48 F.2d 928, 929, 9 USPQ 252, 253 (CCPA 1931). The claimed restraint coupling held to be so simple a device that mere construction of it was sufficient to constitute reduction to practice. Photographs, coupled with articles and a technical report describing the coupling in detail were sufficient to show reduction to practice.).

The facts to be established under 37 CFR 1.131 are similar to those to be proved in interference. The difference lies in the way in which the evidence is presented. If applicant disagrees with a holding that the facts are insufficient to overcome the rejection, his or her remedy is by appeal from the continued rejection.

See MPEP § 2138.04 through § 2138.06 for a detailed discussion of the concepts of conception, reasonable diligence, and reduction to practice.

For the most part, the terms "conception," "reasonable diligence," and "reduction to practice" have the same meanings under 37 CFR 1.131 as they have in interference proceedings. However, in *In re Eickmeyer,* 602 F.2d 974, 202 USPQ 655 (CCPA 1979), the court stated:

> The purpose of filing a [37 CFR 1.]131 affidavit is not to demonstrate prior invention, *per se,* but merely to antedate the effective date of a reference. See *In re Moore,* 58 CCPA 1340, 444 F.2d 572, 170 USPQ 260 (1971). Although the test for sufficiency of an affidavit under Rule 131(b) parallels that for determining priority of invention in an interference under 35 U.S.C. 102(g), it does not necessarily follow that Rule 131 practice is controlled by interference law. To the contrary, "[t]he parallel to interference practice found in Rule 131(b) should be recognized as one of convenience rather than necessity." *Id.* at 1353, 444 F.2d at 580, 170 USPQ at 267. Thus, "the 'conception' and 'reduction to practice' which must be established under the rule need not be the same as what is required in the 'interference' sense of those terms." *Id.*; accord, *In re Borkowski,* 505 F.2d 713, 718-19, 184 USPQ 29, 33 (CCPA 1974).

One difference is that in interference practice a reduction to practice requires a proof that a utility was known, whereas under 37 CFR 1.131 practice, proof of a utility must be shown only if the reference discloses a utility. *In re Wilkinson,* 304 F.2d 673, 134 USPQ 171 (CCPA 1962); *In re Moore,* 444 F.2d 572, 170 USPQ 260 (CCPA 1971). Where proof of utility is required, whether or not test results are required to establish the utility of the subject matter in question depends on the facts of each case. The ultimate issue is whether the evidence is such that one of ordinary skill in the art would be satisfied to a reasonable certainty that the subject matter necessary to antedate the reference possessed the alleged utility. *In re Blake,* 358 F.2d 750, 149 USPQ 217 (CCPA 1966). Also, in interference practice, conception, reasonable diligence, and reduction to practice require corroboration, whereas averments made in a 37 CFR 1.131 affidavit

or declaration do not require corroboration; an applicant may stand on his or her own affidavit or declaration if he or she so elects. *Ex parte Hook*, 102 USPQ 130 (Bd. App. 1953).

Form paragraph 7.59 or 7.63 (both reproduced in MPEP § 715) may be used where insufficient evidence is included in a 37 CFR 1.131 affidavit.

## 715.07(a) Diligence

Where conception occurs prior to the date of the reference, but reduction to practice is afterward, it is not enough merely to allege that applicant or patent owner had been diligent. *Ex parte Hunter*, 1889 C.D. 218, 49 O.G. 733 (Comm'r Pat. 1889). Rather, applicant must show evidence of facts establishing diligence.

In determining the sufficiency of a 37 CFR 1.131 affidavit or declaration, diligence need not be considered unless conception of the invention prior to the effective date is clearly established, since diligence comes into question only after prior conception is established. *Ex parte Kantor*, 177 USPQ 455 (Bd. App. 1958).

What is meant by diligence is brought out in *Christie v. Seybold*, 1893 C.D. 515, 64 O.G. 1650 (6th Cir. 1893). In patent law, an inventor is either diligent at a given time or he is not diligent; there are no degrees of diligence. An applicant may be diligent within the meaning of the patent law when he or she is doing nothing, if his or her lack of activity is excused. Note, however, that the record must set forth an explanation or excuse for the inactivity; the USPTO or courts will not speculate on possible explanations for delay or inactivity. See *In re Nelson*, 420 F.2d 1079, 164 USPQ 458 (CCPA 1970). Diligence must be judged on the basis of the particular facts in each case. See MPEP § 2138.06 for a detailed discussion of the diligence requirement for proving prior invention.

Under 37 CFR 1.131, the critical period in which diligence must be shown begins just prior to the effective date of the reference or activity and ends with the date of a reduction to practice, either actual or constructive (i.e., filing a United States patent application). Note, therefore, that only diligence before reduction to practice is a material consideration. The "lapse of time between the completion or reduction to practice of an invention and the filing of an application thereon" is not relevant to an affidavit or declara-

tion under 37 CFR 1.131. See *Ex parte Merz*, 75 USPQ 296 (Bd. App. 1947).

Form paragraph 7.62 (reproduced in MPEP § 715) may be used to respond to a 37 CFR 1.131 affidavit where diligence is lacking.

## 715.07(b) Interference Testimony Sometimes Used

In place of an affidavit or declaration the testimony of the applicant in an interference may be sometimes used to antedate a reference in lieu of 37 CFR 1.131 affidavit or declaration.

The part of the testimony to form the basis of priority over the reference should be pointed out. *Ex parte Bowyer*, 1939 C.D. 5, 42 USPQ 526 (Comm'r Pat. 1939).

## 715.07(c) Acts Relied Upon Must Have Been Carried Out in This Country or a NAFTA or WTO Member Country

*35 U.S.C. 104. Invention Made Abroad.*

(a) IN GENERAL.—

(1) PROCEEDINGS.—In proceedings in the Patent and Trademark Office, in the courts, and before any other competent authority, an applicant for a patent, or a patentee, may not establish a date of invention by reference to knowledge or use thereof, or other activity with respect thereto, in a foreign country other than a NAFTA country or a WTO member country, except as provided in sections 119 and 365 of this title.

(2) RIGHTS.—If an invention was made by a person, civil or military—

(A) while domiciled in the United States, and serving in any other country in connection with operations by or on behalf of the United States,

(B) while domiciled in a NAFTA country and serving in another country in connection with operations by or on behalf of that NAFTA country, or

(C) while domiciled in a WTO member country and serving in another country in connection with operations by or on behalf of that WTO member country, that person shall be entitled to the same rights of priority in the United States with respect to such invention as if such invention had been made in the United States, that NAFTA country, or that WTO member country, as the case may be.

(3) USE OF INFORMATION.—To the extent that any information in a NAFTA country or a WTO member country concerning knowledge, use, or other activity relevant to proving or disproving a date of invention has not been made available for use in a proceeding in the Patent and Trademark Office, a court, or any other competent authority to the same extent as such information could be made available in the United States, the Director,

court, or such other authority shall draw appropriate inferences, or take other action permitted by statute, rule, or regulation, in favor of the party that requested the information in the proceeding.

    (b)  DEFINITIONS.—As used in this section—

        (1)  The term "NAFTA country" has the meaning given that term in section 2(4) of the North American Free Trade Agreement Implementation Act; and

        (2)  The term "WTO member country" has the meaning given that term in section 2(10) of the Uruguay Round Agreements Act.

The 37 CFR 1.131 affidavit or declaration must contain an allegation that the acts relied upon to establish the date prior to the reference or activity were carried out in this country or in a NAFTA country or WTO member country. See 35 U.S.C. 104.

Under 37 CFR 1.131(a), which provides for the establishment of a date of completion of the invention in a NAFTA or WTO member country, as well as in the United States, an applicant can establish a date of completion in a NAFTA member country on or after December 8, 1993, the effective date of section 331 of Public Law 103-182, the North American Free Trade Agreement Act, and can establish a date of completion in a WTO member country other than a NAFTA member country on or after January 1, 1996, the effective date of section 531 of Public Law 103-465, the Uruguay Round Agreements Act. Acts occurring prior to the effective dates of NAFTA or URAA may be relied upon to show completion of the invention; however, a date of completion of the invention may not be established under 37 CFR 1.131 before December 8, 1993 in a NAFTA country or before January 1, 1996 in a WTO country other than a NAFTA country.

## 715.07(d)  Disposition of Exhibits

Exhibits, such as those filed as part of an affidavit or declaration under 37 CFR 1.131, must comply with the requirements of 37 CFR 1.91 to be entered into an application file. Exhibits that do not comply with the requirements of 37 CFR 1.91 will be disposed of or returned to applicant at the discretion of the Office. See also MPEP § 608.03(a).

## 715.08  Passed Upon by Primary Examiner

The question of sufficiency of affidavits or declarations under 37 CFR 1.131 should be reviewed and decided by a primary examiner.

Review of questions of formal sufficiency and propriety are by petition. Such petitions are answered by the Technology Center Directors (MPEP § 1002.02(c)).

Review on the merits of a 37 CFR 1.131 affidavit or declaration is by appeal to the Board of Patent Appeals and Interferences.

## 715.09  Seasonable Presentation

Affidavits or declarations under 37 CFR 1.131 must be timely presented in order to be admitted. Affidavits and declarations submitted under 37 CFR 1.131 and other evidence traversing rejections are considered timely if submitted:

    (A)  prior to a final rejection;

    (B)  before appeal in an application not having a final rejection; or

    (C)  after final rejection <u>and</u> submitted

        (1)  with a first reply after final rejection for the purpose of overcoming a new ground of rejection or requirement made in the final rejection, or

        (2)  with a satisfactory showing under 37 CFR 1.116(b) or 37 CFR 1.195, or

        (3)  under 37 CFR 1.129(a).

All admitted affidavits and declarations are acknowledged and commented upon by the examiner in his or her next succeeding action.

For affidavits or declarations under 37 CFR 1.131 filed after appeal, see 37 CFR 1.195 and MPEP § 1211.02.

Review of an examiner's refusal to enter an affidavit as untimely is by petition and not by appeal to the Board of Patent Appeals and Interferences. *In re Deters*, 515 F.2d 1152, 185 USPQ 644 (CCPA 1975); *Ex parte Hale*, 49 USPQ 209 (Bd. App. 1941). See MPEP § 715.08 regarding review of questions of propriety of 37 CFR 1.131 affidavits and declarations.

## 715.10  Review of Affidavit or Declaration for Evidence of Prior Public Use or Sale or Failure to Disclose Best Mode

Any affidavits or declarations submitted under 37 CFR 1.131 and the accompanying evidence must be reviewed carefully by the examiner in order to determine whether they show that the claimed invention

was "in public use" or "on sale" in this country more than one year prior to the effective filing date of the application, which acts constitute a statutory bar under 35 U.S.C. 102(b). Although the rejection based on the reference(s) or activity sought to be antedated may actually be overcome by such an affidavit or declaration, the effect of the applicant's prior "public use" or "on sale" activities may not be overcome under 37 CFR 1.131. See MPEP § 2133.03 regarding rejections based on "public use" and "on sale" statutory bars.

Where the 37 CFR 1.131 evidence relies on an embodiment of the invention not disclosed in the application, the question of whether the application includes the "best mode" must be considered. However, a "best mode" rejection should not be made unless the record, taken as a whole, establishes by a preponderance of the evidence that applicant's specification has not set forth the best mode contemplated by the inventor of carrying out the invention. See MPEP § 2165 - § 2165.04 regarding the best mode requirement of the first paragraph of 35 U.S.C. 112.

# 716    Affidavits or Declarations Traversing  Rejections, 37 CFR 1.132

*37 CFR 1.132.   Affidavits or declarations traversing rejections or objections.*

When any claim of an application or a patent under reexamination is rejected or objected to, any evidence submitted to traverse the rejection or objection on a basis not otherwise provided for must be by way of an oath or declaration under this section.

It is the responsibility of the primary examiner to personally review and decide whether affidavits or declarations submitted under 37 CFR 1.132 for the purpose of traversing grounds of rejection are responsive to the rejection and present sufficient facts to overcome the rejection.

This rule sets forth the general policy of the Office consistently followed for a long period of time of receiving affidavit evidence traversing rejections or objections. All affidavits or declarations presented which do not fall within or under other specific rules are to be treated or considered as falling under this rule.

Form paragraph 7.65 or 7.66 and any of form paragraphs 7.66.01 through 7.66.05, as appropriate, should be used to comment on a 37 CFR 1.132 affidavit or declaration.

¶ 7.65 *Affidavit or Declaration Under 37 CFR 1.132: Effective To Withdraw Rejection*

The [1] under 37 CFR 1.132 filed [2] is sufficient to overcome the rejection of claim [3] based upon [4].

**Examiner Note:**

1.    In bracket 1, insert either --affidavit-- or --declaration--.

2.    In bracket 2, insert the filing date of the affidavit or declaration.

3.    In bracket 3, insert the affected claim or claims.

4.    In bracket 4, indicate the rejection that has been overcome, including the statutory grounds, e.g.: insufficiency of disclosure under 35 U.S.C. 112, first paragraph; lack of utility under 35 U.S.C. 101; inoperativeness under 35 U.S.C. 101; a specific reference applied under 35 U.S.C. 103; etc.  See MPEP § 716.

¶ 7.66 *Affidavit or Declaration Under 37 CFR 1.132: Insufficient*

The [1] under 37 CFR 1.132 filed [2] is insufficient to overcome the rejection of claim [3] based upon [4] as set forth in the last Office action because:

**Examiner Note:**

1.    In bracket 1, insert either --affidavit-- or --declaration--.

2.    In bracket 2, insert the filing date of the affidavit or declaration.

3.    In bracket 3, insert the claim or claims affected.

4.    In bracket 4, indicate the rejection that has not been overcome, including the statutory grounds, i.e.: insufficiency of disclosure under 35 U.S.C. 112, first paragraph; lack of utility and/or inoperativeness under 35 U.S.C. 101; a specific reference applied under 35 U.S.C. 103; etc. See MPEP § 716.

5.    Following this form paragraph, set forth the reasons for the insufficiency; e.g., categories include: --untimely--; --fails to set forth facts--; --facts presented are not germane to the rejection at issue--;--showing is not commensurate in scope with the claims--; etc. See MPEP § 716. Also include a detailed explanation of the reasons why the affidavit or declaration is insufficient.  Any of form paragraphs 7.66.01 - 7.66.05 may be used, as appropriate.

¶ 7.66.01 *Reason Why Affidavit or Declaration Under 37 CFR 1.132 Is Insufficient: Affiant Has Never Seen Invention Before*

It includes statements which amount to an affirmation that the affiant has never seen the claimed subject matter before. This is not relevant to the issue of nonobviousness of the claimed subject matter and provides no objective evidence thereof.  See MPEP § 716.

**Examiner Note:**

1.    This form paragraph must be preceded by form paragraph 7.66.

2.    A full explanation must be provided, if appropriate.

¶ 7.66.02 *Reason Why Affidavit or Declaration Under 37 CFR 1.132 Is Insufficient: Invention Works as Intended*

It includes statements which amount to an affirmation that the claimed subject matter functions as it was intended to function.

# EXHIBIT 4

| | Application No. | Applicant(s) | |
|---|---|---|---|
| ***Notice of Allowability*** | 09/918,156 | BARANY ET AL. | |
| | **Examiner** | **Art Unit** | |
| | Kenneth R Horlick | 1637 | |

**-- The MAILING DATE of this communication appears on the cover sheet with the correspondence address--**

All claims being allowable, PROSECUTION ON THE MERITS IS (OR REMAINS) CLOSED in this application. If not included herewith (or previously mailed), a Notice of Allowance (PTOL-85) or other appropriate communication will be mailed in due course. **THIS NOTICE OF ALLOWABILITY IS NOT A GRANT OF PATENT RIGHTS.** This application is subject to withdrawal from issue at the initiative of the Office or upon petition by the applicant. See 37 CFR 1.313 and MPEP 1308.

1. ☒ This communication is responsive to *the response filed 11/12/03*.

2. ☒ The allowed claim(s) is/are *1-10 and 55-70 (final claims 1-26)*.

3. ☒ The drawings filed on *30 July 2001* are accepted by the Examiner.

4. ☐ Acknowledgment is made of a claim for foreign priority under 35 U.S.C. § 119(a)-(d) or (f).

     a) ☐ All    b) ☐ Some*    c) ☐ None   of the:

        1. ☐ Certified copies of the priority documents have been received.

        2. ☐ Certified copies of the priority documents have been received in Application No. _____ .

        3. ☐ Copies of the certified copies of the priority documents have been received in this national stage application from the International Bureau (PCT Rule 17.2(a)).

     * Certified copies not received: _____.

5. ☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. § 119(e) (to a provisional application) since a specific reference was included in the first sentence of the specification or in an Application Data Sheet. 37 CFR 1.78.

     (a) ☐ The translation of the foreign language provisional application has been received.

6. ☒ Acknowledgment is made of a claim for domestic priority under 35 U.S.C. §§ 120 and/or 121 since a specific reference was included in the first sentence of the specification or in an Application Data Sheet. 37 CFR 1.78.

Applicant has THREE MONTHS FROM THE "MAILING DATE" of this communication to file a reply complying with the requirements noted below. Failure to timely comply will result in ABANDONMENT of this application. **THIS THREE-MONTH PERIOD IS NOT EXTENDABLE.**

7. ☐ A SUBSTITUTE OATH OR DECLARATION must be submitted. Note the attached EXAMINER'S AMENDMENT or NOTICE OF INFORMAL PATENT APPLICATION (PTO-152) which gives reason(s) why the oath or declaration is deficient.

8. ☐ CORRECTED DRAWINGS ( as "replacement sheets") must be submitted.

     (a) ☐ including changes required by the Notice of Draftsperson's Patent Drawing Review ( PTO-948) attached

        1) ☐ hereto or 2) ☐ to Paper No. _____.

     (b) ☐ including changes required by the proposed drawing correction filed _____, which has been approved by the Examiner.

     (c) ☐ including changes required by the attached Examiner's Amendment / Comment or in the Office action of Paper No. _____.

     Identifying indicia such as the application number (see 37 CFR 1.84(c)) should be written on the drawings in the front (not the back) of each sheet. Replacement sheet(s) should be labeled as such in the margin according to 37 CFR 1.121(d).

9. ☐ DEPOSIT OF and/or INFORMATION about the deposit of BIOLOGICAL MATERIAL must be submitted. Note the attached Examiner's comment regarding REQUIREMENT FOR THE DEPOSIT OF BIOLOGICAL MATERIAL.

**Attachment(s)**

| | | |
|---|---|---|
| 1 ☐ Notice of References Cited (PTO-892) | | 5 ☐ Notice of Informal Patent Application (PTO-152) |
| 2 ☐ Notice of Draftperson's Patent Drawing Review (PTO-948) | | 6 ☐ Interview Summary (PTO-413), Paper No._____ . |
| 3 ☐ Information Disclosure Statements (PTO-1449 or PTO/SB/08), Paper No. _____ | | 7 ☒ Examiner's Amendment/Comment |
| 4 ☐ Examiner's Comment Regarding Requirement for Deposit of Biological Material | | 8 ☐ Examiner's Statement of Reasons for Allowance |
| | | 9 ☐ Other     . |

Kenneth R Horlick
Primary Examiner
Art Unit: 1637

U.S. Patent and Trademark Office
PTOL-37 (Rev. 11-03)                        **Notice of Allowability**                        Part of Paper No. 1

C001279

Application/Control Number: 09/918,156                                        Page 2
Art Unit: 1637

1.     The terminal disclaimer filed on 04/01/03 disclaiming the terminal portion of any

patent granted on this application which would extend beyond the expiration date of

6,027,889 has been reviewed and is accepted.  The terminal disclaimer has been

recorded.

2.     In view of the papers filed 01/27/03, the inventorship in this nonprovisional

application has been changed by the deletion of Phillip Belgrader.

       The application will be forwarded to the Office of Initial Patent Examination

(OIPE) for issuance of a corrected filing receipt, and correction of the file jacket and

PTO PALM data to reflect the inventorship as corrected.

3.     In view of the papers filed 04/01/03, it has been found that this nonprovisional

application, as filed, through error and without deceptive intent, improperly set forth the

inventorship, and accordingly, this application has been corrected in compliance with 37

CFR 1.48(a).  The inventorship of this application has been changed by addition of

George Barany and Robert P. Hammer.

       The application will be forwarded to the Office of Initial Patent Examination

(OIPE) for issuance of a corrected filing receipt, and correction of the file jacket and

PTO PALM data to reflect the inventorship as corrected.

Application/Control Number: 09/918,156                                           Page 3
Art Unit: 1637

4.      Any inquiry concerning this communication or earlier communications from the

examiner should be directed to Kenneth R Horlick whose telephone number is 703-308-

3905.  The examiner can normally be reached on Monday-Thursday 6:30AM-5:00 PM.

        If attempts to reach the examiner by telephone are unsuccessful, the examiner's

supervisor, Gary  Benzion can be reached on 703-308-1119.  The fax phone numbers

for the organization where this application or proceeding is assigned are 703-308-4242

for regular communications and 703-308-0294 for After Final communications.

        Any inquiry of a general nature or relating to the status of this application or

proceeding should be directed to the receptionist whose telephone number is 703-308-

0196.

                                        Kenneth R Horlick  Ph.D.
                                        Primary Examiner
                                        Art Unit 1637

***
February 23, 2004

# EXHIBIT 5

# REDACTED IN ITS ENTIRETY