**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**


CORNELL UNIVERSITY, CORNELL        :
RESEARCH FOUNDATION, INC., LIFE    :
TECHNOLOGIES CORPORATION, and     :
APPLIED BIOSYSTEMS, LLC,           :
                                        :
               Plaintiffs,         :       C. A. No. 10-433-LPS-MPT
                                        :
       v.                                :
                                        :
ILLUMINA, INC.,                       :
                                        :
              Defendant.        :


**MEMORANDUM ORDER**

**I.     INTRODUCTION**

       Cornell University and Cornell Research Foundation, Inc. (referred to collectively

as "Cornell" and individually as "Cornell University" and "CRF") are plaintiffs in this

action, jointly with Life Technologies Corporation and Applied Biosystems, LLC

(collectively "Life Tech").  On May 24, 2010, plaintiffs brought this lawsuit against

defendant Illumina, Inc. ("Illumina") alleging infringement of certain patents.[1]  The parties

entered into a settlement agreement effective April 14, 2017 (the "Settlement

Agreement"),[2] and a stipulation of dismissal pursuant to the Settlement Agreement (the

"Dismissal") was entered on April 24, 2017.[3]  Shortly after the dismissal Cornell filed a

Cornell's Motion to Vacate Stipulation of Dismissal Pursuant to Rule 60 and to Rescind

Settlement Documents for Fraud or, Alternatively, for Leave to Conduct Discovery

---

[1] D.I. 1.
[2] D.I. 606-2.
[3] D.I. 598.

("Motion to Vacate").[4] Life Tech then filed a Cross-Motion to Dismiss or Stay Cornell's Motion and to Compel Mediation or Arbitration ("Cross-Motion").[5] This Memorandum Order addresses Life Tech's Cross-Motion.

In its Motion to Vacate, Cornell seeks vacatur of the Dismissal entered in this action because it was submitted pursuant to the Settlement Agreement with Life Tech and Illumina that Cornell was purportedly fraudulently induced to agree to.[6] It further seeks rescission of the Settlement Agreement and an April 27, 2017 sublicense agreement entered into between Life Tech and Illumina (the "Sublicense Agreement") that was also part of the same allegedly fraudulent scheme.[7] Alternatively, if the court believes more evidence is needed to support Cornell's requested relief, it asks for the opportunity to conduct discovery, which would also help determine to what degree Illumina conspired in Life Tech's allegedly fraudulent scheme.[8]

In its Cross-Motion, Life Tech asserts the parties' 2010 New Exclusive License Agreement ("NELA") and Settlement Agreement each require the disputes raised in the Motion to Vacate be submitted to mediation or arbitration.[9] Based on that assertion, Life Tech requests Cornell be ordered to mediate or arbitrate and the Motion to Vacate be

---

[4] D.I. 602.

[5] D.I. 625.

[6] D.I. 603 at 1.

[7] *Id.* Cornell also alleges a suit brought by Illumina against Life Tech in the Southern District of California (the "Illumina California Action") which Life Tech settled very soon after this case was dismissed is an additional part of Life Tech's alleged fraudulent scheme. *Id.* at 3.

[8] *Id.* at 3.

[9] D.I. 626 at 1. The NELA was executed on February 22, 2010. D.I. 606-1 at p. 1.

dismissed or stayed.[10]

## II.    LIFE TECH'S CROSS-MOTION

In its Motion to Vacate, Cornell alleges Life Tech fraudulently induced it to enter

the Settlement Agreement and consent to the Dismissal pursuant to that agreement,

entered into the allegedly improper Sublicense Agreement, and exchanged consideration

with Illumina for settlement of this action outside the scope of the Settlement

Agreement.[11]  In its opposition to the Motion to Vacate, Life Tech disputes Cornell's

allegations and purportedly demonstrates it acted entirely within the scope of its

exclusive, discretionary rights under the NELA to control and settle litigation with Illumina

and to grant sublicenses on any terms.[12]  Life Tech argues, however, to the extent there

is any dispute concerning whether it acted within its rights by entering into these

agreements, those disputes must be submitted to mediation or arbitration pursuant to the

NELA and the Settlement Agreement.[13]

Life Tech contends the NELA between Cornell and Life Tech contains a valid,

enforceable, arbitration clause which provides that, except in the case of royalty

disputes, Cornell gave up its right to "proceed with direct judicial remedies" against Life

Tech.[14]

_____

[10] D.I. 626 at 2.
[11] *Id.* at 1 (citing D.I. 603 at 12-19).
[12] *Id.*
[13] *Id.*
[14] *Id.* at 2 (citing 606-1 at §§ 16.1-16.2).  Illumina filed a response to the Cross-Motion stating it takes no position on the motion to the extent that it seeks mediation or arbitration to resolve the dispute between Life Tech and Cornell over whether Life Tech's conduct in making the Settlement Agreement and Sublicense Agreement with Illumina impaired Cornell's rights under the NELA.  D.I. 647 at 1.  It states the agreement between Cornell and Life Tech conferred authority to Life Tech to control the

Section 16.1 of the NELA provides:

> All disputes over the meaning and interpretation of this Agreement shall be resolved by conciliation and mediation, and if mediation is unsuccessful, then disputes shall be finally settled by binding arbitration according to the procedures set forth at Appendix C.[15]

Section 16.2 of the NELA provides:

> Notwithstanding Section 16.1, [Cornell] reserves the right and power to proceed with direct judicial remedies against LICENSEE without conciliation, mediation, or arbitration for breach of the royalty payment and sales reporting provisions of this Agreement after giving written notice of such breach to LICENSEE followed by an opportunity period of sixty (60) days in which to cure such breach. In collecting overdue royalty payments and securing compliance with reporting obligations, [Cornell] may use all judicial remedies available.[16]

Life Tech also maintains the Settlement Agreement requires arbitration of any

disputes arising thereunder, including those relating to its enforceability, validity,

---

litigation against Illumina and enter into the agreements with it. *Id.* Illumina notes it is not a party to the NELA and is not a party to the dispute between Cornell and Life Tech about its terms. *Id.* Illumina does, however, oppose the Cross-Motion to the extent that it seeks to compel Illumina to arbitrate or have its own rights determined in arbitration. *Id.* Illumina states is not a party to the NELA and is not bound by its terms. *Id.* Arbitration may not be compelled unless there is a valid agreement to arbitrate between the parties and the dispute falls withing the scope of that agreement. *Id.* (citing *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513-523 (3d Cir. 2009)). Illumina contends the arbitration provision in the Settlement Agreement concerns only disputes between "Life Tech and Cornell, on the one hand, and Illumina on the other hand." *Id.* (quoting D.I. 606-2 at § 9.2(a)). Similarly, the Sublicense Agreement between Life Tech and Illumina concerns disputes "between [Life Tech], on the one hand, and Illumina on the other hand." *Id.* (quoting D.I. 606-3 at § 9.2(a)). Illumina argues the dispute raised by Cornell is between it and its co-plaintiff Life Tech. *Id.* Illumina avers that it and Life Tech agree that the Settlement Agreement, as well as the separate Sublicense Agreement, are legally valid contracts; there is no dispute between them on that point. *Id.* at 1-2. Illumina urges the court to deny the Cross-Motion insofar as it seeks mediation or arbitration of the validity of the Settlement Agreement and Sublicense Agreement and Illumina's rights under those agreements. *Id.* at 2.

[15] D.I. 606-1 at § 16.1.

[16] *Id.* at § 16.2.

interpretation, or breach.[17]

Section 9.2(a) of the Settlement Agreement provides, in relevant part:

> Any dispute, controversy or claim arising out of or relating to this Agreement or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, shall be determined by arbitration between Life Tech and Cornell, on the one hand, and Illumina on the other hand.[18]

## A.    Governing Law

The Federal Arbitration Act (the "FAA") provides that written agreements to arbitrate disputes "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of a contract."[19]  "The FAA mandates that district courts shall direct parties to proceed to arbitration on issues for which arbitration has been agreed, and to stay proceedings while arbitration is pending."[20]  "[D]istrict courts may dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration."[21]  Section 3 of the FAA "allows litigants already in federal court to invoke" enforceable arbitration agreements.[22]  Where there is a valid and enforceable arbitration clause, courts should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.  Doubts should be resolved in favor of coverage."[23]  When an arbitration

_____

[17] D.I. 626 at 2 (citing 606-2 at § 9.2(a)).

[18] D.I. 606-2 at § 9.2(a).

[19] 9 U.S.C. § 2.

[20] *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del. 2004) (citations omitted).

[21] *Id.* (citations omitted).

[22] *Arthur Andersen LLC v. Carlisle*, 556 U.S. 624, 630 (2009).

[23] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (citation and internal quotation marks omitted); *see also Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 475 U.S. 643, 24-25 (1983) ("[A]ny doubts concerning the scope

5

agreement provides the basis for a motion, "the court may 'engage in a limited review [of the document] to ensure the dispute is arbitrable' and, if appropriate, enter an order to compel or enjoin arbitration."[24]  "Because arbitration is a matter of contract, before compelling arbitration pursuant to the Federal Arbitration Act, a court must determine that (a) a valid agreement to arbitrate exists, and (2) the particular dispute falls within the scope of that agreement."[25]  Delaware courts employ a two-part procedure for determining whether a claim is arbitrable under an arbitration clause:

> First, the court must determine whether the arbitration clause is broad or narrow in scope.  Second, the court must apply the relevant scope of the provision to the asserted legal claim to determine whether the claim falls within the scope of the contractual provisions that require arbitration.  If the court is evaluating a narrow arbitration clause, it will ask if the cause of action pursued in court directly relates to a right in the contract.  If the arbitration clause is broad in scope, the court will defer to arbitration on any issues that touch on contract rights or contract performance.[26]

Also, "[t]he party seeking to avoid arbitration bears the burden of proving the invalidity of

of arbitrable issues should be resolved in favor of arbitration . . . ."); *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1121 (Del. Ch. 2010) ("In a case where there is any rational basis for doubt about [substantive arbitrability], the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her.") (alteration in original) (citation and quotation marks omitted).

[24] *Wright v. Rent-A-Center E., Inc.*, C.A. No. 08-956-GMS, 2009 WL 4277243, at *2 (D. Del. Nov. 30, 2009) (alteration in original) (quoting *John Hancock Mut. Life Ins. Co. v. Olick*, 151 F.3d 132, 137 (3d Cir. 1998)).

[25] *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir 2009) (citations omitted); *see also Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009) (same, citing *Kirleis*, 560 F.3d at 160).

[26] *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 155 (Del. 2002); *see also Local 827, Int'l Bhd. of Elec. Workers, AFL-CIO v. Verizon New Jersey, Inc.*, 458 F.3d 305, 310 (3d Cir. 2006) ("Where the arbitration provision is narrowly crafted, 'we cannot presume, as we might if it were drafted broadly, that the parties here agreed to submit all disputes to arbitration[.]'") (quoting *Trap Rock Indus. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 844, 888 n.5 (3d Cir. 1992)).

an arbitration agreement."[27]

## B.    Discussion

Life Tech maintains the first requirement, whether the parties entered into an agreement to arbitrate, is clear as to both the NELA and the Settlement Agreement.[28] Section 16.1 of the NELA provides that "[a]ll disputes over the meaning and interpretation" of the agreement "shall be resolved by conciliation and mediation . . . [or] binding arbitration."[29] Life Tech argues that, when negotiating the NELA, Cornell knew how to carve out exceptions to the arbitration clause, as evidenced by § 16.2 which reserved Cornell's right "to proceed with direct judicial remedies" against Life Tech "without conciliation, mediation, or arbitration for breach of the royalty payment and sales reporting provisions" of the NELA.[30] Life Tech states there are no exceptions to the arbitration clause for claims of fraud, the settlement of litigation, or otherwise.[31]

Cornell contends the arbitration clause in the NELA is too vague to be enforceable.[32] Section 16.1 provides that "disputes shall be finally settled by binding arbitration according to the procedures set forth at Appendix C."[33] Exhibit C, however, is a document titled "Licensed Products and Accessory Products"; it does not set forth arbitration procedures.[34] Cornell argues that because the NELA provides no guidance

---

[27] *Ins. Newsnet.com v. v. Pardine*, C.A. No. 1:11-CV-00286, 2011 WL 3423081, at *2 (M.D. Pa. Aug. 4, 2011) (citing *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 92 (2000)).
[28] D.I. 626 at 6.
[29] *Id.* (quoting D.I. 606-1 at § 16.1).
[30] *Id.* (quoting D.I. 606-1 at § 16.2).
[31] *Id.*
[32] D.I. 643 at 11.
[33] D.I. 606-1 at § 16.1.
[34] D.I. 606-1, Ex. C.

on how any arbitration is to be conducted, that clause is fatally vague, indeterminate, and unenforceable.[35]

Life Tech acknowledges that the NELA did not include the Appendix C referenced in § 16.1, stating the incorrect exhibit was included due to a "clerical error" in compiling the executed version of the NELA.[36]  In its opening brief, Life Tech cites the declaration of Rip Finst, in-house litigation counsel for Life Tech, stating his belief that the procedures for arbitration to which the parties intended to refer were attached to an earlier Amended and Restated Exclusive License Agreement which had a nearly identical arbitration clause.[37]

In her declaration, Valerie Cross Dorn, in-house counsel for Cornell University who was involved in the NELA negotiations, declares that:  during those negotiations none of several drafts of the agreement exchanged included the appendix of arbitration procedures referenced in § 16.1; at no time did the parties discuss or agree to any procedures for arbitration in connection with the NELA; and that the final executed version of the NELA also did not include the appendix referenced in § 16.1.[38]  Dorn states that Finst was not a participant in the communications regarding the NELA negotiations and could not know what the parties intended.[39]  Cornell reiterates,

---

[35] D.I. 643 at 11.

[36] D.I. 626 at 3 n.2.

[37] D.I. 624 (Finst Decl. at ¶¶ 1, 12 (citing IC Ex. 18)).  In addition to the parties' briefing, certain documents were submitted for *in camera* review to assist the court in its assessment of both pending motions.  Those documents are cited in this Memorandum Order as "IC Ex. __."

[38] D.I. 644 (Second Dorn Decl.) at ¶¶ 1, 5-7, 10-11.

[39] D.I. 644 at ¶ 8.  Finst represents that "[w]ith respect to the contract matters between Cornell and Life Tech that pre-date my employment with Life Tech, the facts provided [in his declaration] are based on information and belief, informed by knowledge

8

therefore, the NELA provides no guidance for its implementation or for how any arbitration would be conducted between the parties.[40]

Cornel maintains that for a contractual clause to be binding, it must address the material terms of the bargain clearly and definitely.[41] Cornell argues the failure to provide any guidance on any procedures or logistics for even basic issues, such as whether an entity would administer the arbitration, how to select an arbitrator, or where an arbitration would take place, renders the clause impossible to enforce.[42]

In its reply brief, Life Tech expanded on its contention that the NELA arbitration clause is enforceable despite the lack of an exhibit specifying arbitration procedures. In his declaration, Brian Griffith, Life Tech's Divisional Counsel for the Genetic Science Division and the Clinical & Next-Generation Sequencing Division, states the facts therein are based on his role and responsibilities with respect to the drafting of the NELA.[43] Griffith states the parties entered into the NELA as part of the resolution of a prior

---

and experience I obtained in my position and as part of my responsibilities for managing the Illumina litigation." D.I. 624 at ¶ 3.

[40] D.I. 643 at 12.

[41] *Id.* (citing *In re Radiology Assocs., Inc.*, Civ. A. No. 9001, 1990 WL 67839, at * 2 (Del. Ch. May 16, 1990) ("An agreement cannot be enforced if, among other things, material provisions of that agreement are uncertain or indefinite."); *Most Worshipful Prince Hall Grand Lodge of Fee & Accepted Masons of Delaware v. Hiram Grand Lodge Masonic Temple, Inc.*, (80 A.2d 294, 295 (Del. Ch. 1951) ("It is well settled that an agreement in order to be a legally binding agreement must be reasonably definite and certain in its terms.") (citation omitted); *Scarborough v. Delaware*, 945 A.2d 1103, 1112 (Del. 2008) ("As every first year law student learns, one of the central tenets of contract law is that a contract must be reasonably definite in its terms to be enforceable.") (citation omitted)).

[42] D.I. 643 at 12. As an example, Cornell imagines Life Tech could prevent Cornell from ever obtaining any relief in arbitration by refusing to agree to procedures to arbitrate. *Id.*

[43] D.I. 664 (Griffith Decl.) at ¶¶ 1-2.

arbitration between Life Tech and Cornell and that the NELA restated the parties' July 1, 2001 Amended and Restated Exclusive Licence Agreement ("July 1, 2001 Licence Agreement") in large part, to specifically address dealings with Illumina.[44]  According to Griffith, the NELA also adjusted how the parties would handle sublicenses with, and the initiation of litigation against, third parties other than Illumina and compensation relating thereto.[45]  The agreement also took into account certain changes in ownership of the patents that were the subject of the NELA.[46]  Section 1.1 of the NELA identifies the July 1, 2001 License Agreement as the predecessor agreement being replaced by the NELA.[47]  Provisions of the July 1, 2001 License Agreement that were not changed or renegotiated were intended by the parties to be carried over from that agreement to the NELA.[48]  Griffith states the arbitration clause contained in § 16.1 of the NELA was one such provision that was carried over.[49]  The only change in the arbitration clause of the NELA (§ 16.1) over the arbitration clause of the July 1, 2001 Licence Agreement (also § 16.1) is the appendix letter citation.[50]  The July 1, 2001 License Agreement refers to Appendix B for the arbitration procedures and the NELA refers to Appendix C.[51]  Griffith explains the change from Appendix B was because the NELA included additional appendices, listing Life Tech's affiliates and listing products that were subject to a royalty

---

[44] D.I. 664 at ¶ 5.
[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at ¶ 6.
[49] *Id.*
[50] *Id.* at ¶ 7.
[51] *Id.*

obligation not included in the prior agreement.[52] Thus, the arbitration procedures from

the July 1, 2001 Licence Agreement (Appendix B) should have been included as an

appendix to the NELA.[53] Griffith states he was responsible for compiling the final version

of the NELA with appendices and, having reviewed the final NELA archived in his files,

notes the arbitration procedures were inadvertently omitted from the final agreement.[54]

He avers this omission was an oversight, not intentional, and was likely due to the

urgency to execute the NELA to meet a reporting deadline set by the arbitrator.[55] Life

Tech contends none of Cornell's arguments rebut Griffith's conclusion or explain why

§ 16.1 of the NELA would refer to procedures in an appendix had none been intended.[56]

Alternatively, Life Tech argues even if no arbitration procedures had been

provided, the FAA or state law would provide gap fillers for an agreement to arbitrate.[57]

For instance, in *Marzano v. Proficio Mortg. Ventures, LLC,*[58] the arbitration clause at

issue stated, in relevant part:

> THE PARTIES HERETO WAIVE LITIGATION AND TRIAL BY JURY IN
> ANY ACTION OR PROCEEDING TO WHICH THEY MAY BE PARTIES,
> ARISING OUT OF, OR IN ANY WAY PERTAINING OR RELATING TO,
> THIS AGREEMENT. . . . ALL PROCEEDINGS WILL BE MANAGED
> THROUGH BINDING ARBITRATION.[59]

In *Marzano*, the plaintiffs argued "the arbitration provision is 'hopelessly vague and

---

[52] *Id.*
[53] *Id.*
[54] *Id.* at ¶ 8.
[55] D.I. 664 at ¶ 8 (citing IC Ex. 27).
[56] D.I. 663 at 7.
[57] *Id.* Delaware has adopted its own version of the Uniform Arbitration Act. 10
*Del. C.* § 5701 *et seq.*
[58] 942 F. Supp. 2d 781 (N.D. Ill. 2013).
[59] *Id.* at 791.

indefinite' because it lacks procedural and substantive rules, time limitations, cost information, and venue provisions."[60]  The plaintiffs maintained "that the vagueness gives [the defendant] complete discretion to 'demand arbitration anywhere at any time at any cost under any set of rules or no rules at all.'"[61]  The court rejected that argument finding that "any matters of uncertainty in the . . . arbitration provision can be made complete under the FAA and the [state] Uniform Arbitration Act."[62]  Life Tech argues, therefore, Cornell cannot avoid its purported agreement to arbitrate by relying on a mere oversight in failing to attach to the NELA previously agree-upon procedures.[63]

The court agrees with Life Tech that the NELA contains a valid arbitration clause. First, as Life Tech notes, the inclusion of § 16.1 in the NELA, signifies the parties' agreement to mediate or arbitrate disputes relating thereto.  Next, § 1.1 of the NELA specifically identifies the July 1, 2001 License Agreement as being replaced by the NELA.[64]  Sections 16.1 of both the July 1, 2001 License agreement and the NELA, providing for mediation or arbitration, are identical with the exception of the appendix

---

[60] *Id.* at 792.
[61] *Id.* at 793.
[62] *Id.*; *see also Schulze & Burch Biscuit Co. v. Tree Top, Inc.*, 831 F.2d 709, 715-16 (7th Cir. 1987) (rejecting plaintiff's argument that an arbitration clause stating "ALL DISPUTES UNDER THIS TRANSACTION SHALL BE ARBITRATED IN THE USUAL MANNER" was too vague to be enforced where the FAA could supply missing details and noting "[the plaintiff] does not cite a case in which the court has found an arbitration clause fatally vague, nor has our research unearthed one"); *WeWork Cos. Inc. v. Zoumer*, No. 16-cv-457 (PKC), 2016 WL 1337280, at *5 (S.D.N.Y. Apr. 5, 2016) (holding "[t]he lack of specific terms governing the arbitration's procedure does not invalidate the agreement, considering that the FAA provides an objective method to fill gaps in arbitration agreements") (citing 9 U.S.C. § 5).
[63] D.I. 663 at 8.
[64] D.I. 606-1 at § 1.1.

designation specifying arbitration procedures.[65]  Dorn's statements that the parties had no negotiations with respect to arbitration procedures is consistent with Griffith's representation that provisions of the July 1, 2001 Licence Agreement that were not changed or renegotiated were intended to be carried over in the NELA.  The court concludes, therefore, the parties intended that the arbitration procedures set forth in Appendix B of the July 1, 2001 License Agreement were to govern any arbitration with respect to the NELA.  Furthermore, if that conclusion is incorrect, the FAA or state law would provide gap fillers for the NELA's agreement to arbitrate.[66]

Having determined the NELA contains an enforceable arbitration clause, the court must next determine whether the arbitration clause is broad or narrow and whether the parties' dispute falls within the scope of that clause.  Cornell argues that even if the arbitration clause in the NELA is deemed enforceable, it solely relates to disputes over the "meaning and interpretation" of that agreement.[67]  Section 16.1 of the NELA provides:

> All disputes over *the meaning and interpretation* of this Agreement shall be resolved by conciliation and mediation, and if mediation is unsuccessful, then disputes shall be finally settled by binding arbitration according to the procedures set forth at Appendix C.[68]

Cornell states courts have construed this type of limited arbitration clause as narrow in

---

[65] *See* IC Ex. 18 at § 16.1; D.I. 606-1 at § 16.1.
[66] None of the cases cited by Cornell involved arbitration clauses and Cornell has provided no cases in which an arbitration clause was found unenforceable due to vagueness.
[67] D.I. 643 at 13 (quoting D.I. 606-2 at § 16.1).
[68] D.I. 606-1 at ¶ 16.2 (emphasis added).

nature.[69]  Cornell contends that because the issues raised in the Motion to Vacate, namely Life Tech's allegedly fraudulent statements, actions, and omissions designed to induce Cornell into executing the Settlement Agreement and consenting to the Dismissal, are entirely outside the scope of the NELA's arbitration clause because they do not implicate the "meaning and interpretation" of the NELA, and, therefore, there is no obligation to arbitrate.[70]  It also contends Life Tech's argument that the NELA permits its purportedly fraudulent acts is a contrivance that in no way can be relied on to force this dispute into arbitration.[71]

Life Tech maintains Cornell's assertion that § 16.1 of the NELA is narrow and does not cover the dispute is contrary to decisions from the United States Supreme Court, the Third Circuit, and this court interpreting similar provisions.[72]  The court agrees

---

[69] D.I. 643 at 13-14 (citing *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 174 n.7 (3d Cir. 2014) (holding that an arbitration clause that "'implicate[s only] interpretation or performance of the contract per se,' . . does not sweep beyond the confines of the contract, and is therefore narrow in scope.") (alteration in original) (quoting *Sweet Dreams Unlimited, Inc. v. Dial-A-Mattress Intern., Ltd.*, 1 F.3d 639, 642 (7th Cir. 1993)); *Brown v. T-Ink, LLC*, C.A. No. 3190-VCP, 2007 WL 4302594, at *15 (Del. Ch. Dec. 4, 2007) (determining arbitration clause that "cover[ed] disputes between the parties that concern the 'interpretation or performance'" of an agreement was narrow and did not cover "extra-contractual claims, such as fraud or misrepresentation")).

[70] D.I. 643 at 14.

[71] *Id.*

[72] D.I. 663 at 2 (citing *AT&T Techs., Inc. v. Comm'cns Workers of Am.*, 475 U.S. 643, 650 (1986) ("Such a presumption [of arbitrability] is particularly applicable where the clause is *broad* as the one employed in this case, which provides for arbitration of 'any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder . . . .'") (emphasis added) (quoting *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 584-85 (1960)); *United Steel v. E.I. DuPont de Nemours & Co.*, 549 F. Supp. 2d 585, 590 (D. Del. 2008) ("The Court concludes that the arbitration clause of the CBA at issue, which provides for the arbitration of '[a]ny question as to the interpretation, or any alleged violation of the provision of this Agreement,' is clearly *'broad'* for the purpose of determining

with Life Tech.

The court finds Cornell's reliance on the Third Circuit's *CardioNet* decision unpersuasive. There, the plaintiffs were providers of medical outpatient telemetry ("OTC") services that permitted physicians to monitor cardiac arrhythmias on an outpatient basis.[73] The defendant was an insurer that reimbursed providers for that service for several years pursuant to agreements with the providers.[74] In 2012, the insurer terminated its coverage of OTC explaining in a Physician Update that it considered the services "experimental, investigational, and unproven."[75] This action prompted the plaintiffs' suit against the insurer asserting claims on their own behalf ("direct claims") and claims "as assignees of the rights and claims of patients" ("derivative claims").[76] The direct claims were based on purported harm stemming from the insurer's distribution of the Physician Update, alleging that distribution constituted tortious interference with current and prospective business relationships, misleading and deceptive commercial or promotion in violation of the Lanham Act, and trade libel.[77] The derivative claims alleged violations of ERISA, or to the extent the claims were found to not arise from or were exempt from ERISA, that the insurer breached its contractual

---

arbitrability.") (emphasis added), *aff'd*, 338 Fed. App'x 209 (3d Cir. 2009); *E.M. Diagnostic Sys., Inc. v. Local 169, Int'l Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 812 F.2d 91, 92, 95 (3d Cir. 1987) (interpreting clause requiring arbitration of "[a]ny dispute arising out of a claimed violation of this Agreement" as a *"broad"* arbitration clause) (emphasis added)).
   [73] *CardioNet*, 751 F.3d at 168.
   [74] *Id.* at 169.
   [75] *Id.*
   [76] *Id.* at 169-70.
   [77] *Id.* at 170.

obligation by failing to cover medically necessary services.[78]  The insurer sought to compel arbitration on all its claims.[79]

The Third Circuit found the direct claims were not subject to arbitration because their resolution "does not require construction of, or even reference to, any provision in the Agreement [with the device providers]."[80]  The court agrees with Life Tech, that in contrast to the claims at issue in *CardioNet*, the issue of whether Life Tech and Cornell performed their obligations under the NELA has a clear bearing on whether Cornell could have been harmed by Life Tech's actions.[81]

Therefore, based on the authority cited by Life Tech, the court determines the arbitration clause in the NELA is broad.

Next, Life Tech asserts the disputes between it and Cornell fall within the scope of both the NELA and the Settlement Agreement, because those disputes concern Life Tech's and Cornell's respective rights and obligations under the NELA with respect to

---

[78] *Id.*

[79] *Id.*

[80] *Id.* at 175; *id.* ("Quite the contrary, whether [the insurer] performed its obligations under the Agreement has no bearing on whether it harmed the Providers by providing physicians with misleading information on OTC.").  The court also held the derivative claims were not subject to arbitration:  "we do not agree that the allegations underlying these claims concern the interpretation or performance of the Agreement. . . .  The claims clearly do not concern the performance and interpretation of the Agreement.").  The Third Circuit distinguished a case relied upon by the insurer, *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716 (9th Cir. 1999), similar to the present action, which compelled arbitration of a Lanham Act claim where the claims "clearly *do relate* to the performance and interpretation of the parties' contracts."  *CardioNet* 175 F.3d at 176 (emphasis added) (distinguishing *Simula* compelling arbitration where "resolving Simula's factual allegations against Autoliv requires interpreting Autoliv's performance and conduct under the [parties'] Agreement") (quoting *Simula*, 175 F.3d at 724).

[81] D.I. 663 at 4.

the Settlement Agreement and Sublicense Agreement.[82]  Further, Life Tech maintains

the disputes also concern Cornell's allegation that the Sublicense Agreement and the

settlement of the Illumina California Action[83] constitute "other consideration" for the

settlement of this action under NELA § 14.3.[84]  Life Tech repeats that "[a]ll disputes"

regarding the parties' rights and obligations fall within the NELA's arbitration clause and

the NELA "constitutes the sole existing license agreement between the Parties"

concerning the patents.[85]  Life Tech argues there is no question that the instant disputes

and Cornell's requests for relief fall within the NELA's scope.[86]

Life Tech maintains Cornell does not really contest this position in its brief in

support of the Motion to Vacate.  Instead, Cornell argues arbitration should not come into

play because "nothing in the [NELA] authorizes Life Tech to defraud Cornell or obligated

Cornell to sign the Settlement Agreement[, which] is why Life Tech had to deceive

Cornell to obtain Cornell's signature."[87]  While Life Tech vigorously disputes Cornell was

defrauded or that any deception occurred, it contends these accusations are a red

herring because they have noting to do with arbitrability, or with allegations that a party

was fraudulently induced to enter into an agreement, which are frequently arbitrated.[88]

---

[82] D.I. 626 at 7.
[83] *Illumina, Inc. v. Life Technologies Corp, et al.*, No. 11-CV-03022 (S.D. Cal).
[84] D.I. 626 at 7.
[85] *Id.* (quoting D.I. 606-1 at §§ 16.1, 19.2).
[86] D.I. 626 at 7.
[87] *Id.* (quoting D.I. 603 at 17 n.2).
[88] D.I. 626 at 8 (citing *Coleman v. Prudential Bache Sec., Inc.*, 802 F.2d 1350, 1352 (11th Cir. 1986) (claim of fraudulent inducement to enter into agreement was subject to arbitration where party did not present evidence that clause to arbitrate itself was induced by fraud); *Prima Paint Corp. v. Flood & Conklin Mfg Co.*, 388 U.S. 395, 400 (1967) (agreeing with the appeals court that "a claim of fraud in the inducement of the contract generally–as opposed to the arbitration clause itself–is for the arbitrators

The court rejects Cornell's implication that Life Tech's purportedly fraudulent actions in inducing Cornell to enter the Settlement Agreement and consent to the Dismissal are not subject to mediation or arbitration and find that the issues raised in the Motion to Vacate fall within the scope of the NELA's arbitration clause.

Cornell contends, however, that even if the arbitration clause in the NELA is deemed enforceable and the issues in the Motion to Vacate fall within the scope of its arbitration clause, under § 16.2 of the NELA, this dispute would fall within an exception to any obligation to arbitrate because the issues raised implicate a breach of Life Tech's royalty payment and sales reporting obligations under Article 6 (Royalties and Minimum Royalties to be Paid During the Agreement) Article 7 (Accounting and Payment Schedule), and § 14.8 of the NELA.[89]

_____

and not for the courts"); *Telepet USA, Inc. v. Qualcomm, Inc.*, No. 14-568-GMS-PAL, 2014 WL 6826833, at *2-3) (rejecting the plaintiff's argument that arbitration should not be compelled because it was allegedly induced to enter a patent license and settlement agreement by fraud and misrepresentation and granting the defendant's motion to compel arbitration and its motion to dismiss)); *see also Hannah Furniture Co. v. Workbench, Inc.*, 651 F. Supp. 1243, 1245 (W.D. Pa. 1983) ("Plaintiff added counts alleging a breach of fiduciary duty owing from defendant to plaintiff, which can only arise out of the contract between them, and fraud in the inducement. Such matters as these arise because of a contractual relationship between the parties, hence they are 'complaints, disputes or grievances involving questions of interpretation of any of the provisions of this Agreement' as defined in the Arbitration Clause.").

[89] D.I. 643 at 14-15. Section 14.8 of the NELA provides: "If LICENSEE and/or its Affiliates obtains damages, awards, or other monetary or non-monetary consideration in a legal proceeding referenced in this Article 14, or settlement thereof (exclusive of (a) any post-sublicense execution date royalty payments or other consideration received in lieu of royalty payments for post-sublicense execution date activities, which shall be split as set forth in Section 14.7 above, (b) any value that can be assessed based on dismissal or withdrawal of counterclaims related to the Licensed Patents under this Agreement, including but not limited to antitrust counterclaims related to the Licensed Patents under this Agreement, that are brought in the legal proceeding) having a total fair market value in excess of ten million U.S. dollars ($10 million), LICENSEE shall pay the appropriate percentage under Article 6 to LICENSORS on such excess, but only

Cornell alleges that by pursuing its secret side deals with Illumina, the Sublicense Agreement and settlement of the Illumina California Action, and concealing its conduct through allegedly fraudulent statements and omissions, Life Tech sought to circumvent its royalty payment and sales reporting obligations to Cornell under the NELA. Articles 6 and 7 of the NELA address Life Tech's royalty payment and sales reporting obligations to Cornell.[90] The NELA then applies those same obligations to consideration received by Life Tech in connection with this action. Pursuant to § 14.8 of the NELA, if Life Tech "obtains damages, awards, or other monetary or non-monetary consideration in a legal proceeding referenced in Article 14," it is obligated to pay royalties to Cornell based on the "appropriate percentage under Article 6," subject to certain conditions and thresholds detailed in that section.[91]

Cornell contends that through its alleged fraudulent scheme, Life Tech received substantial consideration not addressed in the Settlement Agreement, including the Sublicense Agreement and the settlement of the Illumina California Action.[92] Life Tech has not accounted for that consideration as required by § 14.8 of the NELA.[93] Cornell contends that Life Tech's alleged fraudulent scheme necessarily implicates and involves breaches of its royalty payment and sales reporting obligations to Cornell under the

———————————————

after LICENSEE first recovers any of its/their enforcement or other legal proceeding expenses (to the extent that such enforcement or other legal proceeding expenses are not compensated through awards of attorney fees or costs during the course of the legal proceeding)." D.I. 606-1 at § 14.8 at 16.
  [90] D.I. 643 at 15.
  [91] Id. at 15 & 15 n.7 (quoting D.I. 606-1 at § 14.8).
  [92] Id. at 15.
  [93] Id.

NELA.[94]  That issue, however, is excluded from the scope of the arbitration provision in the NELA by § 16.2 which provides:

> *Notwithstanding Section 16.1, [Cornell] reserves the right and power to proceed with direct judicial remedies against LICENSEE without conciliation, mediation, or arbitration for breach of the royalty payment and sales reporting provisions of this Agreement* after giving written notice of such breach to LICENSEE followed by an opportunity period of sixty (60) days in which to cure such breach.  In collecting overdue royalty payments and securing compliance with reporting obligations, [Cornell] may use all judicial remedies available.[95]

Cornell states it notified Life Tech on May 5, 2017 of its concerns regarding Life Tech's conduct, and gave Life Tech written notice of its improper conduct by letter dated May 19, 2017.[96]  According to Cornell, Life Tech has not taken any steps to try to remedy its improper conduct in response to this written notice.[97]

Life Tech maintains this is not a dispute about the payment of royalties or failure to report royalty payments.[98]  Life Tech states Cornell has not claimed it is entitled to some specific amount of money that was not already paid.[99]  Life Tech also insists this is not a dispute about accountings, calculations, or sales reporting:  rather Cornell is trying to undo agreements, as demonstrated by the title of its motion–"Motion to Vacate Stipulation of Dismissal Pursuant to Rule 60 and to Rescind Settlement Documents."[100]  Life Tech dismisses Cornell's argument that Life Tech received "substantial consideration nowhere addressed in the Settlement Agreement, including the Sublicense

---

[94] *Id.*
[95] *Id.* at 15-16 (quoting D.I. 606-1 at § 16.2) (emphasis added).
[96] *Id.* at 16 (citing IC Ex. 17).
[97] *Id.* at 16.
[98] D.I. 663 at 8.
[99] *Id.*
[100] *Id.*

Agreement and the dismissal of the Illumina California Action," and that "Life Tech has not accounted for that consideration as required by § 14.8 of the NELA."[101]  Life Tech notes the Sublicense Agreement, which did not involve the products at issue in this litigation, did not involve "consideration in a legal proceeding referenced in this Article 14, or settlement thereof.[102]  Life Tech contends, therefore § 14.8 is inapplicable.[103]  Life Tech also notes the Illumina California Action concerned entirely unrelated patents in which Cornell holds no interest and argues, therefore, that the entirety of the NELA is inapplicable, including § 14.8.[104]

Life Tech also states it paid Cornell its portion of the consideration received from the Sublicense Agreement as required by § 14.1 of the NELA and Cornell does not dispute receiving that payment.[105]  Life Tech also maintains that Cornell did not provide any written notice of breach or opportunity to cure under § 16.2 of the NELA, which Cornell would have been required to do had royalties really been at issue.[106]

The court agrees with Life Tech that the disputes raised in the Motion to Vacate do not fall into the exception to arbitrate contained in § 16.2.  Cornell does not argue Life Tech failed to pay consideration to Cornell that was due under the Sublicense Agreement and its Motion to Vacate does not demand an accounting of that amount.  Rather it seeks to rescind the entire agreement.  The Illumina California Action did not

---

[101]  *Id.* (quoting D.I. 643 at 15).
[102]  *Id.* at 8-9.
[103]  *Id.* at 9.
[104]  *Id.*
[105]  *Id.*  Life Tech states there is no dispute that Cornell received one-half of the proceeds of the Sublicense Agreement.  *Id.*
[106]  *Id.* at 9.

21

involve Cornell or patents to which it had rights. Cornell merely asserts that the settlement of that action was part of an allegedly fraudulent scheme by Life Tech.[107]

The court finds that the issues raised in the Motion to Vacate, whether Life Tech complied with its rights and obligations under the NELA and whether it engaged in a fraudulent scheme to induce Cornell to agree to the Settlement Agreement and the Dismissal of this action, should be decided in mediation or arbitration.

Life Tech argues the Settlement Agreement also contemplates that all disputes will be resolved by arbitration.[108] Section 9.2(a) provides:

> *Any dispute, controversy or claim arising out of or relating to this Agreement* or the breach, termination, enforcement, interpretation or validity thereof, including the determination of the scope or applicability of this agreement to arbitrate, *shall be determined by arbitration between Life Tech and Cornell, on the one hand, and Illumina on the other hand.*[109]

Although § 9.2(a) requires arbitration of those issues that are "between Life Tech and Cornell, on the one had, and Illumina on the other hand," Life Tech is dubious that the parties contemplated a dispute between plaintiffs and Illumina would be arbitrated, whereas a dispute between co-plaintiffs would not.[110] It notes there is no carve-out for

---

[107] Also, even if § 16.2 were applicable, Cornell did not provide written notice of breach and an opportunity to cure as required by that section. Cornell states it "gave Life Tech written notice of its *improper conduct* by letter dated May 16, 2017." D.I. 643 at 16 (citing IC Ex. 17) (emphasis added). The cited letter does specify what Cornell perceived to be Life Tech's fraudulent activities, but it does not demand an accounting pursuant to § 14.8 of the NELA. After detailing Life Tech's purported fraudulent activities, the letter simply demands a response from Life Tech as to "how [Life Tech] proposed to address the injuries caused to the Cornell Parties by [Life Tech's] fraudulent conduct." IC Ex. 17 at 3.

[108] D.I. 626 at 1.

[109] D.I. 606-2 (§ 9.2(a)) at p. 14 (emphasis added).

[110] D.I. 626 at 6.

judicial determination of such a dispute, as there is in the NELA for royalty disputes.[111] Life Tech argues that, regardless, here there is a dispute between adversaries because Cornell seeks the same relief against Illumina as it does against Life Tech:  vacatur of the Dismissal and recision of the Settlement Agreement and Sublicense Agreement.[112]

Cornell argues the Settlement Agreement contains no valid arbitration requirement applicable this dispute.[113]  Cornell describes the dispute in its Motion to Vacate as between Life Tech and Cornell, specifically Life Tech's allegedly fraudulent acts, omissions, and actions designed to induce Cornell to execute the Settlement Agreement and consent to the Dismissal.[114]  Cornell contends the language of the arbitration clause in the Settlement Agreement shows the parties only agreed to arbitrate disputes "between Life Tech and Cornell, on the one had, and Illumina on the other hand."[115]  Cornell states the Settlement Agreement does not contain any language or provision where Cornell agreed to arbitrate any dispute with Life Tech relating to the Settlement Agreement, and that Life Tech has offered no evidence that the parties intended to form an agreement to arbitrate such a dispute.[116]  Cornell maintains that the lack of a provision in the Settlement Agreement to arbitrate disputes between it and Life Tech compels denial of its Cross-Motion.[117]  In response to Life Tech's contrary position, Cornell argues Life Tech's interpretation is inconsistent with basic rules of contract

---

[111] *Id.*
[112] *Id.*
[113] D.I. 643 at 8.
[114] *Id.*
[115] *Id.* (citing D.I. 606-2 at § 9.2(a)).
[116] *Id.* at 8-9.
[117] *Id.* at 9.

construction in that it improperly attempts to erase the express language of the arbitration clause: "between Life Tech and Cornell, on the one hand and Illumina on the other hand."[118]  Cornell contends because of the Settlement Agreement's previously noted express limitation of arbitration to certain disputes, there is no arbitration clause in that agreement to arbitrate any disputes between Cornell and Life Tech, including those raised in the Motion to Vacate.[119]

The Third Circuit has held that courts "are required to read contract language in a way that allows all the language to be read together, reconciling conflicts in the language without rendering any of it nugatory if possible."[120]  Likewise, in *Seidensticker v. Gasparilla Inn, Inc.*, Delaware's Court of Chancery stated "[w]hen interpreting contracts, the Court gives meaning to every word in the agreement and avoids interpretations that would result in 'superfluous verbiage.'"[121]

Life Tech responds that Cornell (and Illumina) misunderstand Life Tech's purpose in discussing the Settlement Agreement.[122]  Life Tech states the NELA is controlling here and requires mediation and/or arbitration.[123]  It argues the Settlement Agreement leads

---

[118] *Id.* (quoting D.I. 606-2 at § 9.2(a) (citing *Seidensticker v. Gasparilla Inn, Inc.*, C.A. No. 2555-CC, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007) (stating that "[w]hen interpreting contracts, the Court gives meaning to every word in the agreement and avoids interpretations that would result in 'superfluous verbiage.'") (quoting *NAMA Holdings, LLC v. World Market Center Venture, LLC*, C.A. No. 2756- VCL, 2007 WL 208885, at *6 (Del. Ch. July 20, 2007)).

[119] *Id.* at 9.

[120] *CTF Holdings, Inc. v. Marriot Intern., Inc.*, 381 F.3d 131, 137 (3d Cir. 2004) (citation omitted).

[121] C.A. No. 2555-CC, 2007 WL 4054473, at *3 (Del. Ch. Nov. 8, 2007) (quoting *NAMA Holdings, LLC v. World Market Center Venture, LLC*, C.A. No. 2756- VCL, 2007 WL 208885, at *6 (Del. Ch. July 20, 2007)).

[122] D.I. 663 at 5.

[123] *Id.*

to the same result: it confirms the parties' intent that any disputes as to the validity or the enforceability of the Settlement Agreement must be arbitrated, not litigated.[124] Life Tech argues, therefore, that all paths lead to arbitration, and none to judicial resolution.[125]

Section 9(a) of the Settlement Agreement requires arbitration of disputes arising out of that agreement "shall be determined by arbitration *between Life Tech and Cornell, on the one hand, and Illumina on the other hand.*"[126] Life Tech's argument that the arbitration clause of the Settlement Agreement compels arbitration of disputes arising out of that agreement between it and Cornell reads out the italicized language, improperly rendering that language nugatory and merely superfluous verbiage. Had the parties intended disputes among any of the signatories of the Settlement Agreement be subject to arbitration, the above italicized language would not have been included in § 9(a). The court, therefore, determines the Settlement Agreement does not have a valid agreement to arbitrate as to disputes between Cornell and Life Tech.

Having made that determination, the court nevertheless addresses Cornell's contention that even if the Settlement Agreement's arbitration clause encompasses disputes between Cornell and Life Tech, arbitration is still inapplicable because of the relief Cornell seeks is outside the scope of that clause.[127] Section 9.3 of the Settlement Agreement:

Equitable Remedies. All parties *judicially admit* hereby for all purposes that

---

[124] D.I. 663 at 5.
[125] D.I. 626 at 7; D.I. 663 at 5.
[126] D.I. 606-2 at § 9.2(a) (emphasis added).
[127] D.I. 643 at 10.

damages for breach of this Agreement would be inadequate to remedy such breach. The non-breaching Party shall be entitled to enforce the provisions of this Agreement by injunction and seek other *equitable relief* without the necessity of posting bond or proving the inadequacy of money damages as a remedy. If the non-breaching Party employs attorneys to enforce any of its right arising out of or relating to this Agreement, the losing Party shall pay the prevailing Party its reasonable attorneys' fees and costs. Except as otherwise provided in this Agreement, the rights, powers, remedies and privileges provided in this Agreement are cumulative and not exclusive of any of any rights, powers, remedies and privileges provided by applicable law.[128]

Cornell maintains a Rule 60 motion is by its nature akin to equitable relief.[129] Cornell also states its request for rescission of the Settlement Agreement and the Sublicense Agreement seeks equitable relief.[130] Cornell argues, therefore, that the equitable relief requested in the Motion to Vacate is expressly excluded from the scope of the arbitration clause in the Settlement Agreement, even if the parties had agreed to arbitrate disputes between Cornell and Life Tech.[131]

The court disagrees with Cornell's interpretation of that section as carving out requests for equitable relief from arbitration. Section 9.3 merely states the parties agree that damages would be inadequate to remedy a breach of the agreement and that an

---

[128] D.I. 606-2 at § 9.3 (emphasis added).

[129] D.I. 643 at 10 (citing *U.S. v. One Toshiba Color Television*, 213 F.3d 147, 157 (3d Cir. 2000) ("A motion under Rule 60(b) is equitable in nature, so it is reasonable to believe that equitable doctrines apply.")).

[130] *Id.* at 10-11 (citing *Schlosser & Dennis, LLC v. Traders Alley, LLC*, No. N16C-05-1490-RRC, 2017 WL 2894845, at *9 (Del. Super. Ct. July 6, 2017) ("Equitable rescission . . . which is otherwise known as cancellation, is a *form of remedy* in which, in addition to a judicial declaration that a contract is invalid and a judicial award of money or property to restore plaintiff to his original condition is made, further equitable relief is required."") (deletion and emphasis in original) (quoting *E.I. du Pont de Nemours & Co. v. HEM Research, Inc.*, C.A. No. 10747, 1989 WL 122053, at *3 (Del. Ch. Oct. 13, 1989)).

[131] *Id.* at 11.

26

arbitrator can grant equitable relief.[132]

The court also agrees with Life Tech's argument that Cornell's request for recision of the Settlement Agreement constitutes a dispute regarding its "validity" or "enforceability" which falls within the scope of Settlement Agreement's arbitration clause and finds that clause to be enforceable as to disputes regarding that agreement between Cornell and Life Tech.[133]

Finally, Cornell argues the relief it requests is not arbitrable.[134]  In its opening brief in support of its Motion to Vacate, Cornell states that Rule 60 relief sought in its motion cannot be granted by an arbitrator.[135]  In response, Life Tech contends the court should not look to the requested relief in deciding arbitrability, but in any event, an arbitrator can grant full relief to the parties here.[136]  First, Life Tech characterizes Cornell's request for relief under Rule 60 as a misnomer because, although it seeks vacatur of the Stipulation of Dismissal and recision of the Settlement Agreement, and Sublicense Agreement, the NELA itself grants Cornell no rights to control litigation against Illumina or the settlement thereof, or to grant sublicenses, rights that reside exclusively with Life Tech.[137] Consequently, Life Tech believes it is unclear what Cornell expects to accomplish if its

---

[132] D.I. 663 at 5 n.4 (citing *Sherrock Bros., Inc. v. DaimlerChrysler Motors Co., LLC*, 260 Fed. App'x 497, 502 (3d Cir 2008) ("Moreover, '[e]xcept where prohibited by the plain and express terms of the submission, an arbitrator is empowered to grant *any* relief reasonably fitting and necessary to a final determination of the matter submitted to him, including legal and equitable relief.'") (emphasis in original) (quoting *Bd of Educ. of Dover Union Free School Dist. v. Dover-Wingdale*, 95 A.D.2d 497, 502, 467 N.Y.S.2d 270 (N.Y.A.D. 2 Dept. 1983)).
[133] D.I. 626 at 8.
[134] D.I. 643 at 16.
[135] D.I. 302 at 17, n.2.
[136] D.I. 626 at 9.
[137] *Id.* at 9 (citing D.I. 606-1 at §§ 3.2, 14.1-14.4).

requested relief is granted.[138]  Life Tech maintains, to the extent Cornell contends some

settlement consideration was exchanged beyond the Settlement Agreement, that would

be an issue for the arbitrator to decide pursuant to NELA § 14.3.[139]  Life Tech maintains

this highlights that the fundamental dispute between the parties is their rights and

obligations under the NELA, and the compensation Life Tech received:  rights that only

an arbitrator can address.[140]

Life Tech also contends Cornell's argument ignores that the requested relief is not

considered in making a substantive arbitrability determination,[141] and that courts should

not, and do not, consider the requested relief on this issue.[142]

Cornell states that it seeks vacatur of the Dismissal entered by this court pursuant

to Rule 60, which requires such a request be addressed by the court that issued the

order.[143]  Because Rule 60 requires the court to make the determination of whether to

vacate its Dismissal order, Cornell contends the relief it seeks is not arbitrable.[144]

Neither  Cornell nor Life Tech have cited any case supporting their proposition that Rule

60 relief is subject to arbitration.[145]

---

[138] D.I. 626 at 9.

[139] *Id.*

[140] *Id.*

[141] *Id.* (citing *AT&T Techs., Inc.*, 475 U.S. at 649-50) (instructing courts not to consider the "potential merits of the underlying claim" when determining arbitrability).

[142] *Id.* at 9-10 (citing *LG Elecs., Inc. v. Interdigital Commc'ns, Inc.*, 98 A.3d 135, 140 (Del. Ch. 2014) (rejecting argument that because the arbitration tribunal could not provide equitable relief that arbitration was unavailable), *aff'd*, 114 A.3d 1246 (Del. 2015)).

[143] D.I. 643 at 16 (citing Fed. R. Civ. P. 60(b) ("On a motion and just terms, *the court* may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons . . . .") (emphasis added)).

[144] *Id.*

[145] *Id.*

In response to Life Tech's argument, citing *LG Electronics*, that on an arbitrability question courts should not look to the relief requested, Cornell counters the issue here is the mechanism for relief, not the nature of the claim.[146]  It contends Rule 60 is clear that the mechanism to seek relief from a court order is a motion to the court that issued the order.[147]  Cornell maintains that whether the relief requested is at law or equity is irrelevant.[148]  Cornell also argues that *LG Electronics* does not stand for the proposition that courts should ignore the relief requested when deciding whether to compel arbitration.[149]  There, the court considered whether an arbitration tribunal "could not provide prompt and complete justice because [the agreement] provide[d] that the [t]ribunal shall act 'as arbitrators at law only[,]'" thereby making the tribunal incapable of awarding the injunctive relief plaintiff sought "because they constitute equitable relief."[150] The court determined the reference to "arbitrators at law" did not relate to the traditional division between law and equity and did not prevent the tribunal from awarding equitable relief.[151]

Cornell contends the present issue is not whether an arbitrator can provide equitable relief, but that the specific relief requested, *i.e.*, vacatur of the Dismissal, is reserved for this court because the required mechanism to vacate an order of this court is a motion to this court.[152]  Cornell concludes, therefore, that arbitration of a Rule 60

---

[146] *Id.*
[147] *Id.*
[148] *Id.* at 17.
[149] *Id.*
[150] *LG Elecs.*, 98 A.3d at 140.
[151] *Id.* at 141, 145.
[152] D.I. 643 at 17.

motion is not proper.[153]  Finally, Cornell insists that to require arbitration would be a waste of judicial and party resources because, even if the issues were decided in arbitration, Cornell would still need to seek the Rule 60 relief from the court because no arbitrator could compel this court to vacate one of its orders.[154]

In response to Cornell's Rule 60 argument, Life Tech notes Cornell ignores that resolution of its Motion to Vacate requires the resolution of issues that are arbitrable.[155] Life Tech reiterates what Cornell seeks to achieve by its requested relief is unclear given that Cornell cannot control either the litigation or the settlement thereof.[156]  Life Tech argues that even if this court were to vacate the Dismissal, it cannot rescind the Sublicense Agreement (which involves only products not at issue in this litigation and is an agreement to which Cornell is not a party), the Settlement Agreement in this action (jurisdiction over which the court did not retain in the Dismissal), or the settlement agreement in an entirely unrelated litigation between Life Tech and Illumina in a different jurisdiction.[157]  Therefore, Life Tech requests its Cross-Motion be granted.[158]

The court agrees with Life Tech that Cornell's Rule 60 argument does not prohibit granting Life Tech's motion.  There is a "strong presumption" in favor of arbitration.[159] "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of

---

[153] *Id.*
[154] *Id.*
[155] D.I. 663 at 10 (quoting D.I. 643 at 16).
[156] *Id.* at 10.
[157] *Id.*
[158] *Id.*
[159] *Gay v. CreditInform*, 511 F.3d 369, 387 (3d Cir. 2007).

arbitration."[160]  "In a case where there is any rational basis for doubt about [substantive arbitrability], the court should defer to arbitration, leaving the arbitrator to determine what is or is not before her."[161]

Because the fundamental dispute between Cornell and Life Tech relates to the meaning and interpretation of the NELA and it contains a valid clause requiring mediation or arbitration of disputes which are within the scope of that clause, it is recommended that Life Tech's Cross-Motion (DI 625) be granted and Cornell's Motion to Vacate (DI 602) be stayed pending the conclusion of the alternative dispute resolution process between Cornell and Life Tech.

This Memorandum Order is filed pursuant to 28 U.S.C. § 636(b)(1)(A), FED. R. CIV. P. 72(a), and D. Del. LR 72.1.  The parties may serve and file specific written objections within fourteen days after being served with a copy of this Memorandum Order.[162]  The objections and response to the objections are limited to ten pages each.

The parties are directed to the Court's standing Order in Non Pro Se matters for Objections Filed under FED. R. CIV. P. 72, dated November 16, 2009, a copy of which is available on the Court's website, www.ded.uscourts.gov.

The parties are directed to the Court's standing Order in Non Pro Se

---

[160] *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 475 U.S. 643, 24-25 (1983) ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . .").
[161] *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1121 (Del. Ch. 2010) (alteration in original) (citation and quotation marks omitted).
[162] FED. R. CIV. P. 72(a).  *See Tige Boats Inc. v. Interplastic Corporations*, 2015 WL 9268423 at *3 (N.D. TX 2015).

matters for Objections Filed under FED. R. CIV. P. 72, dated November 16, 2009, a copy

of which is available on the Court's website, www.ded.uscourts.gov.

January 19, 2018            /s/ Mary Pat Thynge
                                  UNITED STATES MAGISTRATE JUDGE