**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| CORNELL UNIVERSITY, CORNELL, RESEARCH FOUNDATION, INC., LIFE TECHNOLOGIES CORPORATION AND APPLIED BIOSYSTEMS, LLC, | : : : : : | |
| Plaintiff, | : : | |
| v. | : : | C.A. No. 10-433-LPS-MPT |
| ILLUMINA, INC., | : : | ▮▮▮▮▮▮▮▮▮ |
| Defendant. | : : | [PROPOSED] REDACTED PUBLIC VERSION |

## MEMORANDUM ORDER

WHEREAS, Chief Magistrate Judge Thynge issued a 32-page Memorandum Order

("Order") (D.I. 676), dated January 19, 2018, recommending that the Court (i) grant Life Tech

and Applied Biosystems's ("Life Tech") Cross-Motion to Dismiss or Stay Cornell's Motion

("Motion to Stay") and To Compel Mediation or Arbitration ("Arbitration Motion") (D.I. 625)

and (ii) stay Cornell's Motion to Vacate Stipulation of Dismissal Pursuant to Rule 60 and To

Rescind Settlement Documents for Fraud or, Alternatively, for Leave to Conduct Discovery

("Motion to Vacate") (D.I. 602) pending conclusion of the alternative dispute resolution process

between Cornell and Life Tech;

WHEREAS, on February 2, 2018, Cornell objected to the Order ("Order Objections")

(D.I. 677);

WHEREAS, on February 16, 2018, Life Tech responded to Cornell's Order Objections

("Life Tech Order Response") (D.I. 681);

WHEREAS, on February 16, 2018, Illumina responded to Cornell's Order Objections

("Illumina Order Response") (D.I. 682);

WHEREAS, Chief Magistrate Judge Thynge also issued a 17-page Report and

Recommendation ("Report") (D.I. 679), dated February 5, 2018, recommending that the Court

deny Cornell's Motion to Vacate (D.I. 602);

WHEREAS, on February 20, 2018, Cornell objected to the Report ("Report Objections")

(D.I. 683);

WHEREAS, on March 6, 2018, Life Tech responded to Cornell's Report Objections

("Life Tech Report Response") (D.I. 695);

WHEREAS, on March 6, 2018, Illumina responded to Cornell's Report Objections

("Illumina Report Response") (D.I. 696);

WHEREAS, the Court has considered the parties' objections and responses to the Order

under the "clearly erroneous and contrary to law" standard, *see* 28 U.S.C. § 636(b)(1)(A); Fed. R.

Civ. P. 72(a); *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he phrase

'contrary to law' indicates plenary review as to matters of law."); and the parties' objections and

responses to the Report *de novo*, *see Brown v. Astrue*, 649 F.3d 193, 195 (3d Cir. 2011); 28

U.S.C. § 636(b)(l); Fed. R. Civ. P. 72(b)(3);

NOW THEREFORE, **IT IS HEREBY ORDERED** that:

1.     Cornell's Order Objections (D.I. 677) are **OVERRULED**, Judge Thynge's Order

(D.I. 676) is **ADOPTED** in all respects **EXCEPT** that proceedings with respect to Cornell's

Motion to Vacate are **NOT STAYED**; Life Tech's Arbitration Motion (D.I. 625) is **GRANTED**,

and Life Tech's Motion to Stay (D.I. 625) is **DENIED**.

2.     Cornell's Report Objections (D.I. 679) are **OVERRULED**, Judge Thygne's

Report is **ADOPTED**, and Cornell's Motion to Vacate (D.I. 602) is **DENIED**.

3.      Cornell objects to the Order's recommendation that Life Tech's Arbitration Motion be granted "because it compels arbitration of Cornell's request for equitable relief regarding Settlement Documents that do not contain any applicable arbitration clause."[1]  (D.I. 677 at 2)

4.      Under the Federal Arbitration Act ("FAA"), district courts must stay proceedings to allow for arbitration if a suit is brought "upon ***any issue*** referable to arbitration under an agreement in writing for such arbitration" and the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement."  9 U.S.C. § 3 (emphasis added).  There is a strong "'presumption of arbitrability,'" and an "'order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.'"  *Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) (quoting *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986)); *see also id.* at 727 (finding arbitration clause reached disputes related to formation of settlement agreement).  "Just because a claim . . . itself cannot be referred to arbitration does not mean that an issue central to the resolution of [that] claim cannot be referred to arbitration." *Compucom Sys., Inc. v. Getronics Fin. Holdings B.V.*, 635 F. Supp. 2d 371, 378 (D. Del. 2009).

5.      Cornell and Life Tech are parties to a New Exclusive License Agreement ("NELA").  (D.I. 606-1 ("NELA"))  The NELA contains an arbitration provision.  Section 16.1

---

[1]Unless otherwise noted, all capitalized terms have the meaning provided in the Order, Report, and parties' briefing.

of the NELA provides: "All disputes over the meaning and interpretation of this Agreement shall

be resolved by conciliation and mediation, and if mediation is unsuccessful, then disputes shall

be finally settled by binding arbitration according to the procedures set forth at Appendix C."

(NELA § 16.1)

6.      Cornell contends that the issues raised in its Motion to Vacate fall outside the

scope of the NELA. (*See* D.I. 677 at 6 n.4)  The Court disagrees with Cornell and instead agrees

with the Order's conclusion that "the fundamental dispute between Cornell and Life Tech relates

to the meaning and interpretation of the NELA" between Cornell and Life Tech.  (D.I. 676 at

31).[2]

7.      Under the NELA, Life Tech had the right to control and settle litigation against

Illumina and to grant sublicenses to Cornell's patents. (*See* NELA §§ 3.1–3.2, 14.1–14.4)  All of

Cornell's allegations arise from Life Tech and Illumina's purported fraudulent scheme to settle

the instant litigation (as well as an unrelated case between Life Tech and Illumina in a California

court) and Life Tech's allegedly related decision to grant Illumina sublicenses to Cornell's

patents (even with respect to accused products unrelated to the instant litigation).  If, as Life Tech

contends, all of this conduct is within the unambiguous contractual rights Life Tech possesses

under the NELA, then Cornell's Motion to Vacate must fail.  Thus, as the Order correctly states,

"the issue of whether Life Tech and Cornell performed their obligations under the NELA has a

clear bearing on whether Cornell could have been harmed by Life Tech's actions."  (D.I. 676 at

16)  Accordingly, there are issues before the Court that are referable to arbitration (independent

---

[2]Illumina expresses no objection to arbitration between Cornell and Life Tech under the
NELA. (*See* D.I. 682 at 1; D.I. 647 at 5, 10)

of the Settlement Agreement among Cornell, Life Tech, and Illumina that resolved the instant

lawsuit); namely, "whether Life Tech complied with its rights and obligations under the NELA

and whether it engaged in a fraudulent scheme to induce Cornell to agree to the Settlement

Agreement and the Dismissal of this action." (D.I. 676 at 22)  The NELA contains a valid

arbitration clause, and, thus, the Court agrees with the Order that the issues of Cornell's and Life

Tech's rights and duties under the NELA with respect to settlement of litigation and granting of

sublicenses to Cornell's patents must be resolved by mediation or arbitration.[3]

8.      Contrary to Cornell's contentions, the Order did not "find that Rule 60 relief is

arbitrable." (D.I. 677 at 2)  Instead, the Order found that the underlying disputes between

Cornell and Life Tech about whether Life Tech's conduct in negotiating the Settlement

Agreement was within the scope of Life Tech's rights under the NELA must (according to the

NELA) be decided in mediation or arbitration; the Order does not send the Motion to Vacate (or

the issue of remedies) to mediation or arbitration. (*See* D.I. 676 at 22; *see also* D.I. 681 at 6 (Life

Tech: "Judge Thynge did not send Cornell's [Motion to Vacate] to an arbitrator to resolve")  This

fact was demonstrated weeks after the Order was issued when Judge Thynge ruled on the Motion

---

[3]Cornell's fundamental theory is that ███████████████████████

███████████████████████ – Life Tech (likely with Illumina's

assistance) ███████

███████████████████████████████████

███████████████████████ (D.I. 677 at 2; *see also*

*id.* at 3 (contending Cornell had right ███████████████████

███████ Whether there can be any recovery on such a theory depends on what Cornell's and
Life Tech's rights and obligations are under the NELA.  If Life Tech is correct about its rights
under the NELA, the purported ███████ in the Settlement Agreement would appear to have
been essentially meaningless.  The Court does not decide who is correct on the substance of these
disputes, only that they all plainly relate to the NELA, and therefore are (by the parties'
agreement in § 16.1 of the NELA) subject to an obligation to conciliate, mediate, and arbitrate.

to Vacate. (*See* D.I. 679)[4]

9.      Cornell further objects that the Order errs in recommending arbitration because Cornell seeks relief against both Life Tech *and* Illumina and Illumina is not a party to the NELA (and therefore would not participate in mediation or arbitration).  (*See* D.I. 677 at 2, 6, 8)  This contention lacks merit.  Cornell and Life Tech contracted to have the type of dispute Cornell now raises resolved in mediation or arbitration, as it relates to the rights and duties of Cornell and Life Tech under the NELA.  Illumina has no need to be involved in such mediation or arbitration. Cornell's claim is against Life Tech and any relief (if it proves an entitlement to such) will come from Life Tech.

10.     One reason Illumina does not need to be a party to the mediation or arbitration is that, as Illumina asserts, and as the Court agrees, the arbitrator has no power to disturb, address, or impair Illumina's rights under the Settlement and Sublicense Agreements.  (D.I. 682 at 2, 9) Life Tech had at least apparent authority to negotiate these agreements with Illumina.  *See Crumlish v. Prince*, 266 A.2d 182, 183-84 (Del 1970) ("A principal is bound by an agent's apparent authority which he knowingly permits the agent to assume or which he holds the agent out as possessing.").  In the Settlement Agreement, Cornell expressly warranted █████████████████████

_____

[4]While the Report found that the Court lacks subject matter jurisdiction to provide the relief requested in Cornell's Motion to Vacate, this does not mean the Court lacks jurisdiction to compel arbitration of the issues presented by Cornell's motion.  *See Org'l Strategies, Inc. v. Feldman Law Firm LLP*, 2014 WL 2453350, at *2 (D. Del. May 29, 2014) ("While I do not have jurisdiction to entertain the merits of the underlying dispute, I have jurisdiction to direct that the parties arbitrate."), *aff'd* 604 Fed. App'x 116, 118-19 (3d Cir. 2015); *see also BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 585 (D. Del. 2004) ("[D]istrict courts may dismiss an action if all the issues raised are arbitrable and must be submitted to arbitration.").

████████████████████████████████████████████████████ (D.I. 606-2

("Settlement Agreement") ██████ Life Tech offered Illumina ██████████ (*See id.*

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████ Cornell has presented no evidence that it was unreasonable for Illumina to rely

on these representations.[5]

     11.    Cornell also objects that the Order lacks sufficient guidance on the "metes and

bounds" of what is to be arbitrated. (D.I. 677 at 2) Illumina raises similar concerns. (*See, e.g.*,

D.I. 682 at 1-2, 8-9) The Order provides that disputes "relat[ing] to the meaning and

interpretation of the NELA" are to be mediated or arbitrated, noting that in any doubtful case,

"the court should defer to arbitration, leaving the arbitrator to determine what is or is not before

her." (D.I. 676 at 31) (quoting *GTSI Corp. v. Eyak Tech., LLC*, 10 A.3d 1116, 1121 (Del. Ch.

2010)) The Order adds: "The court finds that the issues raised in the Motion to Vacate, whether

Life Tech complied with its rights and obligations under the NELA and whether it engaged in a

fraudulent scheme to induce Cornell to agree to the Settlement Agreement and the Dismissal of

this action, should be decided in mediation or arbitration." (*Id.* at 22) There is no clear error of

fact or any error of law in what the Order says about the scope of arbitration or mediation. To the

extent any clarification is needed, the Court believes its Memorandum Order today has provided

---

[5]Whether Life Tech had actual authority under the NELA is a separate question that
implicates Cornell's and Life Tech's rights and obligations under the NELA. The Court does not
– and need not – decide who is correct on the substance of Cornell and Life Tech's disputes. *See
also generally Liberty Mut. Ins. Co. v. Enjay Chem. Co.*, 316 A.2d 219, 223 (Del. 1974) (holding
principal liable for loss where agent fraudulently converted payments from third party who
reasonably relied on agent's representations).

it.

12.     Turning to the Report Objections, Cornell contends that Judge Thynge erred in recommending dismissal of Cornell's Motion to Vacate.[6]  (*See* D.I. 683 at 1)  In the Motion to Vacate, Cornell seeks to reopen the Dismissal under the "catch-all provision" of Federal Rule of Civil Procedure 60(b)(6), which allows courts to relieve a party from a final judgment for "any other reason that justifies relief."  (*See* D.I. 603 at 10)  To prevail under Rule 60(b)(6), a movant must show that "exceptional circumstances" exist to justify reopening the judgment. *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005).  "[A] showing of extraordinary circumstances involves a showing that without relief from the judgment, an 'extreme' and 'unexpected' hardship will result." *Budget Blinds, Inc. v. White*, 536 F.3d 244, 255 (3d Cir. 2008) (internal quotation marks omitted).  Such circumstances "rarely exist when a party seeks relief from a judgment that resulted from the party's deliberate choices." *Id.*  A Rule 60(b)(6) motion is committed "to the sound discretion of the trial court guided by accepted legal principles in light of all relevant circumstances." *Biggins v. Snyder*, 2008 WL 4219570, at *1 (D. Del. Sept. 15, 2008).

13.     Cornell contends that it presented "extensive evidence" of fraud justifying its requested relief and that the Report failed to undertake the factual analysis required by Rule 60 to determine Cornell's entitlement to relief.  (*See* D.I. 683 at 4-5)  The Court disagrees.  Contrary to Cornell's assertion, the Report carefully considered Cornell's allegations regarding the alleged fraud, devoting multiple pages to reciting Cornell's factual allegations.  (*See* D.I. 679 at 2-5)

---

[6]Cornell suggests that the Report found "that the Court lacks subject matter jurisdiction to hear Cornell's Motion to Vacate." (D.I. 683 at 1, 3-4)  However, the Report found that the Court lacks "subject matter jurisdiction over the ***relief requested*** in the Motion to Vacate" (i.e., vacatur of the Dismissal), not that the Court lacks jurisdiction to consider the motion itself. (D.I. 679 at 15) (emphasis added)

(detailing Cornell's allegations)  The Report simply found, as the Court does now, that those allegations fall short of presenting "exceptional or extraordinary circumstances" justifying reopening the final judgment.  (*See* D.I. 679 at 15) (noting that while "Cornell's briefs include extensive allegations regarding Life Tech's purported fraudulent misrepresentations and omissions," Cornell failed to show "extraordinary circumstances" justifying relief)

14.     While Cornell asserts that it will experience "irreparable harm" if the Court does not rescind the Dismissal, the "extreme" hardship Cornell contends it will face is an inability to ███████████████████████████████████████ (D.I. 606 ¶¶ 67-69) (contending also that ███████████████████████████████████████████ But all of the asserted patents have expired (*see* D.I. 696 at 8 & n.1), and if there is any period of infringement for which a timely, meritorious action could be brought, Cornell can be made whole by monetary damages.  More fundamentally, Cornell's allegations of fraud – which rest on its particular construction of Life Tech's contractual rights and obligations under the NELA, which a mediator or arbitrator may or may not find have merit – against a co-plaintiff do not, in the Court's view, constitute the "exceptional circumstances" required to persuade the Court it should undermine the principle of finality and provide relief under Rule 60(b)(6).  *See In re Nortel Networks, Inc.*, 664 F. App'x 157, 160 (3d Cir. 2016) (affirming district court finding that former employee failed to show "exceptional circumstances" existed where appellant alleged employer committed fraud); *see also Sawka v. Healtheast, Inc.*, 989 F.2d 138, 140-41 (3d Cir. 1993) (finding "extraordinary circumstances" lacking where party had alterative relief available).[7]

---

[7]Having previously conceded that it cannot rely on Rule 60(b)(3) (*see* D.I. 603 at 10), which provides an avenue for post-judgment relief due to "fraud . . . or misconduct by the opposing party," there cannot have been any error in the Report's purported failure to consider

15.     Several aspects of Cornell's own conduct further undermine its effort to meet the

high burden of obtaining the exceptional relief it seeks under Rule 60(b)(6).  First, Cornell is a

party to the Settlement Agreement, and, as noted above, exceptional circumstances for purposes

of Rule 60(b)(6) are only rarely found when a judgment is the product of the moving party's

deliberate choices.  *See Budget Blinds*, 536 F.3d at 544-55.  Second, Cornell is a party to the

Settlement Agreement due to contractual commitments it made to Life Tech in the NELA to

████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████  Cornell's later decision to

attack its own settlement and withdraw its cooperation makes it more difficult to view Cornell as

a strong candidate for equitable relief.  *See generally Cox v. Horn*, 757 F.3d 113, 115 (3d Cir.

2014) (discussing "equitable and case-dependent nature" of Rule 60(b) analysis).  Third, Cornell

asked the Court to vacate its claim construction order for the purported purpose of prosecuting its

patents against alleged infringers other than Illumina.  (*See* D.I. 600 at 4-5) (Cornell's counsel

arguing that vacatur of claim construction order was "particularly important to Cornell, the owner

---

"Cornell's evidence that Illumina participated in the fraud" (*see* D.I. 683 at 6-7).  In any event,
the Report did note, in detail, Cornell's allegations that Illumina participated in Life Tech's
fraudulent scheme.  (*See* D.I. 679 at 2-5) (summarizing Life Tech and Illumina's alleged
fraudulent scheme)  Moreover, it appears that Cornell does not actually have ***evidence*** of
Illumina acting in furtherance of fraud, but instead makes speculative allegations on which it
seeks discovery.  *See generally In re Nortel Networks*, 664 F. App'x at 160 (rejecting
unsupported allegations of fraud).

of the patents, in facilitating settlement" because "maintaining these orders could have a possible preclusive effect on them in any other litigation unrelated to Illumina") Cornell did not disclose its intent (seemingly confirmed by Cornell's statements to this Court, *see, e.g.*, D.I. 677 at 3) to consider further litigation against Illumina (relating to products not at issue in this case). While Cornell may well have been acting within its rights in preserving the opportunity to undertake further litigation against Illumina, its conduct creates an unattractive platform from which to press the Court for extraordinary equitable relief.

16.    Further, as the Report explained, ███████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████ (D.I. 679 at 7 (alteration in original) (quoting NELA

██████████████████████████████████████████████████████

████████ (*see* Settlement Agreement ██████████ It is plain that Illumina would be unfairly prejudiced were the Settlement Agreement vacated. In justifiable reliance on the Settlement Agreement, Illumina dismissed its *inter partes review* proceedings against Cornell's patents, and these cannot now be revived. (*See* D.I. 696 at 8) Also, given its obligation under the Stipulated Protective Order to destroy confidential material within 60 days after conclusion of the case, and given that Illumina was not informed of the dispute between Cornell and Life Tech until 58 days after the case was terminated, Illumina, understandably, has destroyed much of the work product it generated in this litigation. (*See id.*) It would be an unjust hardship to require Illumina to defend itself against Cornell's infringement allegations (that the parties settled) without this work product or by making Illumina attempt, no doubt at substantial expense, to

recreate it.

17.     Cornell objects to the Report's determination that the Court lacks subject matter

jurisdiction to rescind the Settlement Agreement, contending the Report erred in its application

of *Kokkonen v. Guardian Life Insurance Co. of America*, 511 U.S. 375 (1994).[8]  In *Kokkonen*,

the Supreme Court held that federal courts lack subject matter jurisdiction "over disputes arising

out of an agreement that produces the stipulation" of dismissal where, as here, the order of

dismissal "did not reserve jurisdiction in the District Court to enforce the settlement agreement"

and no independent basis for jurisdiction exists.  *Id.* at 376-78; *see also id.* at 381-82 ("If the

parties ***wish*** to provide for the court's enforcement of a dismissal-producing settlement

agreement, they can seek to do so. . . .  Absent such action, however, enforcement of the

settlement agreement is for state courts, unless there is some independent basis for federal

jurisdiction.") (emphasis in original).  The Court, however, also "emphasized" – as Cornell does

– "that what [the] respondent s[ought] . . . [wa]s enforcement of the settlement agreement, and

not merely reopening of the dismissed suit," which, the Court noted, "[s]ome Courts of Appeal"

had held could be obtained under Rule 60(b)(6).  *Id.* at 378.  Cornell contends that because it

seeks not to enforce the Settlement Agreement, but instead to set it aside, the Report erred in

finding that the Court lacks subject matter jurisdiction to rescind the agreement.  (*See* D.I. 683 at

7)

18.     Again the Court disagrees with Cornell and agrees with Judge Thynge.  The Third

Circuit has adopted a "strict reading of *Kokkonen*," *Callaway Golf Co. v. Acushnet Co.*, 585 F.

---

[8]Cornell also objects that the Report misquotes *Kokkonen*.  (*See* D.I. 683 at 8)  This
mistake, however, has no bearing on the Report, or the Court's, legal analysis.

Supp. 2d 592, 597 (D. Del. 2008), requiring "a court order incorporating the terms of a settlement agreement" in order for the Court to retain subject matter jurisdiction, *id.* at 598. The Dismissal does not incorporate the terms of the Settlement Agreement (or indicate in any other way that the parties intended for the Court to retain jurisdiction over disputes arising under the Settlement Agreement). (*See* D.I. 598) Thus, to the extent Cornell's motion is construed as seeking to rescind (or enforce) the Settlement Agreement, the Court agrees with the Report that the Court lacks subject matter jurisdiction to do so. *See Callaway Golf*, 585 F. Supp. 2d at 598 ("Absent any affirmative indication of the court's intent to retain jurisdiction in the record, the court must conclude that jurisdiction is lacking.").

19.     Finally, Cornell has failed to demonstrate any error in the Report's conclusion that the Court lacks subject matter jurisdiction to rescind the Sublicense Agreement. Following *Kokkonen*, 511 U.S. at 377, "[i]t is to be presumed that a cause lies outside th[e] limited jurisdiction" of federal courts, and "[t]he burden of establishing the contrary rests upon the party asserting jurisdiction." Cornell has not met this burden, particularly given that Cornell is not even a party to the Sublicense Agreement between Life Tech and Illumina. Generally, a contract "may be rescinded only by a party to the contract." 17B John Bourdeau et al., C.J.S. Contracts § 619 (2018); *see also Chase Manhattan Bank v. Iridium Africa Corp.*, 197 F. Supp. 2d 120, 139 (D. Del. 2002), *report and recommendation adopted in part, rejected in part*, 307 F. Supp. 2d 608 (D. Del. 2004) ("In some narrow circumstances a third-party beneficiary may seek rescission of a contract although it was not a principal party to the contract."). The Court agrees with the Report's conclusion that Cornell lacks standing to seek rescission of the Sublicense Agreement.

**IT IS FURTHER ORDERED** that:

1.      Oral argument scheduled for April 10, 2018 is **CANCELLED**.

2.      Because this Memorandum Order has been issued under seal, the parties shall

meet and confer and, no later than April 2, 2018, submit a proposed redacted version of it.

Thereafter, the Court will issue a public version of its Memorandum Order.

3.      The parties shall also provide the Court with a joint status report no later than

April 4, 2018.


March 29, 2018                          HONORABLE LEONARD P. STARK
Wilmington, Delaware                    UNITED STATES DISTRICT JUDGE

14